**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

==**REDACTED**==

**CIVIL MINUTES – GENERAL**

| Case No. | ==LA CV14-02454 JAK (JEMx)==<br>LA CV14-02962 JAK (JEMx)<br>LA CV14-03109 JAK (JEMx)<br>LA CV14-03111 JAK (JEMx)<br>SA CV14-00491 JAK (JEMx) | Date | March 22, 2015 |
|---|---|---|---|
| Title | Signal IP, Inc. v. American Honda Motor Co., Inc.<br>Signal IP, Inc. v. Nissan North America, Inc.<br>Signal IP, Inc. v. Mercedes-Benz USA, LLC, et al.<br>Signal IP, Inc. v. BMW of North America, LLC et al.<br>Signal IP, Inc. v. Mazda Motor of America, Inc. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|

| Andrea Keifer | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorney Present for Plaintiffs: | Attorneys Present for Defendants: |
| None Present | None Present |

**Proceedings:**   **(IN CHAMBERS) REDACTED ORDER RE DEFENDANTS' COMMON MOTION FOR SUMMARY JUDGMENT REGARDING U.S. PATENT NOS. 5,463,374; 5,714,927; AND 5,954,775 (Honda Dkt. 93; Nissan Dkt 132; Mercedes Dkt. 124; BMW Dkt. 117; Mazda Dkt. 128, 135).**

## I.   INTRODUCTION

In April 2014, Plaintiff Signal IP ("Plaintiff") brought separate patent infringement actions against the following defendants: American Honda Motor Co., Inc. and Honda of America Mfg., Inc. (collectively, "Honda"), Kia Motors America, Inc. (Kia), Nissan North American, Inc. ("Nissan"), Mercedes-Benz USA, LLC ("Mercedes"), BMW of North America, LLC ("BMW") and Mazda Motor of America, Inc. ("Mazda"). In each separate action, Plaintiff alleged that the defendant had infringed one or more of the following patents: U.S. Patent Nos. 5,463,374 ("the '374 patent"), 5,714,927 ("the '927 Patent") and 5,954,775 ("the '775 patent").

Defendants Honda, Nissan, Mercedes, BMW and Mazda (collectively, "Defendants") moved for summary judgment based on claims of invalidity as to the '374, '927 and '775 patents. Honda

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**==\*\*REDACTED\*\*==**

**CIVIL MINUTES – GENERAL**

| Case No. | ==LA CV14-02454 JAK (JEMx)== | | Date | March 22, 2015 |
|---|---|---|---|---|
| | LA CV14-02962 JAK (JEMx) | | | |
| | LA CV14-03109 JAK (JEMx) | | | |
| | LA CV14-03111 JAK (JEMx) | | | |
| | SA CV14-00491 JAK (JEMx) | | | |
| Title | Signal IP, Inc. v. American Honda Motor Co., Inc. | | | |
| | Signal IP, Inc. v. Nissan North America, Inc. | | | |
| | Signal IP, Inc. v. Mercedes-Benz USA, LLC, et al. | | | |
| | Signal IP, Inc. v. BMW of North America, LLC et al. | | | |
| | Signal IP, Inc. v. Mazda Motor of America, Inc. | | | |

Dkt. 93;[1] Nissan Dkt. 132; Mercedes Dkt. 124; BMW Dkt. 117; Mazda Dkt. 128 Redacted, Dkt. 135 Under Seal. Defendants also moved for summary judgment as to whether Plaintiff is entitled to any damages for infringement of the '374 patent. Dkt. 117.[2] They claim that it is not.

For the reasons stated in this Order, the Motion is **GRANTED-IN-PART** and **DENIED-IN-PART**.

## II.    ANALYSIS

### A.    Legal Standard

#### 1.    Summary Judgment

Summary judgment is appropriate where the record shows that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Material facts are those necessary to the proof or defense of a claim, as determined by reference to substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 269. The burden initially is on the moving party to show an absence of a genuine issue of material fact or to show that the non-moving party will be unable to make a sufficient showing on an essential element of its case for which it has the burden of proof. *Celotex*, 477 U.S. at 323. Only if the moving party meets its burden must the non-moving party produce evidence to rebut the moving party's claim and create a genuine issue of material fact. *Id.* at 322-23. If the non-moving party meets this burden,

---

[1] On March 18, 2016, Honda and Plaintiff jointly filed a notice of settlement. Honda Dkt. 158. Therefore, the motion brought by Honda is now moot.

[2] Honda, Nissan, Mercedes, BMW and Mazda filed identical motions in the dockets of their respective cases. To ensure ease of reference in this Order, unless otherwise specified, any citation to a docket entry is to the BMW case, LA CV14-03111 JAK (JEMx).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**==REDACTED==**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-02454 JAK (JEMx)<br>LA CV14-02962 JAK (JEMx)<br>LA CV14-03109 JAK (JEMx)<br>LA CV14-03111 JAK (JEMx)<br>SA CV14-00491 JAK (JEMx) | Date | March 22, 2015 |
|---|---|---|---|
| Title | Signal IP, Inc. v. American Honda Motor Co., Inc.<br>Signal IP, Inc. v. Nissan North America, Inc.<br>Signal IP, Inc. v. Mercedes-Benz USA, LLC, et al.<br>Signal IP, Inc. v. BMW of North America, LLC et al.<br>Signal IP, Inc. v. Mazda Motor of America, Inc. | | |

then the motion will be denied. *Nissan Fire & Marine Ins. Co. v. Fritz Co., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000).

### 2.    Recovering Pre-Filing Damages

Under 35 U.S.C. § 287(a), a patentee making, offering for sale, or selling a patented article may not recover damages unless it previously has provided the alleged infringer notice of infringement. *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996). Thus, a patentee can recover damages only attributable "to those acts of infringement that occurred after the patentee gave the alleged infringer 'notice of infringement.'" *Gart v. Logitech*, Inc., 254 F.3d 1334, 1345 (Fed. Cir. 2001) (citing 35 U.S.C. § 287(a)). Notice may be actual or constructive.

Actual notice requires that the patentee expressly notify the alleged infringer of its infringement. *Id.* Thus, actual notice requires an affirmative act by the patentee that serves to inform the alleged infringer of its challenged conduct. *Lans v. Dig. Equip. Corp.*, 252 F.3d 1320, 1327-28 (Fed. Cir. 2001). "Filing of an action for infringement shall also constitute such [actual] notice." § 287(a). In analyzing the sufficiency of actual notice, a court "must focus on the action of the patentee, not the knowledge of the infringer." *Id.* at 1327 (internal quotations and citations omitted)."The duty of alleging and the burden of proving either [actual notice or constructive notice] is upon the plaintiff." *Dunlap v. Schofield*, 152 U.S. 244, 248 (1894); *see Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1446-47 (Fed. Cir. 1998).

Constructive notice requires the patentee to adhere to the marking requirements set forth in 35 U.S.C. § 287. *Id.* Compliance with the marking statute is a question of fact; the patentee must prove compliance by a preponderance of the evidence. *Maxwell*, 86 F.3d at 1111; *Nike*, 138 F.3d at 1446. However, the recovery of damages is not limited where there are no products to mark. *Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1220 (Fed. Cir. 2002) (citing *Wine Ry. Appliance Co. v. Enter. Ry. Equip. Co.*, 297 U.S. 387, 393 (1936)). If the patentee or its licensees have not made products under the patent, then § 287(a) does not apply, *i.e., does* not limit damages to the time after notice of infringement was given. *Id.*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**\*\*REDACTED\*\***

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-02454 JAK (JEMx) | Date | March 22, 2015 |
|---|---|---|---|
|  | LA CV14-02962 JAK (JEMx) |  |  |
|  | LA CV14-03109 JAK (JEMx) |  |  |
|  | LA CV14-03111 JAK (JEMx) |  |  |
|  | SA CV14-00491 JAK (JEMx) |  |  |
| Title | Signal IP, Inc. v. American Honda Motor Co., Inc. |  |  |
|  | Signal IP, Inc. v. Nissan North America, Inc. |  |  |
|  | Signal IP, Inc. v. Mercedes-Benz USA, LLC, et al. |  |  |
|  | Signal IP, Inc. v. BMW of North America, LLC et al. |  |  |
|  | Signal IP, Inc. v. Mazda Motor of America, Inc. |  |  |

3.      **Invalidity**

Claims of issued United States patents are presumed valid. 35 U.S.C. § 282. "A party seeking to establish that particular claims are invalid must overcome the presumption of validity in 35 U.S.C. § 282 by clear and convincing evidence." *State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1067 (Fed. Cir. 2003). "Although an exact definition is elusive, 'clear and convincing evidence' has been described as evidence that 'place[s] in the ultimate factfinder an abiding conviction that the truth of its factual contentions are highly probable.'" *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1359 n.5 (Fed. Cir. 2007) (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)).

a)      Improper Inventorship

Under 35 U.S.C. § 102(f) (pre-AIA), failure to name the correct inventor or inventors renders a patent invalid. *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349-50 (Fed. Cir. 1998). "Inventorship is a question of who actually invented the subject matter claimed in a patent." *Sewall v. Walters*, 21 F.3d 411, 417 (Fed. Cir. 1994) (quoting *Beech Aircraft Corp. v. EDO Corp.*, 990 F.2d 1237, 1248 (Fed. Cir. 1993)). "Conception is the touchstone of inventorship." *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1227 (Fed. Cir. 1994). An inventor must only have "had the idea" and "need not know that his invention will work for conception to be complete." *Id.* at 1228.

"Patent issuance creates a presumption that the named inventors are the true and only inventors." *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998). Accordingly, "the burden of showing misjoinder or non-joinder of inventors is a heavy one and must be proved by clear and convincing evidence." *Beriont v. GTE Labs. Inc.*, 601 F. App'x 937, 939 (Fed. Cir.), *cert. denied,* 136 S. Ct. 148 (2015). Inventorship is a question of law that incorporates subsidiary findings of fact. *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 412 F.3d 1331, 1338 (Fed. Cir. 2005).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**\*\*REDACTED\*\***

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-02454 JAK (JEMx) | Date | March 22, 2015 |
|---|---|---|---|
| | LA CV14-02962 JAK (JEMx) | | |
| | LA CV14-03109 JAK (JEMx) | | |
| | LA CV14-03111 JAK (JEMx) | | |
| | SA CV14-00491 JAK (JEMx) | | |
| Title | Signal IP, Inc. v. American Honda Motor Co., Inc. | | |
| | Signal IP, Inc. v. Nissan North America, Inc. | | |
| | Signal IP, Inc. v. Mercedes-Benz USA, LLC, et al. | | |
| | Signal IP, Inc. v. BMW of North America, LLC et al. | | |
| | Signal IP, Inc. v. Mazda Motor of America, Inc. | | |

b)      Anticipation

"A patent is invalid for anticipation if a single prior art reference discloses each and every limitation of the claimed invention." *Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003) (citing *Lewmar Marine, Inc. v. Barient, Inc.*, 827 F.2d 744, 747 (Fed. Cir. 1987)). "[A] prior art reference may anticipate without disclosing a feature of the claimed invention if that missing characteristic is necessarily present, or inherent, in the single anticipating reference." *Id.* (citing *Continental Can Co. v. Monsanto Co.*, 948 F.2d 1264, 1268 (Fed. Cir. 1991)). However, for prior art to anticipate a claim "it must be sufficient to enable one with ordinary skill in the art to practice the invention." *3M v. Chemque, Inc.*, 303 F.3d 1294, 1301 (Fed. Cir. 2002).

c)      § 101 Analytical Framework

"Section 101 defines the subject matter that may be patented under the Patent Act." *Bilski v. Kappos*, 561 U.S. 593, 601 (2010). Section 101 provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. "Section 101 thus specifies four independent categories of inventions or discoveries that are eligible for patent protection: processes, machines, manufactures, and compositions of matter." *Bilski*, 561 U.S. at 601.

Although acknowledging that "[i]n choosing such expansive terms . . . Congress plainly contemplated that the patent laws would be given wide scope," the Supreme Court has long applied three exceptions to Section 101: "laws of nature, physical phenomena, and abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 308-09 (1980). Although these exceptions are not stated expressly in the statute, they are consistent with the idea that certain discoveries "are part of the storehouse of knowledge of all men" and are "free to all men and reserved exclusively to none." *Funk Bros. Seed Co. v. Kalo Inoculant Co.*, 333 U.S. 127, 130 (1948). Thus, "the concern that drives this exclusionary principle [is] one of pre-emption." *Alice Corp. Pty. Ltd. V. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (citation omitted). Consequently, the Court has required that "[i]f there is to be invention from such a discovery, it must come from the

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**\*\*REDACTED\*\***

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-02454 JAK (JEMx) | Date | March 22, 2015 |
|---|---|---|---|
| | LA CV14-02962 JAK (JEMx) | | |
| | LA CV14-03109 JAK (JEMx) | | |
| | LA CV14-03111 JAK (JEMx) | | |
| | SA CV14-00491 JAK (JEMx) | | |
| Title | Signal IP, Inc. v. American Honda Motor Co., Inc. | | |
| | Signal IP, Inc. v. Nissan North America, Inc. | | |
| | Signal IP, Inc. v. Mercedes-Benz USA, LLC, et al. | | |
| | Signal IP, Inc. v. BMW of North America, LLC et al. | | |
| | Signal IP, Inc. v. Mazda Motor of America, Inc. | | |

application of the law of nature to a new and useful end." *Funk Bros.*, 333 U.S. at 130. These principles have been held to apply with equal force to product and process claims. *Gottschalk v. Benson*, 409 U.S. 63, 67-68 (1972).

*Alice Corp. v. CLS Bank* contains the most recent statement on how courts should apply these principles. *Alice* expanded on the two-step approach for resolving Section 101 issues first set forth in *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1296-97 (2012). In the first step, a court must "determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Alice*, 134 S. Ct. at 2355 (citing *Mayo*, 132 S. Ct. at 1296-97). If so, then in the second step the court must ask "[w]hat else is there in the claims," which requires consideration of "the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (citing *Mayo*, 132 S. Ct. at 1297-98). In applying this second step, the court must "search for an 'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* (citing *Mayo*, 132 S. Ct. at 1294). This two-step analytical framework is called the "*Alice*" or "*Alice/Mayo*" test.

### B. Application

#### 1. Genuine Disputes Exist as to the Inventorship of the '374 Patent

Plaintiff asserts claim 3 of the '374 patent against Defendants Nissan and Mazda.

Defendants argue that the '374 patent is invalid for improper inventorship because there is at least one improperly nonjoined inventor. Dkt. 117 at 9. The '374 patent was originally assigned to Delco Electronics Corporation ("Delco"). The listed inventors -- Victor Mendez and Kevin Hayes -- were both employees of Delco at the time of invention. *Id.* However, Defendants argue that Dave Koch and/or other individuals at Cadillac first conceived the idea to use a combined receiver for the tire pressure monitoring system ("TPMS") and remote keyless entry system ("RKE"). *Id.*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**==**REDACTED**==**

**CIVIL MINUTES – GENERAL**

| Case No. | ==LA CV14-02454 JAK (JEMx)== | Date | March 22, 2015 |
|---|---|---|---|
| | LA CV14-02962 JAK (JEMx) | | |
| | LA CV14-03109 JAK (JEMx) | | |
| | LA CV14-03111 JAK (JEMx) | | |
| | SA CV14-00491 JAK (JEMx) | | |
| Title | Signal IP, Inc. v. American Honda Motor Co., Inc. | | |
| | Signal IP, Inc. v. Nissan North America, Inc. | | |
| | Signal IP, Inc. v. Mercedes-Benz USA, LLC, et al. | | |
| | Signal IP, Inc. v. BMW of North America, LLC et al. | | |
| | Signal IP, Inc. v. Mazda Motor of America, Inc. | | |

In support of this position, Defendants present an internal Delco email. They argue that it contains a summary of a meeting that was held on December 11, 1992. ███████████ ████████████████████████████████████████████████████████████████████ ██████████████████████ Defendants argue that because the '374 Record of Invention ("ROI") identifies December 11, 1992, as the date the invention was conceived (*id.* at DELHPI-004045), the email shows that Dave Koch and/or other individuals from Cadillac were the first to conceive of the underlying idea. Dkt. 117 at 11.

Plaintiff argues that Dave Koch and other individuals at Cadillac should not have been joined as inventors. Opp'n., Dkt. 149 at 2. One of the named inventors, Victor Mendez, testified that he and Kevin Hawes first conceived of the '374 invention. Dkt. 150, Ex. B at 63:4-9. Mendez also stated that, although the internal Delco email "makes it look like [Dave Koch] was a part of the solution," Mendez and Hawes actually developed the invention that led to the '374 patent. *Id.* at 41:21-42:4.

Hawes, who is the other named inventor, testified that he and Mendez conceived the '374 invention before the December 11, 1992 meeting. Dkt. 150, Ex. C at 44:10-45:1. Hawes explained that he believed the ROI only listed December 11, 1992 as the date of conception because when Mendez completed the ROI, the December 11, 1992 email was the earliest documentation relating to the idea that he could locate. *Id.* at 43:13-44:6.

Defendants have not met the burden of showing the absence of a genuine issue of fact as to the nonjoinder of Dave Koch or other individuals at Cadillac. Although the email offered could be considered circumstantial evidence of nonjoinder, it does not clearly state that Dave Koch or someone else at Cadillac first conceived of the '374 invention. Nor does it show the absence of a triable issue of fact on that question. As noted, Signal has presented evidence from both named inventors that they were the only ones who conceived of the idea that led to the issuance of the '374 patent. Thus, the Defendants' motion for summary judgment for improper inventorship fails. *See Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 412 F.3d 1331, 1338 (Fed. Cir. 2005) (reversing summary judgment because there was "flatly contradictory evidence" related to inventorship).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**==REDACTED==**

**CIVIL MINUTES – GENERAL**

| Case No. | ==LA CV14-02454 JAK (JEMx)==<br>LA CV14-02962 JAK (JEMx)<br>LA CV14-03109 JAK (JEMx)<br>LA CV14-03111 JAK (JEMx)<br>SA CV14-00491 JAK (JEMx) | Date | March 22, 2015 |
|---|---|---|---|
| Title | Signal IP, Inc. v. American Honda Motor Co., Inc.<br>Signal IP, Inc. v. Nissan North America, Inc.<br>Signal IP, Inc. v. Mercedes-Benz USA, LLC, et al.<br>Signal IP, Inc. v. BMW of North America, LLC et al.<br>Signal IP, Inc. v. Mazda Motor of America, Inc. | | |

### 2.    Genuine Disputes Exist as to Whether Pre-Suit Notice of Infringement of the '374 Patent is Required

Defendants argue that § 287(a) bars any damages arising prior to the filing of this action because unmarked, patented products were sold in the marketplace. Dkt. 117 at 12-15. Signal does not dispute that the products sold were unmarked. Instead, Signal contends that, because none of the products identified by Defendants practiced the '374 patent, there was no duty to mark and §287(a) does not apply. Dkt. 149 at 5-7 Thus, the issue is whether such products practiced the '374 patent.

Defendants assert that Delphi sold patented articles to Chrysler. Dkt. 117 at 12. A Delphi spreadsheet produced by Signal during this litigation shows that products covered by the '374 patent were used in production on the 1996-2002 Dodge Viper program. Dkt. 118, Ex. E. at SIG00001577. Delphi's corporate representative, Katherine Lutgen, also confirmed the sale of patented products for the Dodge Viper program. Dkt. 118, Ex. C. at 19:4-14. In response, Signal cites the testimony of inventor Victor Mendez. He stated that Delphi only "partially" put the '374 invention into production and "never sold this as a whole system" because they did not sell the sensors. Dkt. 150, Ex. B at 77:6-18. Based on this testimony, Plaintiff argues that the products sold did not meet every element of the '374 patent. Dkt. 149 at 6.

Citing *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 185 (Fed. Cir. 1994), Defendants argue that § 287(a) applies where a patentee sells a component specific to the patented combination to a customer who later combines components to sell a patented article. Dkt. 167 at 3. However, *Amsted* presented different facts. There, the patentee did not dispute that its customers sold a patented article. 24 F. 3d at 185. Further, it was clear that the patentee "impliedly authorized" its customers to sell a patented article because the patentee provided its customers with instructions on how to assemble its component with other components in accordance with the teachings of the patent. *Id.*

Here, Defendants have not presented evidence that Chrysler actually practiced the '374 invention by selling its Dodge Viper vehicles. Nor have Defendants proffered evidence that Delphi directly or impliedly authorized Chrysler to sell a patented article. For example, there is

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**\*\*REDACTED\*\***

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-02454 JAK (JEMx) | Date | March 22, 2015 |
|----------|--------------------------|------|----------------|
|          | LA CV14-02962 JAK (JEMx) |      |                |
|          | LA CV14-03109 JAK (JEMx) |      |                |
|          | LA CV14-03111 JAK (JEMx) |      |                |
|          | SA CV14-00491 JAK (JEMx) |      |                |
| Title    | Signal IP, Inc. v. American Honda Motor Co., Inc. |  |  |
|          | Signal IP, Inc. v. Nissan North America, Inc. |  |  |
|          | Signal IP, Inc. v. Mercedes-Benz USA, LLC, et al. |  |  |
|          | Signal IP, Inc. v. BMW of North America, LLC et al. |  |  |
|          | Signal IP, Inc. v. Mazda Motor of America, Inc. |  |  |

no evidence that Delphi provided instructions on how to assemble its "partial" RKE/TPMS system with sensors or by any other act. Further, Mendez has testified that the products sold to Chrysler did not meet every limitation of the '374 invention. Accordingly, given these factual disputes as to whether the products sold to Chrysler practiced the '374 patent, summary judgment fails based on this theory.

Defendants next argue that patented products were sold to Ford. Dkt. 117 at 13. At the deposition of Lutgen, who appeared as Delphi's representative, she testified that in 2010 Delphi sent Ford a quote for a '374 product. Dkt. 118, Ex. C at 35:14-24. Lutgen also testified that Delphi currently sells a TPMS product that went into production in 2012 for the Ford Fusion, F-150 and MKZ vehicles. Dkt. 118, Ex. C at 40:1-6. Signal argues that the presentation of a quote is not sufficient to show there is no triable issue as to whether a product was later created or sold. Dkt. 149 at 7. Signal also points out that Lutgen only uses the words "tire pressure monitoring system" to describe the product that went into production in 2012 for Ford. Dkt. 149 at 7. Because Lutgen does not specifically say that the system included a combined RKE/TPMS receiver, Plaintiff argues that there is no evidence that the "tire pressure monitoring system" Delphi sold to Ford practices the '374 patent. Dkt. 149 at 7.

The next issue arises from other pending litigation in which Signal has asserted claim 3 of the '374 patent against Ford. That case is proceeding in the Eastern District of Michigan. Dkt. 167, Ex. 1 at 3. In that action, Plaintiff's Amended Infringement Contentions assert that several Ford vehicles, including the F-Series, Fusion and MKZ, use the '374 invention. Dkt. 167, Ex. 1 at 3-4. Therefore, Defendants argue that *Amsted* applies because Delphi sold Ford a component directed to the '374 invention, and Ford used that component to create and sell a patented product. Dkt. 167 at 4-5.

Defendants add that Delphi's licensee, Lear Corporation, sold patented products. Dkt. 117 at 14. Delphi and Lear entered a license agreement for '374 products in December 2002. Dkt. 118, Ex. G filed under seal at Nissan Dkt. 141, Ex. G. In 2003, Lear made three royalty payments to Delphi under this license. Dkt. 118, Ex. H filed under seal at Nissan Dkt. 141, Ex. H. In 2005, Lear sent Delphi a letter stating that Lear did not need the license agreement:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**==\*\*REDACTED\*\*==**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-02454 JAK (JEMx) | Date | March 22, 2015 |
|---|---|---|---|
| | LA CV14-02962 JAK (JEMx) | | |
| | LA CV14-03109 JAK (JEMx) | | |
| | LA CV14-03111 JAK (JEMx) | | |
| | SA CV14-00491 JAK (JEMx) | | |
| Title | Signal IP, Inc. v. American Honda Motor Co., Inc. | | |
| | Signal IP, Inc. v. Nissan North America, Inc. | | |
| | Signal IP, Inc. v. Mercedes-Benz USA, LLC, et al. | | |
| | Signal IP, Inc. v. BMW of North America, LLC et al. | | |
| | Signal IP, Inc. v. Mazda Motor of America, Inc. | | |

> Lear Corporation has instituted design changes to its Tire Pressure Monitoring (TPM) products for model year 2006 and beyond. In connection with those design changes, we have re-visited the License Agreement between Lear and Delphi Technologies, Inc. concerning U.S. Patent No. 5,463,374. As a result of our review, we have determined that none of our TPM products are "Licensed Products" as defined under that Agreement.
>
> We therefore, do not anticipate making any future reports or royalty payments under our Agreement.

Dkt. 149, Ex. E.

Signal argues that Lear's statement that "we have determined that none of our TPM products are [sic] 'Licensed Products' as defined under that Agreement" establishes that Lear never sold '374 products. Dkt. 149 at 7. Signal claims that Lear sent the letter because it realized that it was paying royalties for products that were not covered by the '374 patent. Dkt. 149 at 7. In response, Defendants argue the only reasonable interpretation of the letter is that Lear changed its products in 2005 so that they no longer used the '374 invention. Dkt. 167 at 3-4. Thus, the previous license agreement and royalty payments demonstrate that Lear sold patented products. Dkt. 167 at 3-4.

A consideration of all of the foregoing evidence shows that there are genuine issues of fact as to whether the products sold by Delphi and its licensee practiced the '374 invention. Lutgen's testimony regarding the "tire pressure monitoring system" that went into production in 2012 for Ford is not sufficiently linked to the '374 patent to show that the systems sold to Ford either practiced or were directed to the '374 invention. Lutgen's testimony only references a "tire pressure monitoring system" as the product that went into production for Ford in 2012. Although the 2010 quote sent to Ford specifically mentioned a combined RKE/TPMS receiver, there is no evidence that it is connected to the products that went into production for Ford in 2012.

That Signal has accused Ford vehicles of infringing the '374 product in a similar action does not establish that the TPMS products that Delphi sold to Ford practiced the '374 invention. There has been no finding in that action that those products practiced every element of the '374

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**\*\*REDACTED\*\***

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-02454 JAK (JEMx)<br>LA CV14-02962 JAK (JEMx)<br>LA CV14-03109 JAK (JEMx)<br>LA CV14-03111 JAK (JEMx)<br>SA CV14-00491 JAK (JEMx) | Date | March 22, 2015 |
|---|---|---|---|
| Title | Signal IP, Inc. v. American Honda Motor Co., Inc.<br>Signal IP, Inc. v. Nissan North America, Inc.<br>Signal IP, Inc. v. Mercedes-Benz USA, LLC, et al.<br>Signal IP, Inc. v. BMW of North America, LLC et al.<br>Signal IP, Inc. v. Mazda Motor of America, Inc. | | |

invention. Further, *Amsted* does not apply because there is no evidence that Delphi authorized Ford to sell patented products, *e.g.*, by providing instruction on how to combine the components in accordance with the teachings of the '374 patent.

Similarly, there is a genuine dispute as to whether Lear sold patented products. If Plaintiff's interpretation of the operative letter is accepted, a jury could find that that Lear never sold patented products under the '374 license agreement.

### 3.    Claim 6 of the '775 Patent is Not Invalid Under § 101

Claim 6 of the '775 Patent describes a method of communicating two different types of data at two different message rates over a common communication link. '775 Patent at 6:25-45. The specification and some claims disclose a dual rate communication protocol that is designed to improve the communication of seat content data to an airbag system in motor vehicles. '775 Patent at Abstract. However, claim 6 is generic and only discloses the dual rate communication protocol.

Defendants argue that, because it does not claim any physical structure nor is it limited to any particular application or end use, the claim is directed to the abstract idea of combining two signals of differing rates so both signals can be sent over a common communication link. Dkt. 117 at 18. Further, Defendants argue that the broad scope of the claim preempts the use of the entire abstract idea because it covers any method of combining any two types of data of any type of common communication link. *Id.* at 19.

Signal responds that the claim is limited to specific types of electronic communications systems. It adds that these systems need to transmit two different types of data at two different rates where both types of data originate from the same physical location ("Target Systems"). Opp'n, Dkt. 149 at 21. It also argues that claim 6 answers the question of how to convey two substantially different types of data from one place to another over a single common link. Thus, it does so through the inventive concept of combining two different types of data by breaking one type of data messages into fragments and packaging them with complete messages of the other type of data. *Id.* at 22. Under this analysis, claim 6 teaches a method for structuring the

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**\*\*REDACTED\*\***

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-02454 JAK (JEMx) | Date | March 22, 2015 |
|---|---|---|---|
| | LA CV14-02962 JAK (JEMx) | | |
| | LA CV14-03109 JAK (JEMx) | | |
| | LA CV14-03111 JAK (JEMx) | | |
| | SA CV14-00491 JAK (JEMx) | | |
| Title | Signal IP, Inc. v. American Honda Motor Co., Inc. | | |
| | Signal IP, Inc. v. Nissan North America, Inc. | | |
| | Signal IP, Inc. v. Mercedes-Benz USA, LLC, et al. | | |
| | Signal IP, Inc. v. BMW of North America, LLC et al. | | |
| | Signal IP, Inc. v. Mazda Motor of America, Inc. | | |

transmission of electronic data to address an issue that specifically arises from the computer networks used in Target Systems. *Id.* at 23-24.

> a)    Whether Claim 6 is Directed to an Abstract Idea

Although declining to set out the "precise contours" of the abstract idea category, the Supreme Court has provided some guidelines. "We know that mathematical algorithms, including those executed on a generic computer, are abstract ideas." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256 (Fed. Cir. 2014) (citing *Gottschalk v. Benson*, 409 U.S. 63, 64 (1972)). Likewise, "[w]e know that some fundamental economic and conventional business practices are also abstract ideas." *Id.* (citing *Bilski v. Kappos*, 561 U.S. 593, 611 (2010); *Alice*, 134 S. Ct. at 2356.

Here, the claimed invention does not necessarily fit into any of these categories. Specifically, the method recited in claim 6 of the '775 patent describes a dual rate communications protocol:

> 6. A method of accommodating communication of first and second types of data at first and second message rates over a common communication link comprising the steps of:
> > establishing a message rate interval on the common communication link;
> > devoting a portion of each message rate interval to the first type of data and reserving a remaining portion of each message rate interval for the second type of data;
> > providing the first type of data at a first message rate sufficient to form a complete message within the devoted portion of each message rate interval;
> > providing the second type of data at a second message rate sufficient to form only a fragment of a complete message in the remaining portion of each message rate interval, thereby requiring a plurality of consecutive message rate intervals to form a complete message of the second type of data; and
> > transmitting at least one of the first and second types of data in the respective portions of each message rate interval.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**==\*\*REDACTED\*\*==**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-02454 JAK (JEMx) | Date | March 22, 2015 |
| --- | --- | --- | --- |
| | LA CV14-02962 JAK (JEMx) | | |
| | LA CV14-03109 JAK (JEMx) | | |
| | LA CV14-03111 JAK (JEMx) | | |
| | SA CV14-00491 JAK (JEMx) | | |
| Title | Signal IP, Inc. v. American Honda Motor Co., Inc. | | |
| | Signal IP, Inc. v. Nissan North America, Inc. | | |
| | Signal IP, Inc. v. Mercedes-Benz USA, LLC, et al. | | |
| | Signal IP, Inc. v. BMW of North America, LLC et al. | | |
| | Signal IP, Inc. v. Mazda Motor of America, Inc. | | |

'775 Patent at 6:25-45.

At a high level of abstraction, claim 6 can be characterized as a method of combining two signals of differing data rates so they can be sent over a common communication link. Although the parties dispute whether the claimed method is tied to electronic systems, the claim language itself is not limited to a physical structure or to a particular application. However, claim 6 can also be characterized at a more detailed level. Its elements identify a concept directed to improving communications that involve at least two different types of data sent over a single common link. Both types of data need to be communicated regularly but at different "message rates." The "first type of data" has more time sensitivity such that it has to form a complete message within a "message rate interval." The "second type of data" needs to be updated less frequently than the "first type of data" and can be transmitted in fragments across consecutive message intervals to form a complete message. This suggests that improving communications through the method taught in claim 6 has a more tangible form and is not merely a generic implementation of an abstract idea.

As recognized by the Federal Circuit, identifying the precise nature of the abstract idea can be difficult. *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1255 (Fed. Cir. 2014). For the reasons stated below, under either characterization of the abstract idea, claim 6 satisfies step 2 of the *Alice* test.

> b)   <u>Inventive Concept</u>

Assuming, without deciding, that claim 6 is directed to an abstract idea, the second step in the *Alice* analysis requires a determination whether the claims contain an "inventive concept" to transform the claimed abstract idea into patent-eligible subject matter. *Alice*, 135 S. Ct. at 2357.

Defendants argue that there is nothing inventive about the concept of transmitting two kinds of messages. They also contend that claim 6 is similar to a claim that the Federal Circuit invalidated in *Digitech*. Dkt. 117 at 19. Reliance on *Digitech* is misplaced. The claims at issue there involved generating two types of data relating to digital image processing and "combining said first and second data into the device profile." *Digitech Image Technologies, LLC v.*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**\*\*REDACTED\*\***

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-02454 JAK (JEMx) | Date | March 22, 2015 |
|----------|--------------------------|------|----------------|
| | LA CV14-02962 JAK (JEMx) | | |
| | LA CV14-03109 JAK (JEMx) | | |
| | LA CV14-03111 JAK (JEMx) | | |
| | SA CV14-00491 JAK (JEMx) | | |
| Title | Signal IP, Inc. v. American Honda Motor Co., Inc. | | |
| | Signal IP, Inc. v. Nissan North America, Inc. | | |
| | Signal IP, Inc. v. Mercedes-Benz USA, LLC, et al. | | |
| | Signal IP, Inc. v. BMW of North America, LLC et al. | | |
| | Signal IP, Inc. v. Mazda Motor of America, Inc. | | |

*Electronics for Imaging, Inc.*, 758 F.3d 1344, 1347-48, 1351 (Fed. Cir. 2014). *Digitech* concluded that the patent simply sought to claim a process for combining the two data sets into a single data set and concluded that "a process that employs mathematical algorithms to manipulate existing information to generate additional information is not patent eligible." *Id.* at 1351.

Claim 6 of the '775 Patent is different. It includes specific limitations that recite a specific process for transforming two types of data into a single, efficient data stream by use of a "message rate interval" and fragmentation of messages. For these reasons, the '775 Patent, both in the written description and in the claims, sets forth and addresses a technical problem and its solution. *See DDR Holdings, LLC v. Hotels.com*, L.P., 773 F.3d 1245, 1257 (Fed. Cir. 2014) (rejecting § 101 challenge and noting that "the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks.").

Although not tied to specific structures or machines, claim 6 contains meaningful limitations that represent sufficiently-inventive concepts. These include the combination of two different types of data streams. This is effected by breaking the lower-rate data message into fragments and packaging them with complete messages of the higher-rate data to ensure an efficient transmission of both types of data. This particular method of packaging data is not necessary or obvious for achieving data transmission. The ongoing eligibility of this patent will not preclude the use of other data transmission techniques, including those suggested, with humor, by Defendants: smoke signals, semaphores, and two tin cans with a string. Dkt. 167 at 6. Accordingly, the risk of preemption is reduced. For the foregoing reasons, the method claims an inventive concept in the realm of data communications over a single communication link, rendering the claim patent-eligible.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**==REDACTED==**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-02454 JAK (JEMx) | Date | March 22, 2015 |
|---|---|---|---|
| | LA CV14-02962 JAK (JEMx) | | |
| | LA CV14-03109 JAK (JEMx) | | |
| | LA CV14-03111 JAK (JEMx) | | |
| | SA CV14-00491 JAK (JEMx) | | |
| Title | Signal IP, Inc. v. American Honda Motor Co., Inc. | | |
| | Signal IP, Inc. v. Nissan North America, Inc. | | |
| | Signal IP, Inc. v. Mercedes-Benz USA, LLC, et al. | | |
| | Signal IP, Inc. v. BMW of North America, LLC et al. | | |
| | Signal IP, Inc. v. Mazda Motor of America, Inc. | | |

### 4. Claim 6 of the '775 Patent is Anticipated by Decotignie[3]

Mercedes argues that under Signal's broad interpretations of certain terms in claim 6 of the '775 patent, the claim is anticipated by the Decotignie prior art reference. Dkt. 121 at 25-26. Mercedes's expert, Dr. Koopman testified that Decotignie discloses every element of the claim. Dkt. 122, Ex. 21 at ¶¶ 143-150.

Signal contends that Decotignie does not disclose elements 2, 3 and 4 of the claim. Dkt. 132 at 16. First, Signal argues that Decotignie does not disclose "reserving a remaining portion of each message rate interval for the second type of data" as recited in the second element of the claim. *Id.* Second, Signal argues that Decotignie does not disclose "messages" as required by the third and fourth elements of the claim.

Claim 6 provides:

> 6. A method of accommodating communication of first and second types of data at first and second message rates over a common communication link comprising the steps of:
> > establishing a message rate interval on the common communication link;
> > devoting a portion of each message rate interval to the first type of data and ***reserving a remaining portion of each message rate interval for the second type of data;***
> > providing the first type of data at a first message rate sufficient to form a ***complete message*** within the devoted portion of each message rate interval;
> > providing the second type of data at a second message rate sufficient to form only a ***fragment of a complete message*** in the remaining portion of each message rate interval, thereby requiring a plurality

---

[3] Because only Mercedes presents this argument in its separate motion, all docket entry citations in this section refer to the Mercedes action, LA CV14-03109 JAK (JEMx).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**\*\*REDACTED\*\***

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-02454 JAK (JEMx) | Date | March 22, 2015 |
|---|---|---|---|
| | LA CV14-02962 JAK (JEMx) | | |
| | LA CV14-03109 JAK (JEMx) | | |
| | LA CV14-03111 JAK (JEMx) | | |
| | SA CV14-00491 JAK (JEMx) | | |
| Title | Signal IP, Inc. v. American Honda Motor Co., Inc. | | |
| | Signal IP, Inc. v. Nissan North America, Inc. | | |
| | Signal IP, Inc. v. Mercedes-Benz USA, LLC, et al. | | |
| | Signal IP, Inc. v. BMW of North America, LLC et al. | | |
| | Signal IP, Inc. v. Mazda Motor of America, Inc. | | |

> of consecutive message rate intervals to form a complete
> message of the second type of data; and
> transmitting at least one of the first and second types of data in the
> respective portions of each message rate interval.

'775 Patent at 6:25-45.

Signal's arguments fail to raise a genuine dispute of fact regarding anticipation by Decotignie.

> a)    "reserving a remaining portion of each message rate interval for
> the second type of data"

Decotignie discloses sending two types of data -- periodic data and sporadic data. Signal argues that Decotignie does not teach this "reserving a remaining portion of each message rate interval for the second type of data" because the reference states that "no sporadic traffic will take place as long as all periodic requests are pending." Dkt. 132 at 16 (quoting Dkt. 122, Ex. 24). Based on this sentence, Signal argues that the entire message in Decotignie could be consumed by only periodic data. *Id.* Accordingly, it contends that no portion of the message is reserved for sporadic data. *Id.*

Signal's argument fails to address the balance of the reference, which defeats its position. Decotignie discloses reserving half of the microcycle to periodic data and the other half to sporadic data. Dkt. 122, Ex. 24 at 40, col. 2. Half of a microcycle is "a portion" of a microcycle. Decotignie discloses "establish[ing] a basic cycle in two distinct phases, the periodic phase and the sporadic phase (figure 7)." *Id.* at 41, col. 2. Decotignie also states that "[d]uring a microcycle, both periodic and sporadic traffics must be handled." *Id.* at 41, col. 2. Figure 7 shows a microcycle divided into a periodic phase and a sporadic phase. *Id.* at 41, fig. 7. Periodic data is the first type of data and sporadic data is the second type of data. Thus, Decotignie discloses reserving a portion of the microcycle to the second type of data.

Further, Signal's argument directly contradicts a prior position that it advanced. Signal's expert, Dr. Smedley, testified that in Decotignie "[t]he first part of a microcycle is used for periodic traffic, ***and the remainder is used for aperiodic [sporadic] traffic***, but the amount of the

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**REDACTED**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-02454 JAK (JEMx) | Date | March 22, 2015 |
|---|---|---|---|
| | LA CV14-02962 JAK (JEMx) | | |
| | LA CV14-03109 JAK (JEMx) | | |
| | LA CV14-03111 JAK (JEMx) | | |
| | SA CV14-00491 JAK (JEMx) | | |
| Title | Signal IP, Inc. v. American Honda Motor Co., Inc. | | |
| | Signal IP, Inc. v. Nissan North America, Inc. | | |
| | Signal IP, Inc. v. Mercedes-Benz USA, LLC, et al. | | |
| | Signal IP, Inc. v. BMW of North America, LLC et al. | | |
| | Signal IP, Inc. v. Mazda Motor of America, Inc. | | |

microcycle used for each varies." Dkt. 122, Ex. 18 at ¶ 265 (citing Dkt. 122, Ex. 24 at 40, fig. 6) (emphasis added). Thus, Smedley admitted that Decotignie reserves a portion of the microcycle for sporadic traffic. Indeed, the last column of the chart in Figure 6 of the Decotignie reference shows that a portion of the microcycle is still reserved for sporadic data, even if only periodic data is sent. Dkt. 122, Ex. 24 at 40, Fig. 6.

For the foregoing reasons, Signal has failed to raise a genuine dispute of fact to show that Decotignie does not disclose "reserving a remaining portion of the each message rate interval for the second type of data."

> b)    "messages"

Signal quotes Koopman's deposition testimony in support of its argument that Decotignie is only a generic paper that does not disclose messages. Dkt. 132 at 16.

> Q. Let's focus on A, the box labeled A. What is *the message transmitted* in that box?
> A. I don't -- I don't see a specific type of data identified. This is a generic paper and so it's some piece of data that happens to be called A.

Dkt. 132, Ex. G at 100:24-101:3 (emphasis added).

Signal mischaracterizes Koopman's testimony. In the cited portion, Koopman states that he does not know the *specific type of data* that the message sends. Koopman's answer cannot be interpreted to mean that Decotignie does not send messages. Moreover, the question itself necessarily admits that Decotignie discloses messages. That is because the question asks Koopman to identify what is the message. Furthermore, elsewhere in his deposition Koopman clearly testified that Decotignie discloses messages: "Yes, Decotignie discloses a message," Dkt. 155, Ex. C at 97:18; "that reference is using CAN messages," *id.* at 97:20-21; "the messages are shown in Figure 6," *id.* at 98:2; "each one of those boxes with a letter in it is a message," *id.* at 99:23-24.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**\*\*REDACTED\*\***

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-02454 JAK (JEMx) | Date | March 22, 2015 |
|---|---|---|---|
| | LA CV14-02962 JAK (JEMx) | | |
| | LA CV14-03109 JAK (JEMx) | | |
| | LA CV14-03111 JAK (JEMx) | | |
| | SA CV14-00491 JAK (JEMx) | | |
| Title | Signal IP, Inc. v. American Honda Motor Co., Inc. | | |
| | Signal IP, Inc. v. Nissan North America, Inc. | | |
| | Signal IP, Inc. v. Mercedes-Benz USA, LLC, et al. | | |
| | Signal IP, Inc. v. BMW of North America, LLC et al. | | |
| | Signal IP, Inc. v. Mazda Motor of America, Inc. | | |

Further, Decotignie itself discloses the sending of messages: "FIP provides mechanisms to ensure real-time transfers of variables and *messages*." Dkt. 122, Ex. 24 at 38, col. 1 (emphasis added); "Each microcycle is divided into four slots, one for periodic variables and *message transfers*, one for sporadic variable transfers, one for *sporadic message transfers* and a synchronization slot." *Id.* (emphasis added); "The distributor has to comply with two principal tasks: *scheduling* and *dispatching* of messages." *Id.* at 41, col. 1 (emphasis in original); "In our case the tasks are the *messages to be transmitted…*the dispatcher *transfers messages* according to the table represented on figure 6." *Id.* (emphasis added).

For the foregoing reasons, Signal has failed to raise a genuine dispute of fact to show that Decotignie does not disclose "messages."  Accordingly, claim 6 of the '775 Patent is invalid based on Decotignie.

###### 5.     Claims 1, 2, and 6 of the '927 Patent Are Not Unpatentable Abstract Ideas

Claims 1, 2, and 6 of the '927 Patent are patent-eligible. They are not abstract ideas under step 1 of the *Alice/Mayo* test. Even if the claims were abstract ideas, they would still be patentable under step 2 of the test because they disclose an inventive concept that transforms the claims into something more than an unpatentable abstract idea.

###### a)     Claims 1, 2, and 6 Are Not Abstract Ideas Under Step 1 of the *Alice/Mayo* Test

Defendants contend that the '927 Patent claims are directed to the abstract idea of "varying the length of time that an alert stays on based on the relative speed of two vehicles." Dkt. 117 at 22. It is difficult to distinguish patent-eligible inventions and patent-ineligible abstract ideas because "the line separating the two is not always clear." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1255 (Fed. Cir. 2014).

Although there is no bright-line test to determine if an idea is abstract, there are several recognized categories of abstract ideas. *See Alice* 134 S. Ct. at 2354–57. Mathematical

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**\*\*REDACTED\*\***

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-02454 JAK (JEMx) | Date | March 22, 2015 |
| | LA CV14-02962 JAK (JEMx) | | |
| | LA CV14-03109 JAK (JEMx) | | |
| | LA CV14-03111 JAK (JEMx) | | |
| | SA CV14-00491 JAK (JEMx) | | |
| Title | Signal IP, Inc. v. American Honda Motor Co., Inc. | | |
| | Signal IP, Inc. v. Nissan North America, Inc. | | |
| | Signal IP, Inc. v. Mercedes-Benz USA, LLC, et al. | | |
| | Signal IP, Inc. v. BMW of North America, LLC et al. | | |
| | Signal IP, Inc. v. Mazda Motor of America, Inc. | | |

algorithms, including those implemented on a generic computer, are unpatentable abstract ideas. *DDR* Holdings, 773 F.3d at 1256 (citing *Gottschalk v. Benson,* 409 U.S. 63, 64 (1972)). Methods that can be "performed mentally" or are the "equivalent of human mental work" are abstract ideas. *See CyberSource Corp. v. Retail Decisions, Inc.,* 654 F.3d 1366, 1373 (Fed. Cir. 2011). Similarly, longstanding commercial practices or fundamental economic practices are abstract ideas. *See Alice*, 134 S. Ct. at 2354–57.

Defendants argue that the '927 Patent claims are directed to a mathematical algorithm. At oral argument, Defendants emphasized that the '927 Patent describes itself as an "algorithm," and that an algorithm is software, which is paradigmatic of an abstract idea. The dispute over the meaning of the word "algorithm" is not a novel one. *See, e.g.*, *In re Pardo*, 684 F.2d 912, 915 (C.C.P.A. 1982) ("It has often been recognized that the word 'algorithm' is subject to a number of definitions."). Taken in its broadest sense, an algorithm can encompass "every step-by-step process, be it electronic or chemical or mechanical . . ." *In re Iwahashi*, 888 F.2d 1370, 1374 (Fed. Cir. 1989). However, because Section 101 expressly includes processes as patentable subject matter, "algorithms" in the broadest sense -- defined to encompass every step-by-step process -- must be patentable. "This is why the proscription against patenting has been limited to *mathematical* algorithms and abstract *mathematical* formulae which, like the laws of nature, are not patentable subject matter. *Id.* (emphasis in original).

The '927 Patent claims do not recite a mathematical algorithm. They are only an "algorithm" in the broadest sense of the term. The relevant claim steps are not mathematical in nature; they describe concrete steps to be performed. For example, claim 1 requires "determining the relative speed of the host and target vehicles" and "at the end of the alert command, determining whether the alert signal was active for a threshold time." '927 Patent at 5:28–6:2. Because these steps are not inherently mathematical, the claimed invention does not claim a mathematical algorithm.

Nor are the '927 Patent claims "a procedure for solving a given type of mathematical problem." *See Diamond v. Diehr*, 450 U.S. 175, 213–14 n. 38 (1981). The '927 Patent claims solve at least two blind-spot-system-specific practical problems arising from the use of radars: (i) failure to detect a vehicle in the blind-spot zone because of the vehicle's reflectivity; and (ii) "flickering"

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**==REDACTED==**

**CIVIL MINUTES – GENERAL**

| Case No. | ==LA CV14-02454 JAK (JEMx)==<br>LA CV14-02962 JAK (JEMx)<br>LA CV14-03109 JAK (JEMx)<br>LA CV14-03111 JAK (JEMx)<br>SA CV14-00491 JAK (JEMx) | Date | March 22, 2015 |
|---|---|---|---|
| Title | Signal IP, Inc. v. American Honda Motor Co., Inc.<br>Signal IP, Inc. v. Nissan North America, Inc.<br>Signal IP, Inc. v. Mercedes-Benz USA, LLC, et al.<br>Signal IP, Inc. v. BMW of North America, LLC et al.<br>Signal IP, Inc. v. Mazda Motor of America, Inc. | | |

alerts when a vehicle drives near the edge of the blind-spot zone. Neither problem is mathematical.

At the hearing, Defendants argues that *Parker v. Flook* is controlling. However, it presented distinct facts. The relevant patent there claimed a method of computing an alarm limit. 437 U.S. 584, 585 (1978). The formula described in the method relied on several variables. Although the patent claimed a formula with variables, it "did not purport to explain how these other variables were to be determined." *Diamond v. Diehr*, 450 U.S. at 186. Nor did the patent purport "to contain any disclosure relating to the chemical processes at work, the monitoring of process variables, or the means of setting off an alarm or adjusting an alarm system. All that it provide[d] [was] a formula for computing an updated alarm limit." *Id.* at 187.

The '927 Patent is different. It explains how to determine relevant variables and describes more than just a mathematical formula. The '927 Patent explains how variables are selected in detail. *See*, *e.g.*, '927 Patent at 4:50–67 ("The suggested values of THRESHOLD and HOLD times are shown in the graph of FIG. 6 . . . . The THRESHOLD is high at low speeds because the target discrimination is less robust at low speeds and it is desired to not emphasize the shorter alerts since they may be false alarms"). And, unlike the alarm-limit method in *Flook*, the '927 Patent provides more than a formula. *Flook*, 437 U.S. at 187. It provides concrete steps to be performed that are not inherently mathematical.

Because the '927 Patent claims are not abstract ideas under step 1 of the *Alice/Mayo* test, the claims are patentable subject matter. But, even if the conclusion were to the contrary, the '927 Patent claims would still be patentable because they satisfy Step 2 of the *Alice/Mayo* test.

   b)  Claims 1, 2, and 6 Disclose a Sufficient Inventive Concept.

First, the '927 Patent describes a technical solution to a technical problem. It addresses at least three technical problems in blind-spot detection systems: dropouts, flickering, and limited radar coverage. Dropouts are a technical problem resulting from a radar's limited ability to detect a target vehicle when the radar hits a reflective part of that vehicle. Flickering is a technical problem resulting from target vehicles that drive near the edge of the blind-spot zone. Limited radar coverage is a technical problem resulting from a radar's limited range. The '927 Patent

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## **REDACTED**

### CIVIL MINUTES – GENERAL

| Case No. | LA CV14-02454 JAK (JEMx) | Date | March 22, 2015 |
|---|---|---|---|
| | LA CV14-02962 JAK (JEMx) | | |
| | LA CV14-03109 JAK (JEMx) | | |
| | LA CV14-03111 JAK (JEMx) | | |
| | SA CV14-00491 JAK (JEMx) | | |
| Title | Signal IP, Inc. v. American Honda Motor Co., Inc. | | |
| | Signal IP, Inc. v. Nissan North America, Inc. | | |
| | Signal IP, Inc. v. Mercedes-Benz USA, LLC, et al. | | |
| | Signal IP, Inc. v. BMW of North America, LLC et al. | | |
| | Signal IP, Inc. v. Mazda Motor of America, Inc. | | |

claims a technical solution to each of these problems: sustaining the blind-spot alert for some period of time, based on the relative speed of the host and target vehicle, if the target vehicle has been in the blind-spot zone for a threshold time. Further, the preamble of claim 1 is limiting, restricting the claimed invention to radar systems. Claim Construction Order, Dkt. 64 at 12–14.

Second, because the '927 Patent is limited to systems using radar, it satisfies the machine-or-transformation test. Under this test, a court determines: (i) if the claimed process is tied to a particular machine or apparatus; or (ii) if it transforms a particular article into a different state or thing. *See Bilski v. Kappos*, 561 U.S. 593, 594 (2010) (the machine-or-transformation test is a "useful and important clue or investigative tool" for determining patent eligibility). Because the claimed method is tied to radar systems -- a particular machine -- it satisfies the machine-or-transformation test.

Finally, the claims do not preempt a wide field. There are many conceivable solutions to the problems addressed by the '927 Patent that would not read on its claims. For example, the '927 Patent claims a "variable sustain time" based on the relative speed of the target vehicle and the host vehicle. A fixed sustain time could solve the same problems addressed by the '927 Patent. A variable sustain time that is based on something other than relative speed could do the same. Defendants discuss many possible ways to solve these problems without infringing the '927 Patent. *See, e.g.,* Dkt. 114-1 at 16–18 (BMW's blind-spot detection system uses a "fixed, velocity independent [sustain] time" for the blind-spot alarm); Kia Dkt. 124 at 10–11 (Kia's blind-spot detection system solves these problems by ███████████████████████████████; Mazda Dkt. 133 at 15–18 ██████; Mercedes Dkt. at 9–12 (radar detection systems have sufficiently advanced so that the stated problems are no longer an issue).

For the foregoing reasons, Defendants' motion for summary judgment on claims 1, 2, and 6 of the '927 Patent is **DENIED**.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**\*\*REDACTED\*\***

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-02454 JAK (JEMx) | | Date | March 22, 2015 |
|----------|--------------------------|---|------|----------------|
| | LA CV14-02962 JAK (JEMx) | | | |
| | LA CV14-03109 JAK (JEMx) | | | |
| | LA CV14-03111 JAK (JEMx) | | | |
| | SA CV14-00491 JAK (JEMx) | | | |
| Title | Signal IP, Inc. v. American Honda Motor Co., Inc. | | | |
| | Signal IP, Inc. v. Nissan North America, Inc. | | | |
| | Signal IP, Inc. v. Mercedes-Benz USA, LLC, et al. | | | |
| | Signal IP, Inc. v. BMW of North America, LLC et al. | | | |
| | Signal IP, Inc. v. Mazda Motor of America, Inc. | | | |

## VI.    CONCLUSION

For the reasons stated in this Order:

Defendants' Motion for Summary Judgment that the '374 patent is invalid for improper inventorship is **DENIED**;

Defendants' Motion for Summary Judgment that Signal is entitled to no damages under § 287(a) is **DENIED**;

Defendants' Motion for Summary Judgment that claim 6 of the '775 patent is invalid under 35 U.S.C. § 101 is **DENIED**;

Mercedes's Motion for Summary Judgment that claim 6 of the '775 patent is anticipated under 35 U.S.C. § 102 is **GRANTED**;

Defendants' Motion for Summary Judgment that claims 1, 2, and 6 of the '927 Patent are invalid under 35 U.S.C. § 101 is **DENIED**.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer    ak