UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

HONORABLE JOHN A. KRONSTADT

UNITED STATES DISTRICT JUDGE PRESIDING

- - -

```
SIGNAL IP, INC.,                    )
                                    )  CV14-02457-JAK
              PLAINTIFF,            )  CV14-02454-JAK
                                    )  CV14-03111-JAK
VS.                                 )  CV14-02962-JAK
                                    )  CV14-00491-JAK
AMERICAN HONDA MOTOR CO., INC.,     )  CV14-03109-JAK
ET AL.,                             )
                                    )
              DEFENDANT.            )
_____)
                                    )
- AND RELATED CASES -               )
                                    )
                                    )
_____)
```

REPORTER'S TRANSCRIPT OF PROCEEDINGS

LOS ANGELES, CALIFORNIA

MONDAY, MARCH 7, 2016, 10:00 AM

_____

ALEXANDER T. JOKO, CSR NO. 12272
FEDERAL OFFICIAL COURT REPORTER
255 EAST TEMPLE STREET, ROOM 181-H
LOS ANGELES, CA 90012
AJ_CSR@YAHOO.COM

1    **APPEARANCES OF COUNSEL:**

2

3                        (AS STATED ON THE RECORD)

```
 1              LOS ANGELES, CALIFORNIA; MONDAY, MARCH 7, 2016

 2                          10:00 AM

 3                        - - - - -

 4

 5

 6         THE COURT:  PLEASE STATE YOUR APPEARANCES IN

 7   THE SIGNAL IP CASE.

 8         MR. HATCH:  GOOD MORNING, YOUR HONOR.  RYAN

 9   HATCH FOR SIGNAL.

10         MR. FENSTER:  GOOD MORNING, YOUR HONOR.  MARC

11   FENSTER WITH RUSS, AUGUST AND KABAT ON BEHALF OF SIGNAL

12   IP.

13         MR. WANG:  GOOD MORNING, YOUR HONOR.  BEN WANG

14   ON BEHALF OF RUSS, AUGUST AND KABAT ON BEHALF OF THE

15   PLAINTIFF.

16         THE COURT:  GOOD MORNING.

17              AND FOR DEFENDANTS?

18         MR. DAVIS:  GOOD MORNING, YOUR HONOR.  AHMED

19   DAVIS FROM FISH AND RICHARDSON FOR THE HONDA

20   DEFENDANTS.

21              MY PARTNER RALPH PHILLIPS IS HERE AS

22   WELL.

23         MR. LAVELLE:  GOOD MORNING, YOUR HONOR.  JOE

24   LAVELLE FROM DLA PIPER FOR THE BMW DEFENDANTS.

25              AND MY COLLEAGUE BRIAN BIGGS IS WITH ME
```

```
 1   AS WELL TODAY.
 2            THE COURT:  GOOD MORNING.
 3            MR. PABIS:  GOOD MORNING, YOUR HONOR.  RON
 4   PABIS FROM GREENBERG TRAURIG ON BEHALF OF KIA MOTORS
 5   AMERICA.
 6                 AND WITH ME IS MY COLLEAGUE STEVE
 7   SHAHIDA.
 8            THE COURT:  GOOD MORNING.  WELCOME.
 9            MR. SATCHWELL:  GOOD MORNING AGAIN, YOUR
10   HONOR.  MAT SATCHWELL FROM DLA PIPER FOR MAZDA.
11                 AND WITH ME IS MY COLLEAGUE STEVE
12   REYNOLDS.
13            THE COURT:  GOOD MORNING, MR. SATCHWELL AND
14   MR. REYNOLDS.
15            MR. DOYLE:  GOOD MORNING, YOUR HONOR.  SCOTT
16   DOYLE FROM FRIED FRANK ON BEHALF OF MERCEDES-BENZ USA.
17                 AND WITH ME TODAY ARE MY COLLEAGUES JOHN
18   DE FOSSE AND TED NISSLY.
19            THE COURT:  GOOD MORNING.
20            MR. DOYLE:  GOOD MORNING, YOUR HONOR.  PAT
21   LUJIN OF SHOOK, HARDY AND BACON.
22                 WITH ME IS MY COLLEAGUE RICH EISZNER.
23            THE COURT:  GOOD MORNING, MR. LUJIN AND
24   MR. EISZNER.
25                 MS. KEIFER HAS GIVEN TO YOU MY TENTATIVE
```

1    STATEMENTS AS TO THE NUMEROUS MOTIONS THAT HAVE BEEN

2    PRESENTED.  I WANT TO EMPHASIZE THESE ARE TENTATIVE

3    VIEWS.  THESE ARE NOT FINAL VIEWS.  THAT'S WHY YOU'RE

4    HERE.

5                  AS YOU ALSO KNOW FROM OUR PRIOR -- THE

6    PRIOR TIMES WHEN YOU WERE HERE AND I GAVE YOU SIMILAR

7    DOCUMENTS, ALL OF THESE ARE TO BE RETURNED BEFORE YOU

8    LEAVE THE COURTROOM.  DON'T MAKE COPIES.  DON'T TAKE

9    PICTURES AND SO ON.

10                  THE PURPOSE OF PROVIDING THESE TO YOU IS

11   SO YOU CAN REVIEW THEM AND FOCUS YOUR PRESENTATIONS TO

12   ME AS TO WHERE I HAVE IT RIGHT OR WRONG.  MAINLY, WHERE

13   YOU DISAGREE WITH ME.  BUT THAT'S WHAT I HAVE IN MIND.

14                  WE HAVE DONE OUR BEST RECOGNIZING THAT

15   THERE'S SOME CONFIDENTIAL INFORMATION THAT HAS BEEN

16   PROVIDED IN CONNECTION WITH CERTAIN OF THE MOTIONS.

17   WE'VE DONE OUR BEST IN PROVIDING YOU WITH THE

18   TENTATIVES TO BREAK THEM UP SO AS TO NOT DISCLOSE TO

19   ONE PARTY THE -- ANY CONFIDENTIAL INFORMATION OFFERED

20   BY ONE DEFENDANT CONFIDENTIAL INFORMATION OF ANOTHER.

21   AND I THINK WE'VE REASONABLY ACCOMPLISHED THAT.  BUT IF

22   INASMUCH AS WE HAVE NOT, YOU'LL BE RETURNING THIS AND

23   NO PHOTOGRAPHS AND SO ON, I DON'T -- LET ME SAY IT THIS

24   WAY:

25                  IF ANY DEFENDANT RECEIVING A TENTATIVE AS

```
 1    TO THAT PARTY BELIEVES THAT THERE'S INFORMATION IN

 2    THERE THAT IS CONFIDENTIAL TO ANOTHER DEFENDANT, THEN

 3    LET MS. KEIFER KNOW AFTER YOU HAVE REVIEWED THIS.  AND

 4    WE'LL ADDRESS THIS.  BUT, AGAIN, I THOUGHT THIS WAS THE

 5    MOST EFFICIENT WAY TO PROCEED.

 6                    IS THERE ANY CONCERN THAT ANY DEFENDANT

 7    HAS THAT I HAVE POTENTIALLY INCLUDED SOME INFORMATION

 8    THAT ANOTHER ONE OF YOUR COUNSEL FOR ANOTHER DEFENDANT

 9    MIGHT SEE?

10                    IS THERE ANY PARTY REPRESENTATIVE PRESENT

11    TODAY AS OPPOSED TO LAWYERS?

12             MR. DAVIS:  YOUR HONOR, ON BEHALF OF HONDA, MY

13    CLIENT, MR. DONALD STEVENS IS HERE.

14             THE COURT:  I WOULD SAY UNTIL EVERYBODY HAS

15    REVIEWED ALL OF THESE AND WE START THE HEARING, WHY

16    DON'T YOU FORBEAR FROM DISCLOSING TO YOUR CLIENT ANY

17    INFORMATION THAT YOU THINK MIGHT BE CONFIDENTIAL TO

18    ANOTHER DEFENDANT.  JUST TO LEAVE IT WITH YOU.  I DON'T

19    THINK THERE WILL BE ANY.  BUT IF THERE IS, WILL YOU DO

20    THAT, PLEASE?

21             MR. DAVIS:  I WILL, YOUR HONOR.

22             MR. FENSTER:  YOUR HONOR, WE HAVE A CLIENT

23    REPRESENTATIVE FROM SIGNAL AS WELL.

24             THE COURT:  GOOD MORNING.  WELCOME.

25                    I WANT YOU TO HAVE AN OPPORTUNITY TO
```

```
1    REVIEW THESE THINGS.  WHAT'S THE MOST -- DOES IT MAKE
2    SENSE TO START AT 10:30?
3              DOES THAT GIVE YOU ENOUGH TIME?
4              MR. DAVIS:  I THINK AT LEAST ON BEHALF OF
5    HONDA, 25 MINUTES SHOULD BE SUFFICIENT, YOUR HONOR.
6              THE COURT:  WHAT DO YOU THINK?
7              MR. HATCH:  YES, YOUR HONOR.  THAT SHOULD BE
8    SUFFICIENT.
9              THE COURT:  DO YOU THINK YOU NEED LESS THAN
10   THAT?
11             MR. DOYLE:  NOT LESS.
12             THE COURT:  WE'LL PLAN TO HAVE YOU REVIEW
13   THESE AND RECONVENE AT 10:30.
14                  IF, PRIOR TO 10:30, YOU THINK YOU NEED
15   LESS TIME AND YOU ARE READY TO GO, LET US KNOW.
16                  IF YOU THINK YOU NEED MORE TIME, LET
17   MS. KEIFER KNOW.
18                  AND DEPENDING ON THE ORDER IN WHICH YOU
19   WANT TO PROCEED, WE MAY BE ABLE TO START WITH SOME AND
20   NOT OTHERS.
21             OKAY.  THANK YOU.
22             (RECESS)
23             THE COURT:  OKAY.  GOOD MORNING AGAIN.
24                  HAVE YOU HAD SUFFICIENT TIME TO REVIEW
25   THE MATERIALS AND ARE READY TO PROCEED?
```

```
 1              I DON'T SEE ANYONE SAYING, "NO."
 2              MR. HATCH, LET ME START WITH YOU.
 3              HAVE YOU DISCUSSED THE -- WHAT YOU THINK
 4    WOULD BE THE MOST EFFICIENT ORDER IN WHICH TO ADDRESS
 5    THE MANY ISSUES?
 6              MR. HATCH:  WITH RESPECT TO WHAT WE WOULD LIKE
 7    TO ADDRESS, WE WOULD LIKE TO ADDRESS THE '927 PATENT,
 8    AND ALSO SOME OF THE OTHER ISSUES.  BUT, MOST
 9    IMPORTANTLY, THE '927 SINCE THE COURT HAS, IT LOOKS
10    LIKE, GRANTED -- OR IN THE TENTATIVE GRANTED THE
11    MOTIONS ON THAT.
12              THE COURT:  THAT'S FINE.
13              DOES ANYONE ELSE HAVE A DIFFERENT VIEW?
14              OKAY.  YOU HAVE PRESENTED A VAST AMOUNT
15    OF INFORMATION.  I MEAN, I HAVE HUGE -- AND I HAVE
16    CERTAINLY DONE MY BEST, BUT I DON'T PRETEND TO HAVE --
17    I'M NOT GOING TO SIT HERE AND SAY I UNDERSTAND ALL OF
18    THIS AS WELL AS EACH OF YOU DOES.  SO WHAT I'D LIKE YOU
19    TO DO, WHERE YOU -- WHETHER YOU -- WHERE YOU DISAGREE
20    WITH WHAT I'VE SAID, IS TO EXPLAIN -- GIVE ME YOUR
21    TALKING POINTS SO THAT I CAN REFLECT ON THAT IN LIGHT
22    OF THE MATERIALS THAT I'VE BEEN STUDYING.
23              SO LET'S -- NOW, IN TERMS OF THE ISSUE OF
24    CONFIDENTIALITY, DID ANYONE SPOT A POTENTIAL PROBLEM
25    WHERE I'VE -- IN ANY OF THE TENTATIVES WHERE YOU THINK
```

```
 1      THE INFORMATION I'VE PROVIDED AS TO ONE DEFENDANT MIGHT

 2   BE SOMETHING THAT SHOULDN'T BE SEEN BY ANOTHER?

 3                  AND NO HANDS ON THAT.

 4                  IN TERMS OF PROCEEDING TODAY, DOES ANY

 5   DEFENDANT ANTICIPATE A PROBLEM WITH MAKING ARGUMENTS

 6   WHERE IT WOULD BE DISCLOSING CONFIDENTIAL INFORMATION

 7   UNIQUE TO THAT DEFENDANT TO OTHER DEFENDANT'S COUNSEL

 8   OR PARTY REPRESENTATIVES WHO ARE HERE?

 9                  OKAY.  I DON'T SEE ANY HANDS ON THAT.

10                  IF THAT CHANGES, THEN LET ME KNOW IN THE

11   COURSE OF YOUR DISCUSSION.

12                  DO YOU ANTICIPATE THAT ISSUE, MR. HATCH?

13              MR. HATCH:  NOT ON OUR END.

14          THE COURT:  ALL RIGHT.  LET ME KNOW BECAUSE --

15   TO STAND UP -- AND EVEN IF I'M IN THE MIDDLE OF A

16   DISCUSSION WITH SOMEONE ELSE, IF SOMEBODY THINKS HE OR

17   SHE HEARS SOMETHING THAT'S UNIQUE TO HIS OR HER CLIENT

18   THAT SHOULDN'T BE DISCUSSED IN FRONT OF OTHERS, LET ME

19   KNOW.

20                  OKAY.  SO I THINK THE -- I THINK PROBABLY

21   THE BEST THING IS TO HAVE MR. HATCH ADDRESS THE '927.

22   AND THEN I'LL HEAR FROM THE DEFENSE COUNSEL WHO WISH TO

23   PRESENT ON THE '927.

24                  DOES ANYBODY THINK THAT THERE'S A MORE

25   EFFICIENT WAY TO GO?
```

```
 1              NO HANDS.

 2              OKAY.  MR. HATCH?

 3         MR. HATCH:  FIRST OF ALL, WE WANT TO THANK THE

 4   COURT FOR THE TENTATIVE.  IT'S THOUGHTFUL AND ADDRESSES

 5   A LOT OF THE ISSUES THAT WERE RAISED, SO --

 6         THE COURT:  THANK YOU.  THAT'S NICE, BUT IT'S

 7   OKAY.  I'M JUST DOING WHAT YOU DO, WHICH IS YOUR JOB.

 8   AND YOU DON'T HAVE TO AGREE WITH WHAT I'VE SAID.

 9   THAT'S WHY YOU'RE HERE.  I WANT TO HEAR FROM ALL OF YOU

10   AND SEE WHERE I HAVE IT RIGHT OR HAVE IT WRONG.

11         MR. HATCH:  SO I THINK WHERE THE COURT HAS IT

12   WRONG ON THE '927 IS ON A COUPLE ISSUES THAT I THINK

13   ARE A COMMON THREAD THROUGH ALL OF THE DEFENDANTS HERE,

14   WHICH IS, NUMBER ONE, THIS NOTION THAT WE HAVE NOT

15   SHOWN USE OF RELATIVE SPEED IN THE SYSTEMS.

16              AND, NUMBER TWO, THAT THERE'S SOME

17   POSSIBILITY THAT THE SUSTAIN TIME IS FIXED RATHER THAN

18   VARIABLE.

19              I THINK IF YOU LOOK AT THE EVIDENCE THAT

20   WE HAVE PRESENTED, THAT IT'S IMPOSSIBLE FOR THE

21   RELATIVE SPEED NOT TO BE TAKEN INTO ACCOUNT.  AND IT'S

22   ALSO IMPOSSIBLE FOR THAT SUSTAIN TIME TO BE FIXED.

23   I'LL EXPLAIN WHY.

24              ONE THING THAT I WOULD AGREE IN LARGE

25   PART WITH IN THE TENTATIVE IS THIS IDEA THAT THE
```

```
 1    RADAR'S ZONE IS SMALLER THAN THE BLIND-SPOT ZONE.  AND

 2    THIS IS VERY IMPORTANT.  WE SPENT A LOT OF TIME IN THE

 3    CASE DEVELOPING THE FACTS TO SHOW THAT THESE RADARS,

 4    WHERE THEY'RE PLACED ON THE REAR -- TYPICALLY ON THE

 5    REAR-CORNER BUMPERS OF A VEHICLE, THE WAY THE ANGLE

 6    IS -- THE WAY THE RADARS ARE ANGLED AND THE WAY THE

 7    FIELD OF VIEW IS LIMITED MEANS NECESSARILY THAT THE

 8    RADAR'S ZONE IS SMALLER THAN THE BLIND-SPOT ZONE.  I

 9    DON'T THINK THE COURT LOOKS AT THAT AS A

10    NON-INFRINGEMENT ARGUMENT AT ALL.  I THINK WE'RE IN

11    AGREEMENT THAT THERE IS THAT ISSUE FUNDAMENTALLY.

12              AND THAT'S REALLY IMPORTANT BECAUSE IF

13    THE RADAR'S DETECTION AREA IS SMALLER THAN THE

14    BLIND-SPOT AREA AND -- AS IS, I THINK, UNDISPUTED --

15    AND THAT THE ALERT IS ON, AS LONG AS THE VEHICLE IS IN

16    THAT LARGER BLIND-SPOT AREA, THEN IT NECESSARILY

17    FOLLOWS THAT THE ALERT IS VARIABLE AND THAT THEY'RE

18    USING RELATIVE SPEED.

19              THE REASON THAT IT'S VARIABLE RATHER THAN

20    FIXED IS BECAUSE, IN THE REAL WORLD AS YOU'RE DRIVING A

21    VEHICLE, THERE'S A HOST AND A TARGET VEHICLE.  THE

22    SYSTEM CAN'T CONTROL HOW FAST THE VEHICLES OPERATE.

23    THEY CAN'T CONTROL THE DRIVING.  THEY HAVE TO TAKE INTO

24    ACCOUNT REAL-WORLD-DRIVING SCENARIOS.  AND ONE OF THE

25    SCENARIOS IS THAT A VEHICLE AT SOME RELATIVE SPEED, THE
```

```
 1    TWO VEHICLES ARE PASSING, THE VEHICLE COULD CHANGE
 2    SPEED.
 3                    FOR EXAMPLE, IF YOU'RE DRIVING IN THE
 4    HOST VEHICLE, YOU HAVE A BLIND-SPOT SYSTEM IN YOUR
 5    VEHICLE, AND YOU HAVE A CAR COMING UP FROM BEHIND AT
 6    SOME SPEED.  THERE'S GOING TO BE A FIXED RELATIVE SPEED
 7    AS LONG AS THE HOST AND TARGET VEHICLES ARE TRAVELING
 8    AT A CONSTANT SPEED.
 9                    BUT WHAT IF ONE OF YOU BRAKES OR SLOWS
10    DOWN OR SPEEDS UP?  THEN THAT'S GOING TO HAVE TO BE
11    TAKEN INTO ACCOUNT BY THESE SYSTEMS.  AND AS LONG AS
12    THAT ALERT STAYS ON WHEN A VEHICLE IS IN THAT
13    BLIND-SPOT ZONE, IT'S GOING TO HAVE TO TAKE INTO
14    ACCOUNT THAT BRAKING, THE ACCELERATION, THE MOVING OF
15    THE VEHICLE TO KNOW HOW LONG THE ALERT IS GOING TO BE
16    SUSTAINED.  SO IT CANNOT BE FIXED.
17                    IF IT WAS FIXED, WHAT WOULD HAPPEN IS --
18    LET'S SAY IT'S FIXED AT ONE SECOND AFTER THE VEHICLE
19    GOES OUT OF THE RADAR ZONE.  WHAT HAPPENS IF THE TARGET
20    VEHICLE THEN SLOWS DOWN AND STAYS IN THE BLIND-SPOT
21    ZONE FOR LONGER THAN ONE SECOND?  WELL, YOU HAVE AN
22    ALERT THAT'S NOW TURNED OFF INCORRECTLY BECAUSE THE
23    TARGET VEHICLE IS STILL THERE.  THE DRIVER OF THE HOST
24    VEHICLE NOTICES THAT THE ALERT IS TURNED OFF.  AND NOW
25    THEY'RE THINKING THAT THE TARGET VEHICLE IS NO LONGER
```

1    IN THE BLIND-SPOT ZONE.  THAT'S EXTREMELY DANGEROUS.

2    THAT COULD LEAD TO THE DRIVER OF THE HOST VEHICLE

3    MAKING A TURNING MANEUVER, FOR EXAMPLE, INTO THAT LANE

4    AND HITTING THE OTHER CAR AT A HIGH RATE OF SPEED

5    CAUSING AN ACCIDENT.

6             SO THESE ARE SAFETY FEATURES.  THEY WOULD

7    NEVER USE A FIXED TIME, AND THEY DON'T USE A FIXED TIME

8    BECAUSE THEY HAVE TO TAKE INTO ACCOUNT THE RELATIVE

9    SPEEDS OF THE TWO VEHICLES AND SUSTAIN THE ALERT AS

10   LONG AS A VEHICLE IS IN THAT BLIND-SPOT ZONE.  THAT HAS

11   TO HAPPEN.  AND I THINK WE'VE SHOWN THROUGHOUT THE

12   EVIDENCE AND ARGUMENT THAT IT DOES, IF YOU TAKE -- IF

13   YOU TAKE, AS ACCEPTED, THE FACT THAT THE ALERT STAYS ON

14   AS LONG AS THE VEHICLE IS IN THE ZONE AND THAT THE

15   RADAR IS SMALLER THAN THE ZONE.  I DON'T THINK THERE'S

16   ANY QUESTION ON THOSE LAST TWO POINTS.

17             THE COURT:  OKAY.  ALL RIGHT.  THANK YOU,

18   MR. HATCH.

19             DO YOU WANT TO STOP THERE?

20             MR. HATCH:  SURE.

21             THE COURT:  WHO WOULD LIKE TO ADDRESS THIS?

22             MR. DAVIS:  GOOD MORNING AGAIN, YOUR HONOR.

23   AHMED DAVIS ON BEHALF OF HONDA.

24             THE COURT:  THANK YOU FOR RESTATING YOUR NAME

25   THAT WAY.

1          MR. DAVIS:  JUST BRIEFLY, YOUR HONOR.

2    OBVIOUSLY, I'M GOING TO ADDRESS THIS IN THE HONDA

3    SPECIFIC CONTEXT, BUT I THINK IT MAY APPLY IN OTHERS.

4               AT LEAST AS IT RELATES TO HONDA, THERE

5    REALLY HAS NOT EVER BEEN A DISPUTE THAT THE SYSTEM

6    MEASURES RELATIVE VEHICLE SPEED.  OUR SYSTEMS DO THAT.

7    AND I DON'T THINK THAT THAT HAS BEEN SOMETHING THAT

8    WE'VE CHALLENGED.

9               THE CHALLENGE THAT WE'VE HAD IS WHAT WE

10   BELIEVE IS A FUNDAMENTAL MISPERCEPTION BY THE PLAINTIFF

11   OF THE COURT'S CONSTRUCTION OF VARIABLE SUSTAIN TIME

12   AND WHAT THAT IS IN THE CONTEXT OF THE PATENT.

13              AT LEAST AS IT WAS BRIEFED AND ARGUED IN

14   THE BRIEFS AS TO HONDA AND IN THE EXPERT REPORTS THAT

15   SIGNAL FILED WITH RESPECT TO HONDA, THE ARGUMENT WAS

16   THAT THE HONDA SYSTEMS USE A VARIABLE SUSTAIN TIME

17   NECESSARILY BECAUSE, IF THE TARGET VEHICLE IS TRAVELING

18   MORE QUICKLY THAN THE HONDA VEHICLE, THAN IT WILL BE IN

19   THE BLIND-SPOT ZONE FOR A SMALLER PERIOD OF TIME.  BUT

20   IF THE VEHICLE IS TRAVELING AT A SLOWER RATE OF SPEED,

21   THEN IT WILL BE IN THAT SAME BLIND SPOT ZONE FOR A

22   LONGER PERIOD OF TIME.  AND THAT'S, IN OUR VIEW, NOT

23   QUITE WHAT THE VARIABLE SUSTAIN TIME REALLY IS MEANT.

24              AND I THINK AT LEAST -- I'M REFERRING NOW

25   TO THE COURT'S MARKMAN ORDER AT PAGE 16.  AND THE COURT

```
1    EXCERPTED, FROM THE '927 PATENT, FIGURE 5.  AND IT

2    WROTE IN RED ON THE SIDES OF THAT FIGURE IN THE FLOW,

3    THE VARIABLE SUSTAIN TIME AND THE THRESHOLD TIME.  AND

4    IT POINTED OUT THAT THE VARIABLE SUSTAIN TIME IS USED

5    TO DELAY THE TIME AN ALERT SIGNAL IS SOUNDED WHERE THE

6    ALERT HAS BEEN SOUNDING FOR LONGER THAN A CERTAIN

7    THRESHOLD TIME.

8                SO IN ORDER TO MAKE OUT ITS CLAIM FOR

9    INFRINGEMENT AGAINST HONDA -- AGAINST EVERYONE, BUT

10   SPECIFICALLY AS IT RELATES TO HONDA, AT THE VERY LEAST,

11   WHAT THEY WERE REQUIRED TO DO WAS TO IDENTIFY A

12   THRESHOLD TIME IN THE FIRST INSTANCE.  THEY HAVE TO DO

13   THAT.  AND THERE'S NO EVIDENCE THAT THAT HAS BEEN DONE

14   IN THIS CASE AGAINST HONDA.

15                EVEN BEYOND THAT, THEY HAVE TO THEN

16   DETERMINE THAT A VARIABLE SUSTAIN TIME HAS BEEN

17   SELECTED.  NOT THAT IT'S SOMETHING THAT HAPPENS AS A

18   MATTER OF PHYSICS BECAUSE THE CARS ARE PASSING EACH

19   OTHER, BUT IT ACTUALLY HAS TO BE SELECTED, AND THAT IT

20   HAS TO VARY AS A FUNCTION OF THE VEHICLE'S RELATIVE

21   SPEED.

22                AND SO IN OUR INSTANCE, TO -- WE DON'T

23   BELIEVE THAT THE EVIDENCE SHOWS THAT THEY HAVE SELECTED

24   A THRESHOLD -- THAT THEY HAVE IDENTIFIED A THRESHOLD

25   TIME AT ALL.
```

1          BUT EVEN TO THE EXTENT THAT THEY HAVE,

2    THEY CERTAINLY HAVE NOT TAKEN THE NEXT STEP AS REQUIRED

3    BY THE CLAIMS AND IDENTIFIED A VARIABLE SUSTAIN TIME

4    THAT CHANGES AS A FUNCTION OF VEHICLE SPEED.

5          I HEARD MR. HATCH SAY THAT IT IS

6    IMPOSSIBLE FOR THE SUSTAIN TIME TO BE FIXED.  AND I

7    JUST -- I DON'T -- I DON'T KNOW WHAT THE EVIDENTIARY

8    BASIS IS FOR HIM TO SAY THAT.  THERE IS -- THAT'S PURE

9    ATTORNEY ARGUMENT.  THERE IS NOTHING IN THE RECORD THAT

10    THEY HAVE ADDUCED.  THERE'S NOTHING IN HONDA DOCUMENTS.

11    THERE IS NOTHING AT ALL TO SUGGEST THAT THAT STATEMENT

12    IS TRUE.

13          SO AT LEAST AS TO THE THRESHOLD TIME AND

14    THE VARIABLE SUSTAIN TIME, THERE SIMPLY IS NO EVIDENCE

15    HERE, YOUR HONOR.  ON THAT POINT ALONE, WE BELIEVE THAT

16    THE TENTATIVE IS CORRECT.

17         THE COURT:  JUST A MINUTE.  DON'T -- STAND BY,

18    MR. DAVIS.

19         MR. HATCH, IN WHAT MR. DAVIS JUST SAID, I

20    WANT TO MAKE SURE I UNDERSTOOD WHAT YOU SAID.  I

21    INTERPRETED WHAT YOU SAID TO SAY THAT THERE ARE TWO

22    VEHICLES, A HOST VEHICLE AND THE TARGET VEHICLE, AND

23    THAT THEIR RELATIVE SPEEDS MAY VARY DURING THEIR

24    INTERACTION?

25         MR. HATCH:  CORRECT.

```
1              THE COURT:  AND FROM THAT, YOU ARGUED THAT

2     THERE NECESSARILY WOULD HAVE TO BE A VARIABLE TIME

3     COMPONENT?

4              MR. HATCH:  THAT'S NOT ALL OF THE EVIDENCE,

5     BUT THAT WAS THE ARGUMENT THAT I WAS MAKING.

6              THE COURT:  OKAY.  LET ME MAKE SURE,

7     MR. DAVIS, THAT I HAVE CLEAR.  I UNDERSTAND THAT

8     THERE'S A DIFFERENCE BETWEEN WHAT PHYSICS AND LOGIC AND

9     SCIENCE IS AND WHAT THE PATENT MAY SAY.  BUT WHAT'S

10    YOUR RESPONSE TO THAT AGAIN, PLEASE?

11             MR. DAVIS:  THE RESPONSE TO THAT, YOUR HONOR,

12    IS THAT THE -- AS I UNDERSTAND WHAT MR. HATCH IS SAYING

13    IS, THERE CAN NEVER BE A FIXED SUSTAIN TIME BECAUSE THE

14    VEHICLE SPEEDS ARE CHANGING.  THAT'S -- OF COURSE,

15    EXACTLY.

16             WHAT THE CLAIMS REQUIRE IS THAT, AFTER

17    THE VEHICLE HAS BEEN IN THE BLIND SPOT FOR A THRESHOLD

18    PERIOD OF TIME, THAT THERE IS AN ADDITIONAL PERIOD OF

19    TIME THAT THE ALERT WOULD BE SUSTAINED.  AND THAT

20    PERIOD OF TIME VARIES AS A FUNCTION OF THE RELATIVE

21    VEHICLE SPEED.

22             AND IN THIS INSTANCE, THERE IS NO

23    EVIDENCE THAT THE HONDA SYSTEMS OPERATE IN THAT WAY.

24    IN FACT, THERE'S EVIDENCE DIRECTLY TO THE CONTRARY.  WE

25    HAVE CITED THAT IN OUR BRIEFS.  I WON'T GO THROUGH IT
```

```
1    HERE.
2              THE COURT:  THANK YOU, MR. DAVIS.
3              MR. PABIS:  THANK YOU, YOUR HONOR.  RON PABIS
4    ON BEHALF OF KIA.
5              I'M A LITTLE SURPRISED WE'RE HERE ON THE
6    '927 BECAUSE, AS YOU KNOW, AS WE PUT IN OUR BRIEFS,
7    SIGNAL OFFERED TO DROP THAT A FEW MONTHS AGO AGAINST
8    KIA.
9              BUT THE CLAIMS HERE REQUIRE -- AND I
10   DON'T -- I'LL ECHO A LITTLE BIT OF WHAT MR. DAVIS SAID.
11   THE CLAIMS HERE REQUIRE SELECTING A VARIABLE SUSTAIN
12   TIME AND COMPARING THAT SUSTAIN TIME TO A THRESHOLD TO
13   DETERMINE WHETHER YOU'RE GOING TO USE THAT VARIABLE
14   SUSTAIN TIME.
15             THE KIA SYSTEMS DON'T USE TIME AT ALL.
16   THEY DON'T SELECT A VARIABLE SUSTAIN TIME OR A
17   THRESHOLD TIME.
18             WE HAVE A FIXED DISTANCE FOR THE
19   BLIND-SPOT ZONE.  WE HAVE A FIXED AREA BEHIND THE
20   BLIND-SPOT ZONE.  THAT IS, THE REAR ZONE.
21             AND I HAVE DEMONSTRATIVES, IF YOUR HONOR
22   WOULD LIKE TO SEE THEM, WHICH MIGHT HELP EXPLAIN THAT.
23             THE COURT:  GO AHEAD.
24             DO YOU HAVE THESE AS WELL?
25             MR. HATCH, DO YOU HAVE A COPY?
```

```
 1              MR. HATCH:  I JUST GOT ONE.

 2              THE COURT:  OKAY.  GO AHEAD.

 3                   DO YOU HAVE ANOTHER COPY OF WHICH YOU CAN

 4     LODGE WITH THE COURT AFTERWARDS?

 5                   JUST ANYONE WHO HAS A DEMONSTRATIVE THAT

 6     WILL BE USED TODAY, PLEASE MAKE SURE YOU LODGE IT WITH

 7     THE CLERK AT THE END OF THE HEARING.  THANK YOU.

 8                   CORRECTION.  AFTER THE HEARING, LODGE

 9     THEM ON THE ELECTRONIC FILE.

10              MR. PABIS:  SO, YOUR HONOR, AS YOU SEE -- THIS

11     IS EXHIBIT 7 TO OUR SUMMARY JUDGMENT MOTION.

12                   THIS IS THE BLIND SPOT ZONE IN THE

13     ACCUSED KIA VEHICLES.

14                   THE YELLOW REPRESENTS THE BLIND SPOT

15     ZONE.

16                   THE RED REPRESENTS THE REAR ZONE.

17                   AND IN BETWEEN THE REAR ZONE AND THE

18     BLIND-SPOT ZONE, THERE IS A HYSTERESIS ZONE.

19                   SO ONCE THE CAR ENTERS THE BLIND-SPOT

20     ZONE, IF IT'S APPROACHING FROM THE REAR, THE WARNING

21     WILL BE GIVEN TO THE DRIVER.  THAT WARNING WILL STAY ON

22     UNTIL -- UNLESS AND UNTIL THE CAR FALLS BACK BEHIND THE

23     HYSTERESIS ZONE.

24                   THIS CONCEPT THAT HYSTERESIS IS LIKE YOUR

25     THERMOSTAT OBVIOUSLY --
```

```
 1          THE COURT:  THAT'S BEEN -- IT RECEIVED A LOT

 2    OF ATTENTION IN THE DISCUSSIONS AND IN THE BRIEFS.

 3          MR. PABIS:  BUT THE POINT IS, YOUR HONOR, WE

 4    HAVE A FIXED BLIND-SPOT ZONE, A FIXED HYSTERESIS ZONE,

 5    WHICH IS ABOUT A METER IN ALL THE VEHICLE, AND THEN A

 6    FIXED REAR ZONE.  SO THERE'S NO TIME ELEMENT AT ALL

 7    OTHER THAN, AS MR. DAVIS SAID, AS A RESULT OF PHYSICS

 8    AND THE CAR BEING IN THE ZONE FOR A PARTICULAR TIME.

 9    BUT THERE'S NO SELECTING OF VARIABLE SUSTAIN TIME AND

10    NO COMPARING THAT TO A THRESHOLD.

11          THE OTHER ISSUE IS, WITH REGARD TO

12    THIS -- THE LAST ELEMENT OF THE CLAIM, THE LAST ELEMENT

13    REQUIRES WHEN THE ZONE OF COVERAGE APPEARS TO INCREASE

14    UNDER YOUR HONOR'S CLAIM CONSTRUCTION.  AND THAT

15    REQUIRES THAT THERE IS -- I HAVE THAT HERE TOO.

16          YOUR CLAIM CONSTRUCTION ORDER IS ON PAGE

17    18, "WHEREIN THE ALERT SIGNAL REMAINS ACTIVE WHEN A

18    TARGET VEHICLE IS BEYOND THE RANGE THAT THE OBJECT

19    DETECTION SYSTEM CAN DETECT."

20          IN OTHER WORDS, IF YOU USE THE VARIABLE

21    SUSTAIN TIME, THAT MAKES THE ZONE LOOK BIGGER -- THE

22    BLIND-SPOT ZONE LOOK BIGGER THAN IT ACTUALLY IS.

23          HERE, IN THE ACCUSED KIA VEHICLES, WHEN

24    IT FALLS BEHIND THE BLIND-SPOT ZONE AND INTO THE

25    HYSTERESIS ZONE, IT'S STILL BEING MONITORED BY THE
```

1    RADAR.  SO THE LAST ELEMENT OF THAT CLAIM CANNOT BE

2    MET.

3                    AND DR. SMEDLEY ADMITTED THAT AT HIS

4    DEPOSITION.  AND THAT IS ON PAGE 19 OF THE SLIDE DECK.

5                    WITH THAT, YOUR HONOR, I WILL PASS TO

6    ANOTHER DEFENDANT.

7                THE COURT:  THANK YOU.

8                MR. SATCHWELL:  THANK YOU, JUDGE.  MAT

9    SATCHWELL FOR MAZDA.

10                   I THINK WE CAN ECHO SOME, AT LEAST, OF

11   WHAT MR. GREEN (SIC) AND KIA'S COUNSEL MENTIONED

12   ALREADY.  I THINK THERE'S A FEW SPECIFIC ISSUES AS TO

13   MAZDA THAT I WANT TO DRAW YOUR ATTENTION TO.

14                THE COURT:  OKAY.

15                MR. SATCHWELL:  THE FIRST IS THAT, THE MAZDA

16   SYSTEM, I THINK LIKE THE KIA SYSTEMS WE JUST HEARD, HAS

17   NOTHING TO DO WITH TIME.  IT IS BASED ENTIRELY -- THE

18   DECISION ON WHETHER TO TRIGGER AN ALARM AND HOW LONG

19   THAT ALARM STAYS ON IS BASED ENTIRELY ON POSITION OF

20   THE TARGET VEHICLE.

21                   THE REASON THAT'S IMPORTANT IS, THAT

22   THESE ARE -- THIS IS A METHOD CLAIM, JUDGE, AS YOU

23   KNOW.  THERE ARE SPECIFIC STEPS THAT MUST BE PERFORMED

24   HERE.  AND WHAT I DIDN'T HEAR IN MR. HATCH'S COMMENTS

25   AND WHAT I HAVE SEEN NOWHERE IN THE EVIDENCE IS ANY

```
1    INDICATION THAT THERE'S ANY SELECTION OF A SUSTAIN TIME

2    IN THE MAZDA VEHICLE OR ANY DETERMINATION OF WHETHER

3    THE ALARM HAS BEEN ON BEYOND THE THRESHOLD TIME.

4                    SO EVEN FOR SUMMARY JUDGMENT PURPOSES, IF

5    WE TAKE SIGNAL'S POSITION TO BE CORRECT, THAT THERE IS

6    SOME ESTIMATION OF TIME, WHICH THERE IS NO EVIDENCE ON

7    THAT, WE STILL DON'T GET TO THE NECESSARY CLAIM

8    ELEMENTS OF SELECTING A SUSTAIN TIME OR DETERMINING

9    WHETHER THE SIGNAL HAS BEEN ON FOR THE THRESHOLD TIME.

10                   AND IN CASE IT'S HELPFUL, WE'VE JUST

11   HANDED YOU A DECK OF DEMONSTRATIVES.  I'M NOW ON SLIDE

12   27.  THIS SHOWS SCHEMATICALLY HOW THE MAZDA SYSTEM

13   WORKS.  AND IT'S VERY SIMILAR TO WHAT YOU HAVE JUST

14   SEEN WITH KIA AND SOME OF THE OTHER DEFENDANTS, JUDGE.

15                   THERE IS A WARNING ZONE THAT WE'VE

16   HIGHLIGHTED IN YELLOW IN BOTH OF THESE DIAGRAMS.  AND

17   THEN AROUND THAT WARNING ZONE IN ALL DIRECTIONS,

18   THERE'S A HYSTERESIS ZONE.  I WON'T BELABOR THIS

19   BECAUSE IN THE 30 MINUTES WE HAD TO REVIEW YOUR

20   TENTATIVE, I THINK THE TECHNOLOGY RECITATION IN THE

21   TENTATIVE IS EXACTLY WHAT I WOULD EXPLAIN TO THE COURT.

22   SO I'LL JUMP PAST THAT.

23                   AS I MENTIONED, WHAT'S REALLY KEY TO ME

24   IS THAT THE WORD "SELECTED," STARTING WITH THAT

25   LIMITATION, HAS TO MEAN SOMETHING.
```

```
1              WE'RE NOW ON SLIDE 29.

2              WE CAN'T SIMPLY READ THAT LIMITATION OUT

3    OF THE CLAIMS AS INCONVENIENT TO SIGNAL.

4              AND SO IN THE MAZDA SYSTEM, IT DETERMINES

5    WHETHER TO ACTIVATE THE WARNING.  LET ME BACK UP.

6              IT DOESN'T DETERMINE "WHETHER TO."  IT

7    SIMPLY ACTIVATES THE WARNING WHEN THE TARGET VEHICLE

8    ENTERS THE WARNING ZONE.

9              THAT ALARM STAYS ON UNTIL THE TARGET

10   VEHICLE EXITS THE HYSTERESIS ZONE, EITHER THE FRONT OR

11   THE BACK OF THE ZONE.  THAT'S WHY IT GOES AROUND ALL

12   FOUR SIDES.

13             THERE'S NO DETERMINATION OF HOW LONG TO

14   SUSTAIN THAT SIGNAL FOR, AND THERE CANNOT BE.  THE

15   MAZDA VEHICLE CAN'T CONTROL HOW LONG THAT TARGET

16   VEHICLE STAYS IN THE ZONE.  SO IF THE SIGNAL PERSISTS

17   FOR HOWEVER LONG IT'S THERE, THERE CAN BE NO SELECTION.

18             IT DOESN'T MAKE SENSE TO PASSIVELY

19   MEASURE HOW LONG A VEHICLE STAYS IN A CERTAIN POSITION,

20   AND THEN CALL THAT A SELECTION, AN ACTIVE SELECTION

21   THAT'S BEEN MADE BY THE MAZDA VEHICLE.

22             AND DR. SMEDLEY, AT HIS DEPOSITION,

23   AGREED WITH ME.  HE DID EXPLAIN THAT, AS I'VE

24   HIGHLIGHTED HERE, THE SUSTAIN -- THE VARIABLE SUSTAIN

25   TIME THAT SIGNAL POINTS TO IN THE MAZDA VEHICLE IS
```

```
 1      SIMPLY THE AMOUNT OF TIME THE TARGET VEHICLE IS IN THE

 2      ZONE.  THERE CAN BE NO SELECTION OF THAT.

 3               BECAUSE THE MAZDA SYSTEM CAN'T CONTROL,

 4      IT DOESN'T MEET THE SELECTION LIMITATION.  I THINK YOUR

 5      TENTATIVE IS EXACTLY RIGHT ON THAT.

 6               WE HAVE A VERY SIMILAR ISSUE WITH THE

 7      PROBLEM WITH THE DETERMINATION ON THE THRESHOLD TIME.

 8      I'LL GO DIRECTLY TO DR. SMEDLEY'S TESTIMONY ON THAT.

 9               THIS ONE IS ACTUALLY A LITTLE BIT EASIER.

10      AGAIN, THERE'S NO EVIDENCE IN THE RECORD THAT COULD

11      DEFEAT SUMMARY JUDGMENT.

12               I'M ON SLIDE 38 NOW, JUDGE.

13               THERE'S NO EVIDENCE IN THE RECORD THAT

14      THERE'S ANY ACTIVE DETERMINATION, THAT THERE'S ANY

15      DETERMINATION STEP BEING PERFORMED AS REQUIRED BY THIS

16      METHOD CLAIM IN THE MAZDA VEHICLES.

17               AND, AGAIN, DR. SMEDLEY AGREES WITH US.

18      HE ADMITTED THAT HE'S NEVER EVEN CONSIDERED IF ANY

19      MAZDA VEHICLE PERFORMS THE STEP OF DETERMINING WHETHER

20      THE ALERT WAS ON FOR A THRESHOLD TIME.

21               I ASK HIM AT THE BOTTOM THERE -- I

22      PROVIDED THE ENTIRE PARAGRAPHS THERE FOR CONTEXT.  BUT

23      I SAY, "IS THERE EVER AN INSTANCE WHEN AN ALERT SIGNAL

24      IS ACTIVATED, BUT WAS NOT ACTIVE FOR A THRESHOLD TIME?"

25      AND HE SAYS HE'S NEVER EVEN ATTEMPTED TO DETERMINE
```

```
1    THAT.  HE'S NEVER LOOKED AT THAT ISSUE.

2              NOT ONLY IS THERE NO RECORD EVIDENCE THAT

3    WOULD INDICATE A TRIABLE ISSUE OF FACT ON THAT

4    LIMITATION FOR MAZDA, BUT SIGNAL'S EXPERT CAN'T EVEN

5    OPINE ON IT.

6              SO I JUST WANT -- I AGREE COMPLETELY WITH

7    THE TENTATIVE.  I THINK THE TECHNOLOGY RECITATION AS TO

8    MAZDA IN THE TENTATIVE IS ACCURATE.

9              I JUST WANTED TO DRAW THE COURT'S

10   ATTENTION TO THOSE TWO UNIQUE ISSUES THAT WE SIMPLY

11   DON'T HAVE ANY EVIDENCE ON THAT COULD OVERCOME SUMMARY

12   JUDGMENT.

13           THE COURT:  THAT'S VERY HELPFUL.  THANK YOU,

14   MR. SATCHWELL.

15           MR. DOYLE:  YOUR HONOR, IT'S SCOTT DOYLE FOR

16   MERCEDES-BENZ USA.  I'M GOING TO MAKE THIS VERY SHORT.

17              YOU POINTED OUT SOMETHING IN YOUR

18   TENTATIVE.  IT SAYS, "SIGNAL DOES NOT IDENTIFY ANY

19   DOCUMENTS OR WITNESS TESTIMONY SHOWING THAT THE BSA

20   SYSTEM SELECTS A VARIABLE SUSTAIN TIME AS A FUNCTION OF

21   RELATIVE VEHICLE SPEED."  THEY DON'T, NOWHERE.  NO

22   DOCUMENTS, NO EVIDENCE, NO EXPERT TESTIMONY, NOTHING TO

23   THAT EFFECT.

24              I JUST WANT TO MAKE SURE THOUGH -- I

25   THINK YOUR TECHNOLOGY UNDERSTANDING IS VERY GOOD.  AND
```

```
 1    YOU POINT OUT THAT THE RADAR SYSTEM IS VERY WIDE AT 140

 2    DEGREES.  THE ONE POINT THAT I'M NOT SURE YOU MADE OR

 3    NOT IS THAT THE ACTUAL SOURCE CODE WAS TURNED OVER

 4    HERE --

 5            THE COURT:  BY MERCEDES, BUT NOT OTHERS.

 6            MR. DOYLE:  BY MERCEDES.

 7            WHAT'S REALLY INTERESTING IS, MEASURED

 8    VALUES FROM THE RADAR DETECTORS ACTUALLY DETERMINE WHEN

 9    TO TURN OFF THE WARNING.  SO THERE'S NO EXTENSION.

10    MEANING, IT'S NOT AS IF THE WARNING GOES BEYOND THE

11    DETECTION ZONE.  IT CAN'T BECAUSE IT'S USING THE VALUES

12    THAT ARE DETECTED TO TURN OFF THE WARNING ZONE.  THAT'S

13    IN THE SOURCE CODE, UNREBUTTED.

14            BUT IF WE WANT TO TALK ABOUT ALL THE

15    ELEMENTS, THERE WAS NO EVIDENCE IN THE RECORD THAT AN

16    ALLEGED SUSTAIN TIME IS VARIABLE.  IN FACT, THERE'S NOT

17    EVEN AN EXAMPLE OF AN ALLEGED SUSTAIN TIME WHETHER IT'S

18    VARIABLE OR FIXED.  SURELY, NO EVIDENCE THAT THE

19    ALLEGED SUSTAIN TIME IS SELECTED AS A FUNCTION OF

20    RELATIVE VEHICLE SPEED.  IN OUR RECORD, THERE'S NO

21    IDENTIFICATION OF AN ALERT COMMAND.  THEY NEVER

22    IDENTIFIED IT.  IT CAN'T BE ATTORNEY ARGUMENT.  YOU

23    CAN'T COME UP HERE AND MAKE UP A STORY AND SAY WHY

24    THINGS HAVE TO BE NECESSARY.  THERE ARE SEVERAL

25    LIMITATIONS OF THIS CLAIM.  NO IDENTIFICATION OF A
```

THRESHOLD TIME.  NO EVIDENCE THAT YOU USED THE ALLEGED SUSTAIN TIME -- THAT THE USE OF IT DEPENDS UPON THE THRESHOLD TIME.  SO THE FACT IS, THERE'S NOTHING HERE. THERE'S ONLY A STORY THAT'S BEEN MADE UP.  THAT'S ALL I HAVE TO SAY.

THE COURT:  THANK YOU, MR. DOYLE.

MR. LAVELLE:  MAY IT PLEASE THE COURT, YOUR HONOR, JOE LAVELLE FOR BMW.

THE COURT:  MR. LAVELLE, IF I ADHERE TO MY TENTATIVE VIEWS AS TO BMW, DO YOU PLAN TO PURSUE THE INVALIDITY CLAIMS?

MR. LAVELLE:  IF WE'RE OUT OF THE CASE, I THINK WE'RE OUT OF THE CASE.  AND WE WOULDN'T NEED TO FILE -- PURSUE OUR DECLARATORY JUDGMENTS.

THE COURT:  GO AHEAD.

MR. LAVELLE:  I JUST -- MOST OF WHAT YOU HAVE OBVIOUSLY LEARNED IS THAT THESE SYSTEMS WORK IN A VERY SIMILAR FASHION.

THE ONLY ADDITIONAL POINT I WANTED TO RAISE WITH RESPECT TO BMW IS, BMW GOT A SPECIFICATION FROM ITS VENDOR.  AND I WON'T MENTION THE VENDOR'S NAME.  BUT THERE WAS A SPECIFICATION THAT BOTH EXPERTS REVIEWED AND HAD TRANSLATED.  AND NEITHER FILED A FIRST THRESHOLD IN THAT SPECIFICATION.  NEITHER FOUND ANY EVIDENCE THAT THE BMW SYSTEM SELECTS A VARIABLE SUSTAIN

```
1    TIME AS A FUNCTION OF RELATIVE SPEED.

2                   AND WITH RESPECT TO THE SUSTAIN TIME, IT

3    IS CLEAR THAT THERE IS A FIXED SUSTAIN TIME.  THE

4    SYSTEM HAS TO SEE NO CAR PRESENT FOR THREE TIMES - IT'S

5    A REPETITION CODE - BEFORE IT SHUTS OFF THE ALERT.

6                   SO IN ADDITION TO THE FAILURES OF PROOF,

7    AND WE HAVE THE SAME FAILURES OF PROOF AS EVERYBODY

8    ELSE HAD, DR. SMEDLEY JUST NEVER SAW THE CODING HE

9    NEEDED TO REVIEW.

10                   IN ADDITION TO THAT, THERE IS AFFIRMATIVE

11   EVIDENCE THAT TENDS TO CONTRADICT THE INFERENCE THE

12   PLAINTIFF IS ASKING TO DRAW IN LEGAL ARGUMENT.

13                   THANK YOU, YOUR HONOR.

14             THE COURT:  OKAY.  THANK YOU.

15             MR. LUJIN:  YOUR HONOR, PAT LUJIN FOR NISSAN.

16                   I WILL ALSO BE VERY BRIEF BECAUSE THERE

17   ARE SOME VERY SIMILAR ISSUES.

18                   NISSAN'S VEHICLES CERTAINLY OPERATE

19   SLIGHTLY DIFFERENTLY THAN SOME OTHERS, BUT I THINK IT'S

20   PRETTY WELL LAID NOT ONLY IN THE SUMMARY JUDGMENT

21   BRIEFING, BUT ALSO IN OUR PENDING MOTION TO STRIKE

22   SIGNAL'S NEW INFRINGEMENT THEORY.

23                   THE ONE THING I WANTED TO POINT OUT IS

24   THAT, IT'S NISSAN'S POSITION THAT WE DON'T SUSTAIN THE

25   TIME AT ALL.
```

```
 1                    SIGNAL WORKS VERY HARD IN ITS OPPOSITION
 2      TO SHOW THERE IS SOME SUSTAINING OF THE ALERT GOING ON.
 3                    BUT EVEN IF YOU GIVE THEM THE BENEFIT OF
 4      THE DOUBT ON THAT, THERE'S NO PROOF, WHATSOEVER, THAT
 5      THERE'S ANY SELECTION OF A VARIABLE SUSTAIN TIME, NO
 6      DETERMINING OF A THRESHOLD TIME.
 7                    EVEN IF THE COURT THOUGHT THERE WAS AN
 8      ISSUE ABOUT WHETHER NISSAN SUSTAINS AN ALERT, THERE IS
 9      NOTHING IN THE OPPOSITION ABOUT ADDRESSING HOW THE
10      ALERT IS ALLEGEDLY SUSTAINED.
11                    THANK YOU.
12              THE COURT:  THANK YOU, MR. LUJIN.
13                    ANY OTHER DEFENSE COUNSEL THAT WOULD LIKE
14      TO ADD ANYTHING AT THIS POINT?
15                    OKAY.  MR. HATCH?
16              MR. HATCH:  SO, YOUR HONOR, I THINK IT'S
17      EVIDENT, HEARING ALL THIS EVIDENCE, THAT NOBODY REALLY
18      ADDRESSED THE QUESTION, WHICH IS, IF THE RADAR ZONE IS
19      LIMITED, SMALLER THAN THE BLIND-SPOT ZONE, AND THE
20      ALERT STAYS ON WHILE THE VEHICLE IS IN THAT ZONE, HOW
21      IS IT NOT IMPOSSIBLE THAT THE ALERT IS VARIABLE RATHER
22      THAN SUSTAINED AND THEY DON'T USE THE RELATIVE SPEED?
23      NOBODY SEEMED TO ADDRESS THAT ISSUE.  I DON'T THINK
24      THEY CAN.
25                    SO WHAT WE'RE GETTING INSTEAD IS, OTHER
```

1       ARGUMENTS, SOME OF THEM I THINK NEW, NOT THAT WE

2       HAVEN'T EVEN SEEN BEFORE LIKE THIS IDEA ABOUT THE

3       SELECTION NOT BEING MADE.  BUT I WOULD LIKE TO ADDRESS

4       SOME OF THESE ARGUMENTS JUST IN ORDER OF HOW THEY WERE

5       PRESENTED.

6                   SO HONDA MAKES AN ARGUMENT REFERENCING

7       THE CLAIM CONSTRUCTION WITH REFERENCE TO PAGE 16.  THEY

8       POINT OUT A SENTENCE THERE.  BUT IF YOU LOOK AT THE

9       ACTUAL CONSTRUCTION, "A VARIABLE PERIOD OF TIME FOR

10      WHICH THE ALERT SIGNAL PERSISTS," THEY'RE NOT DISPUTING

11      THAT THE ASSERT SIGNAL IS VARIABLE.  WHAT THEY'RE DOING

12      IS MAKING, ESSENTIALLY, THE SAME ARGUMENT THEY TRIED TO

13      MAKE AT CLAIM CONSTRUCTION WHICH THE COURT REJECTED.

14      IF YOU LOOK ON PAGE 14, THEY SAID AT CLAIM

15      CONSTRUCTION, "A VARIABLE PERIOD OF TIME FOR WHICH THE

16      ALERT SIGNAL PERSISTS."  AND THEN THEY GO ON, "AFTER A

17      TARGET VEHICLE IS NO LONGER DETECTED AND THE ALERT

18      SIGNAL WAS ACTIVE FOR A TIME EQUAL TO," ET CETERA.  IT

19      SEEMS LIKE THEY'RE MAKING THAT ARGUMENT AGAIN.  THAT

20      ARGUMENT HAS ALREADY BEEN REJECTED.

21                  THEY ALSO SAY THERE'S NO THRESHOLD TIME,

22      BUT THERE IS A THRESHOLD TIME.  WE EXPLAIN THIS IN THE

23      BRIEFS.  I'M HAPPY TO GO OVER IT AGAIN.  I DON'T KNOW

24      HOW PRODUCTIVE IT IS TO REPEAT MATERIALS FROM OUR

25      BRIEFS, BUT --

1        THE COURT:  I HAVE IT IN MIND.

2        MR. HATCH:  I'LL MOVE ON TO KIA THEN IN THE

3    INTEREST OF TIME.

4             THEY FOCUS ON THIS IDEA THAT THE

5    BLIND-SPOT ZONE IS FIXED.  YES, IT'S FIXED.  THAT'S NOT

6    THE ISSUE THOUGH.  THE ISSUE IS WHETHER THE ALERT

7    SIGNAL IS FIXED.

8             SO PAGE -- THE PAGE 16 OF THEIR

9    DEMONSTRATIVE, FOR EXAMPLE, THERE IS A FIXED ZONE.

10   THERE'S A HYSTERESIS ZONE.  AS WE KNOW FROM THE LAST

11   HEARING, WE'RE NOT FOCUSING ON THE HYSTERESIS ZONE.

12   ALL THAT IS DOING IS, IT'S EXPANDING THE SIZE OF THE

13   BLIND-SPOT ZONE THAT HAPPENS ONCE A VEHICLE ENTERS THE

14   BLIND-SPOT ZONE, THEN IT GOES OUT BY A METER.  THAT'S

15   ALL IT'S DOING.  IT DOESN'T ADDRESS THE ISSUE HERE,

16   WHICH IS WHETHER THE ALERT SIGNAL IS VARIABLE, WHICH IT

17   IS BECAUSE THE AMOUNT OF TIME THE TARGET SPENDS IN THAT

18   ZONE IS VARIABLE.  AGAIN, THEY'RE MAKING THIS SELECTION

19   ARGUMENT.  SO TO THAT, I WOULD SAY THAT THE SYSTEM DOES

20   SELECT THE VARIABLE SUSTAIN TIME BECAUSE IT SELECTS

21   WHEN TO TURN ON AND OFF THE ALERT SIGNAL.  THAT'S

22   SELECTING THE TIME.

23             MAZDA MAKES THIS ARGUMENT.  THEY

24   REFERENCE PAGES 27 AND 28 OF THEIR BRIEF -- OR, I'M

25   SORRY, THEIR DEMONSTRATIVES, WHICH I THINK MAKE THE

```
1    POINT HERE.  FIRST BULLET ON PAGE 27, "TO DETERMINE

2    WHEN TO ISSUE THE WARNING/ALARM, THE ACCUSED SYSTEMS

3    USED A FIX SMALLER WARNING ZONE."  AGAIN, NOT THE

4    ISSUE.  WE'RE NOT DISPUTING THAT THE ZONES ARE FIXED.

5                    AND THEN THE NEXT POINT, "THE ALARM IS

6    TURNED ON WHEN A TARGET VEHICLE ENTERS THE WARNING

7    ZONE."  MAZDA CANNOT CONTROL THAT.  THEIR SYSTEM CAN'T

8    CONTROL WHEN AND HOW SOMETHING ENTERS THE ZONE, BUT

9    THEY CAN CONTROL WHEN IT TURNS ON.  THE ALARM TURNS ON.

10                    PAGE 28, "THE ALARM IS SUSTAINED UNTIL

11   THE VEHICLE EXITS THE LARGER HYSTERESIS ZONE."

12   IMPORTANTLY, THAT IS A VARIABLE AMOUNT OF TIME.  THE

13   TIME FROM WHEN THE VEHICLE ENTERS THE ZONE AND WHEN IT

14   EXITS IS VARIABLE.  WHAT THEY'RE DOING IS FOCUSING ON

15   THE FACT THAT THE ZONE IS FIXED.  THAT'S NOT THE ISSUE.

16             THE COURT:  JUST A MINUTE.

17              THAT DOES GO BACK TO YOUR ORIGINAL

18   STATEMENT; CORRECT?

19             MR. HATCH:  YES, ABSOLUTELY.

20             THE COURT:  THE TIME IS DETERMINED BY THE

21   RELATIVE SPEED OF THE TWO VEHICLES?

22             MR. HATCH:  YES.

23              AND THE SYSTEM KNOWS THAT BECAUSE THERE'S

24   A SMALLER RADAR ZONE THEY HAVE TO TRACK.

25             THE COURT:  I UNDERSTAND.
```

```
 1            MR. HATCH:  SO MERCEDES, THEIR MAIN
 2    ARGUMENT -- SCOTT'S MAIN ARGUMENT WAS THAT THERE'S NO
 3    EVIDENCE.  I WOULD POINT THE COURT TO THE STATEMENTS OF
 4    FACT.  FOR EXAMPLE, IF YOU LOOK AT 258 AND 259 -- 258,
 5    "THE BSA RADAR DETECTION ZONE SWEEPS AN ANGLE OF
 6    APPROXIMATELY 80 DEGREES."
 7                 THE RADAR DETECTION ZONE, THE 80-DEGREE
 8    ZONE, IS THE ZONE THAT THE RADAR CAN ACTUALLY TELL
 9    WHERE THE TARGET VEHICLE IS.  THAT'S IMPORTANT BECAUSE
10    259, "ANGLE DETERMINATION IS USED BY THE BSA SYSTEM,"
11    UNDISPUTED.  THIS GOES TO THIS IDEA THAT THERE'S A
12    SMALLER DETECTION ZONE.
13                 AND THEN THEY GO ON TO DISPUTE, 261,
14    "WHETHER THERE'S PORTION OF THE BLIND-SPOT ZONE THAT
15    ARE CONTAINED" -- "THAT ARE NOT CONTAINED WITHIN THE
16    RADAR ZONE."  IF YOU LOOK AT OUR BRIEF, WE LINE THEM UP
17    SIDE-BY-SIDE.  THEY'RE OBVIOUSLY NOT THE SAME, BUT
18    THEY'RE TRYING TO DISPUTE THESE TYPES OF FACTS.  THERE
19    ARE FACTS.  THEY JUST REFUSE TO CONFRONT THE EVIDENCE.
20                 JUST BRIEFLY WITH RESPECT TO BMW, THE
21    ARGUMENT THERE IS THAT IT'S NOT A FIXED -- I'M SORRY,
22    IT'S NOT A VARIABLE SUSTAIN TIME BECAUSE THEY NEED TO
23    WAIT TO SEE IF THERE'S NO CAR IN THE ZONE THREE TIMES.
24    THAT BEGS THE QUESTION, HOW DO THEY KNOW WHETHER THE
25    CAR IS IN THE ZONE FOR THREE TIMES?  AND WHETHER THE
```

1    CAR -- IMPORTANTLY, WHETHER THE CAR IS IN THE ZONE

2    THREE TIMES IN A ROW, THAT'S GOING TO BE A VARIABLE

3    SUSTAIN TIME BECAUSE THAT DEPENDS ON THE RELATIVE SPEED

4    AND HOW FAST THE CAR IS GOING, WHETHER ONE'S

5    ACCELERATING, BRAKING, ET CETERA.  THE FACT THAT THEY

6    WAIT TO CHECK THREE TIMES, ALL THAT MEANS IS THEY WANT

7    TO MAKE THE ACCURATE AND CORRECT DETERMINATION.  IT

8    DOESN'T MEAN THAT THERE'S NO VARIABLE SUSTAIN.

9                 AND THEN NISSAN ESSENTIALLY MAKES THE

10   NO-SELECTION ARGUMENT.  I THINK THIS IS A CLAIM

11   CONSTRUCTION TYPE ARGUMENT, THAT IT HAS TO BE SOME KIND

12   OF AN ACTIVE SELECTION.  THEY HAVE TO KNOW, FOR

13   EXAMPLE, IN ADVANCE, HOW LONG THE SUSTAIN WILL BE.

14   IT'S IMPOSSIBLE TO KNOW IN ADVANCE HOW LONG.  ALL THE

15   CLAIM REQUIRES IS THAT THEY SELECT THE TURN-OFF AND

16   TURN-ON TIMES.  AND THAT, IN EFFECT, IS A SELECTION

17   EVEN IF THE SYSTEM DOESN'T KNOW THAT IN ADVANCE OR PUT

18   THAT INTO A VARIABLE SOMEWHERE IN THE SYSTEM.

19             THE COURT:  ALL RIGHT.  OKAY.  THANK YOU.

20                 WHAT ISSUE WOULD YOU LIKE -- WHAT ISSUE

21   DO YOU PROPOSE TO ADDRESS NEXT?

22             MR. HATCH:  FROM OUR PERSPECTIVE, WE WOULD

23   LIKE TO ADDRESS THE INVALIDITY ISSUES SINCE I THINK,

24   FROM THE COURT'S ORDER, THE OTHER NON-INFRINGEMENT

25   MOTIONS WERE DENIED.

```
 1              THE COURT:  THE 101 ISSUE IS ONE THAT YOU MAY

 2   WANT TO ADDRESS.

 3              MR. HATCH:  CORRECT.

 4              THE COURT:  THAT CERTAINLY IS A COMPLICATED

 5   PART.

 6              MR. HATCH:  MY COLLEAGUE WILL BE ADDRESSING IT

 7   NOW.

 8              THE COURT:  THAT'S FINE.  THANK YOU.

 9                  MR. WANG?

10         MR. WANG:  I'LL ADDRESS THE '775 PATENT, YOUR

11   HONOR, AND SAVE ANY COMMENTS I HAVE ON THE '927 FOR

12   REBUTTAL BASED ON THE COURT'S TENTATIVE.

13              THE COURT:  THAT'S FINE.

14         MR. WANG:  YOUR HONOR, I HAVE A FEW POINTS I

15   WANT TO MAKE, AND I'LL TRY TO KEEP THEM SHORT.

16              OVERALL THOUGH, I WANT TO POINT OUT THE

17   FACT THAT WE ARE HERE ON A 56 MOTION WHERE DEFENDANTS

18   BEAR THE BURDEN.  AND THEY BEAR THE BURDEN TO ESTABLISH

19   INVALIDITY BY CLEAR AND CONVINCING EVIDENCE.

20              WHEN YOU GO THROUGH THEIR PAPERS, YOU

21   WILL SEE NO RECOGNITION OF THAT BURDEN THAT THEY CARRY.

22   AND THAT'S IMPORTANT.

23              THE PATENTS ARE PRESUMED TO BE VALID, AND

24   THEY ARE ENTITLED TO THE PRESUMPTION OF VALIDITY.

25              WHEN YOU LOOK AT WHAT THEY ARGUE WITH
```

1    RESPECT TO THE '775 PATENT, YOU WILL SEE IT'S CURSORY.

2                THIS IS -- THERE'S ONE ADDITIONAL LINE

3    THAT GOES TO THE NEXT PAGE -- A FEW ADDITIONAL LINES,

4    SORRY, YOUR HONOR.

5                BUT THIS IS THE SUBSTANCE OF THEIR

6    ARGUMENT ON THE '775 AS TO WHETHER THERE IS AN ABSTRACT

7    IDEA HERE.  YOU WILL SEE IN THIS ENTIRE SECTION, THERE

8    IS NO CITATION TO EVIDENCE.  THEY DON'T POINT TO ANY

9    EXPERT TESTIMONY.  THEY DON'T POINT TO ANY DEPOSITION

10   TESTIMONY, YOUR HONOR.  THIS IS ENTIRELY ATTORNEY

11   ARGUMENT.  AND THAT IS INSUFFICIENT TO MEET THEIR

12   BURDEN, WHICH IS CLEAR AND CONVINCING.

13               ALL THEY DO IS THEY REFER TO "DIGITECH."

14   AND DIGITECH IS INAPPOSITE.  DIGITECH GRANTED THE 101

15   MOTION THERE BECAUSE THE CLAIMS DID NOT REQUIRE INPUT

16   FROM A PHYSICAL DEVICE.  YOU CAN SEE THAT FROM THE

17   COURT'S DECISION AT PAGE 1351.

18               IN YOUR HONOR'S TENTATIVE ORDER, YOU FIND

19   THAT THE '775 SIMILARLY IS NOT TIED TO A PHYSICAL

20   DEVICE.  YOUR HONOR, WE DISAGREE WITH THAT POINT.  AND

21   WHEN YOU LOOK AT THE COURT'S CLAIM CONSTRUCTION ORDER,

22   THAT SUPPORTS OUR POSITION THAT IN FACT IT IS TIED TO A

23   PHYSICAL DEVICE.  IT'S TIED TO A COMMUNICATION LINK.

24   AND WE SAW, DURING CLAIM CONSTRUCTION, THE

25   COMMUNICATION LINK EXISTS ONLY IN A COMPUTER NETWORK.

1          AT PAGE 128 OF YOUR HONOR'S CLAIM

2   CONSTRUCTION ORDER, THIS WAS AN UNDISPUTED FACT, "THE

3   SPECIFICATION SUPPORTS THE AGREED CONSTRUCTION THAT THE

4   MESSAGE IS" --

5          THE COURT:  EXCUSE ME, CAN YOU MOVE THAT?  I

6   CAN'T SEE WHAT YOU'RE POINTING TO.

7          MR. WANG:  SORRY.

8          THE COURT:  I THINK YOU NEED TO ZOOM LESS.

9              THANK YOU.

10         MR. WANG:  "THE SPECIFICATION SUPPORTS THE

11  AGREED CONSTRUCTION THAT THE MESSAGE IS A COLLECTION OF

12  BITS SENT TOGETHER IN A MESSAGE PROTOCOL."

13             SO CONTRARY TO WHAT DEFENDANTS SAY, THIS

14  IS NOT ANY METHOD, ANY FORM OF COMMUNICATION.  IT WAS

15  VERY CLEAR.  THE PARTIES AGREED TO THAT DURING CLAIM

16  CONSTRUCTION THAT WHAT WE ARE COMMUNICATING ARE BITS.

17  AND THAT EXISTS IN A COMPUTER NETWORK.

18             ANOTHER PART OF THE ABSTRACT IDEA

19  ANALYSIS IS, WHETHER THESE CLAIMS ARE SO BROAD TO COVER

20  EVERYTHING.  AND THERE, AGAIN, IN THE COURT'S CLAIM

21  CONSTRUCTION ORDER, WE'VE GONE THROUGH THIS ANALYSIS.

22  AND THESE CLAIMS ARE IN FACT VERY SPECIFIC.

23             AT PAGE 123, FOR INSTANCE, THE COURT

24  RECOGNIZED THAT THE CLAIM ITSELF DESCRIBES, IN

25  CONSIDERABLE DETAIL, WHAT IS REQUIRED OF THE MESSAGE

1   RATE INTERVAL.

2                    AND, YOUR HONOR, YOU CONTINUED AT PAGE

3   124 TO EXPLAIN THAT THE CLAIM ITSELF PRECISELY

4   SPECIFIES HOW THE MESSAGE RATE INTERVAL IS USED AND HOW

5   IT MUST RELATE TO FIRST AND SECOND TYPES OF DATA.

6                    SO, YOUR HONOR, WHEN YOU LOOK AT CLAIM 6

7   OF THE '775, WHAT YOU HAVE IS A CLAIM, CONTRARY TO WHAT

8   DEFENDANTS ARGUE, THAT IS TIED TO A SPECIFIC PHYSICAL

9   EMBODIMENT AND IS VERY SPECIFIC TO WHAT IS BEING

10  CLAIMED AND EXPRESSLY WITH REGARDS TO THE MESSAGE RATE

11  INTERVAL.

12                   THEN, YOUR HONOR, WHEN YOU GO TO THE

13  SECOND STEP OF THE 101 ANALYSIS, DEFENDANTS SIMILARLY

14  FAIL TO CARRY THEIR BURDEN.  THIS IS AT PAGE 19 OF

15  THEIR OPENING BRIEF.  AND THIS IS THE EXTENT OF THE

16  ARGUMENT, THAT THE '775 PATENT LACKS AN INVENTIVE

17  CONCEPT.  AS YOU SEE AGAIN HERE, YOUR HONOR, THERE'S NO

18  CITATION TO ANY EVIDENCE, NO CITATION TO DEPOSITION

19  TESTIMONY, NOT EVEN A CITATION TO ANY EXPERT REPORT.

20                   AND WHEN YOU GO TO THEIR SEPARATE

21  STATEMENT OF FACTS, YOUR HONOR, FOR BOTH STEPS, YOU

22  WILL SEE, ALSO, AN ABSENCE OF ANY EVIDENCE GOING TO

23  BOTH STEPS OF THE ALICE TEST, ABSTRACT IDEA AND WHETHER

24  THERE'S AN INVENTIVE CONCEPT.

25                   IN FACT, YOUR HONOR, WHEN YOU LOOK AT HOW

1    THEY ADDRESS 101, AT THE THRESHOLD, THEY FAILED TO

2    CARRY THEIR BURDEN BECAUSE NOWHERE IN THIS ANALYSIS DO

3    YOU SEE ANY DISCUSSION OF THE LIMITATIONS OF THE CLAIM

4    AS AN ORDER COMBINATION.  AND THAT'S REQUIRED, YOUR

5    HONOR.  NOWHERE IS THAT TERM MENTIONED IN THE ARGUMENT

6    SECTION.  AND YOU WON'T EVEN FIND IT IN THE LEGAL

7    STANDARD SECTION.  THEY SIMPLY DID NOT ADDRESS THAT

8    CONCEPT.  AND THAT IS THEIR BURDEN TO ESTABLISH BY

9    CLEAR AND CONVINCING EVIDENCE.

10           YOUR HONOR, WHEN YOU LOOK AT THE RECORD

11   AS TO WHAT SIGNAL PRESENTED, YOU WILL SEE THERE IS

12   EVIDENCE IN THE RECORD THAT AN INVENTIVE CONCEPT IS

13   DISCLOSED.  I'LL SIMPLY POINT YOU TO WHERE THAT SHOWS

14   UP IN THE RECORD.  AND THAT'S AT EXHIBIT 8, THE SMEDLEY

15   AMENDED VALIDITY REPORT AT PAGES 39 TO 58.

16           THE LAST POINT I WANT TO MAKE ON THE

17   '775, YOUR HONOR, IS THIS IDEA OF PREEMPTION.  AND THAT

18   IS THE CONCERN THAT UNDERLIES CERTAINLY AT LEAST THE

19   SECOND STEP OF THE ALICE TEST.  THE COURT WANTS TO MAKE

20   SURE THAT WE DON'T PREEMPT FUNDAMENTAL BUILDING BLOCKS.

21   AND WHEN YOU LOOK THROUGH A DEFENDANTS' BRIEF, THEY

22   MAKE ONE STATEMENT WITH REGARDS TO THE '775 AS TO

23   PREEMPTION.  AND ALL THEY SAY AT PAGE 19 OF THEIR BRIEF

24   IS THAT THE '775 PREEMPTS THE ENTIRE ABSTRACT IDEA OF

25   USING TWO DATA RATES AT THE SAME TIME, PERIOD, NO

```
 1    CITATION TO ANY EVIDENCE, NO CITATION TO ANY EXPERT, NO

 2    CITATION TO ANY DEPOSITION TESTIMONY.  ALL THAT IS,

 3    YOUR HONOR, IS ATTORNEY IPSE DIXIT ON WHETHER OR NOT

 4    THERE'S PREEMPTION.

 5                 AND THE RECORD SHOWS, YOUR HONOR, THAT IN

 6    FACT PREEMPTION IS NOT A CONCERN IN THIS CASE.  WHEN

 7    YOU LOOK AT DEFENDANTS OWN DAMAGES EXPERT REPORTS, THEY

 8    OPINE THAT THERE ARE OTHER NON-INFRINGING ALTERNATIVES

 9    TO THE '775.  AND WE REFER TO THOSE, YOUR HONOR, AT THE

10    HAAS DECLARATION AT PARAGRAPH 12 THAT WAS SUBMITTED IN

11    SUPPORT OF OUR OPPOSITION PAPERS.

12                 ESSENTIALLY, WHAT DEFENDANTS ARGUE, YOUR

13    HONOR, IS THAT THERE ARE OTHER COMMUNICATION PROTOCOLS

14    THAT EXIST OUT THERE, AND THAT THERE ARE OTHER FORMATS

15    AND DATA STRUCTURES FOR SENDING A MESSAGE.

16            THE COURT:  I UNDERSTAND.

17         MR. WANG:  ONE OF THE DEFENDANTS MADE AN

18    ARGUMENT THAT YOU COULD SEND A FIRST DATA IN THE

19    MESSAGE AND SIMPLY NOT INCLUDE THE SECOND DATA ASPECT

20    THAT IS REQUIRED BY THE CLAIMS.  IN OTHER WORDS, LEAVE

21    A GAP.

22            THE COURT:  ANYTHING YOU WANT TO ADD AT THIS

23    POINT, MR. WANG?

24            MR. WANG:  THAT'S IT, YOUR HONOR.

25            THE COURT:  THANK YOU.
```

1          MR. LAVELLE:  YOUR HONOR, JOE LAVELLE.  I'LL

2     SPEAK, I THINK, ON BEHALF OF THE DEFENDANTS.

3               THE CLAIM IS DIRECTED TO NOTHING MORE

4     THAN A PROTOCOL.  THE TITLE OF THE PATENT IS "A DUAL

5     RATE COMMUNICATIONS PROTOCOL."  THE SUMMARY OF THE

6     INVENTION DESCRIBES IT AS A PROTOCOL.  THE DETAILED

7     DESCRIPTION OF THE INVENTION DESCRIBES IT AS A

8     COMMUNICATION PROTOCOL.  A PROTOCOL IS DEFINED IN THE

9     DICTIONARY AS A DETAILED PLAN OF A SCIENTIFIC OR

10    MEDICAL TREATMENT.

11              IT'S A PLAN.  IT'S AN ALGORITHM.  THAT'S

12    PRECISELY WHAT THIS CLAIM IS DRAWN TO, IS AN ALGORITHM

13    FOR TRANSMITTING TWO TYPES OF MESSAGES OVER ANY

14    COMMUNICATION LINK AT ALL.

15              SO IN TERMS OF THE FIRST PART, THERE'S NO

16    QUESTION WE'RE DEALING WITH AN ABSTRACT IDEA.  WE'RE

17    DEALING WITH A PROTOCOL.

18              THE SECOND PART OF THE TEST IS, IS THERE

19    ANYTHING ELSE IN THE CLAIM SUCH THAT IT'S RESTRICTED TO

20    CLAIMING SOMETHING LESS THAN JUST THE IDEA?  AND THERE

21    MOST CLEARLY ISN'T.  THERE'S NO STRUCTURE.  THERE'S NO

22    APPLICATION.  THERE'S NO MEDIA OR CIRCUMSTANCE OF WHICH

23    IT WOULD BE USED.  THERE'S NOTHING.  AND SO THE CLAIM

24    FAILS THE ABSTRACT IDEA TEST.

25              NOW, IN RESPONSE TO SOME OF THE ARGUMENTS

```
 1    THAT PLAINTIFF MADE, FIRST OF ALL, THIS CLEAR AND
 2    CONVINCING EVIDENCE I BELIEVE IS MISPLACED, JUDGE.
 3    THIS IS A LEGAL ISSUE.  AND SEVERAL OF THE DISTRICT
 4    COURT CASES IN THIS DISTRICT, THE HUGHES COMMUNICATION
 5    TEST AND MCROE (PHONETIC), I THINK AS WELL, MADE THE
 6    POINT THAT WE'RE DEALING WITH A LEGAL ISSUE, NOT A
 7    FACTUAL ISSUE, AND THAT THE CLEAR AND CONVINCING
 8    EVIDENCE NEED NOT APPLY HERE.  BUT WE MEET IT EVEN IF
 9    IT DOES APPLY.
10              SIGNAL MAKES A BUNCH OF JUST MISTAKEN
11    ARGUMENTS ABOUT WHAT THIS CLAIM COVERS TO TRY AND MAKE
12    IT SPECIFIC.  THEY SAY BOTH TYPES OF DATA NEED TO BE
13    COMMUNICATED IN THE INVENTION.  THAT'S JUST NOT WHAT
14    THE CLAIM SAYS.  THE LAST LIMITATION IN THE CLAIM SAYS
15    YOU ONLY HAVE TO SEND ONE OF THE TYPES.
16              THEY SAY THE TWO TYPES --
17         THE COURT:  GO BACK TO THE LEGAL ISSUE POINT
18    YOU WERE MAKING.
19         MR. LAVELLE:  SURE.
20         THE COURT:  ARE YOU SAYING BECAUSE IT'S A
21    LEGAL ISSUE, IS IT YOUR POSITION THAT THERE'S NO -- THE
22    LEGAL ISSUE ISN'T FRAMED BY ANY FACTS?
23         MR. LAVELLE:  NO, OF COURSE THEY'RE FRAMED BY
24    FACTS.  BUT THE FACTS ARE THE PATENT AND THE
25    PROSECUTION HISTORY.  IT'S NOT ONE THAT'S SORT OF IN
```

```
1    SERIOUS DISPUTE SUCH THAT SOMEBODY HAS TO CONVINCE YOU
2    WHAT THE PATENT SAYS.
3              THE COURT:  THANK YOU.  I JUST WANT TO MAKE
4    SURE I UNDERSTOOD WHAT YOU WERE SAYING.
5              MR. LAVELLE:  THE PLAINTIFFS SAY THAT ALL THE
6    DATA HAS TO BEGIN AND END AT THE SAME LOCATION.  THAT'S
7    NOT IN THE CLAIM.
8                    THE CLAIM SAYS, AND THE SPECIFICATION
9    ENVISIONS, HAVING MULTIPLE TYPES OF DATA ON THE BUS.
10                   THEY ARGUE THAT THE CLAIM IS LIMITED TO A
11   SPECIFIC ELECTRONIC COMMUNICATION.  AND IT'S JUST NOT.
12                   THEIR ARGUMENTS ABOUT WHY THERE'S
13   SOMETHING IN ADDITION, THE INVENTIVE CONCEPT,
14   ESSENTIALLY AMOUNT TO SAYING, THAT THE INVENTIVE
15   CONCEPT IS A WAY TO SEND TWO TYPES OF DATA OVER THE
16   LINK.  BUT THAT'S THE ABSTRACT IDEA.  THAT'S NOT THE
17   "SOMETHING DIFFERENT."
18                   SO, VERY BRIEFLY, I THINK YOU'VE GOT IT
19   RIGHT.  WE'RE DEALING WITH AN ABSTRACT PROTOCOL AND
20   NOTHING ELSE IN THE PATENT, EVEN IN THE CLAIM, EVEN IF
21   THIS OTHER STUFF IN OTHER CLAIMS ARE IN THE
22   SPECIFICATION.  THANK YOU.
23             THE COURT:  THANK YOU, MR. LAVELLE.
24             MR. LAVELLE:  SHOULD I GO ON TO THE '927?
25             THE COURT:  IS THERE SOMEONE ELSE WHO WANTS TO
```

1    ADDRESS THIS SPECIFIC ISSUE?

2                    MR. WANG, WHY DON'T I HEAR YOU IN

3    RESPONSE THEN.

4             MR. WANG:  THANK YOU, YOUR HONOR.

5                    YOUR HONOR, IN THE CLAIM CONSTRUCTION

6    CONTEXT, IT'S A QUESTION OF LAW.  THERE ARE UNDERLYING

7    QUESTIONS OF FACT.  WHEN YOUR HONOR CONDUCTED THE CLAIM

8    CONSTRUCTION IN THIS CASE, THERE WAS -- YOU ELICITED

9    EXPERT TESTIMONY.  THAT SHOULD BE NO DIFFERENT IN THIS

10   CASE.  THIS IS A QUESTION OF LAW, AND THERE CERTAINLY

11   ARE UNDERLYING QUESTIONS OF FACT.

12                   THIS IS A DECISION FROM JUDGE CARTER FROM

13   THIS COURT, MODERN TELECOM VERSUS LENOVO.  IT ISSUED

14   DECEMBER 2ND, 2015.  I JUST WANTED TO RESPOND TO

15   MR. LAVELLE'S.  HERE, JUDGE CARTER RECOGNIZES THAT THE

16   COURT FINDS THAT DEFENDANT LENOVO BEARS THE BURDEN OF

17   ESTABLISHING INVALIDITY, AND BECAUSE THIS IS A MOTION

18   FOR SUMMARY JUDGMENT, THE COURT FINDS THE CLEAR AND

19   CONVINCING EVIDENCE STANDARD APPLIES HERE.  AND HE

20   REPEATS THAT AT THE END, "DEFENDANT LENOVO BEARS

21   THE" --

22             THE COURT:  I DON'T THINK THAT'S IN DISPUTE.

23   I THINK -- I THINK THE DISPUTE IS, HOW THE -- I

24   UNDERSTAND THAT.

25             MR. WANG:  THANK YOU, YOUR HONOR.

```
 1              THE COURT:  I DON'T THINK THAT'S NEW.

 2              MR. WANG:  OKAY.  GREAT.

 3              THE COURT:  THANK YOU.

 4              MR. WANG:  THE PROBLEM HERE, YOUR HONOR, IS

 5   THAT THEY DO NOT PRESENT ANY EVIDENCE.  AND WHEN YOU GO

 6   THROUGH THE BRIEFS, YOU'LL SEE THAT.  AND WHEN YOU GO

 7   TO THE STATEMENT OF UNDISPUTED FACTS, YOU'LL SEE THAT

 8   AS WELL.

 9              MR. LAVELLE SAID THAT THERE'S NOTHING

10   MORE HERE THAN A PROTOCOL.  YOUR HONOR, THAT'S GREAT.

11   THEY HAVE DISTILLED THE CLAIM TO NOTHINGNESS.  AND IN

12   DOING SO, THEY IGNORE MANY OF THE REQUIREMENTS THAT ARE

13   IN THE CLAIM, WHICH THE COURT HAS EXPRESSLY SAID YOU

14   SHOULD NOT DO.  AS THE COURT RECOGNIZED IN CLAIM

15   CONSTRUCTION, THE CLAIM REQUIRES ESTABLISHING A MESSAGE

16   RATE INTERVAL.  AND THAT'S VERY SPECIFIC.  THE CLAIM

17   REQUIRES DEVOTING A PORTION OF EACH MESSAGE RATE

18   INTERVAL TO THE FIRST AND SECOND TYPES OF DATA.  THE

19   CLAIM REQUIRES SPECIFIC LINKS FOR THE MESSAGE RATES IN

20   RELATION TO THE RELEVANT PORTIONS OF THE MESSAGE RATE

21   INTERVAL.

22              AND MR. LAVELLE ARGUED THAT THERE'S

23   NOTHING IN THE CLAIMS THAT REQUIRES THAT THE FIRST AND

24   SECOND DATA BE INCLUDED IN THE MESSAGE.  YOUR HONOR,

25   THAT'S A MISREADING OF THE LAST LIMITATION OF THE
```

```
1    CLAIM.  BECAUSE ALTHOUGH THE LIMITATION REFERS TO AT
2    LEAST ONE OF THE FIRST AND SECOND TYPES, IT'S NOT
3    SAYING YOU ONLY HAVE TO HAVE ONE.  WHAT IT SAYS IS,
4    WITH RESPECT TO THE RESPECTIVE PORTIONS OF EACH MESSAGE
5    RATE INTERVAL, AND THOSE PORTIONS HAVE BEEN DEVOTED
6    EARLIER IN THE CLAIM, YOU HAVE EITHER A FIRST OR SECOND
7    DATA.
8              YOUR HONOR, AS FAR AS THE SECOND STEP OF
9    THE ALICE TEST, MR. LAVELLE SAID THERE'S NOTHING MORE.
10   THERE'S NO STRUCTURE.  THERE'S NO APPLICATION.  AND I
11   THINK I ADDRESSED THAT IN MY OPENING COMMENTS, YOUR
12   HONOR.
13             THE COURT:  THANK YOU, MR. WANG.
14             ALL RIGHT.  THEN, MR. LAVELLE, YOU'RE
15   GOING TO ADDRESS THE NEXT ISSUE?
16             AND THEN, MR. WANG, ARE YOU GOING TO
17   RESPOND?
18             MR. WANG:  YES, YOUR HONOR.
19             MR. LAVELLE:  YOUR HONOR, JOE LAVELLE AGAIN.
20             I READ YOUR TENTATIVE CAREFULLY.  I'M NOT
21   GOING TO DISPUTE ANY OF THE WAY YOU READ THE CLAIM AND
22   WHAT YOU FOUND.  BUT WHAT I'M GOING TO ARGUE TO YOU,
23   INSTEAD, IS THAT BASED ON YOUR ANALYSIS OF THE CLAIM,
24   THIS CASE IS GOVERNED BY PARKER VERSUS FLOOK AND THE
25   MAYO CASE, AND THAT YOU SHOULD FIND, IN APPLYING THOSE
```

1    CASES, THAT THIS CLAIM IS ABSTRACT.

2              FIRST OF ALL, THERE'S NO QUESTION THAT

3    THE CLAIM IS DRAWN TO AN ALGORITHM.  FIGURE 5 OF THE

4    PATENT, IF WE -- DO WE HAVE PERMISSION TO PUT UP FIGURE

5    5, PLEASE?

6              THE SERIES OF STEPS THAT YOU CORRECTLY

7    IDENTIFIED ARE ALL SHOWN IN FIGURE 5.  AND THE PATENT

8    DESCRIBES FIGURE 5.  IT SAYS, "FIGURE 5 IS A FLOW CHART

9    REPRESENTING AN ALGORITHM FOR CARRYING OUT THE

10   INVENTION."

11             SO WE CAN GO THROUGH IT, IF IT WOULD BE

12   HELPFUL.  BUT EACH STEP OF THE METHOD STEP IS DISCLOSED

13   IN THIS ALGORITHM.  AND THE PATENT TELLS US THAT IT IS

14   AN ALGORITHM FOR CARRYING OUT THE INVENTION.  THE

15   ALGORITHM, OF COURSE, IS A COMPUTER PROGRAM THAT RUNS

16   ON THAT MICROPROCESSOR, 28 IN FIGURE 2.  A COMPUTER

17   PROGRAM IS A PARADIGM OF A MATHEMATICAL EXPRESSION OR

18   ABSTRACT IDEA.

19             NOW, FOR SURE, THE CLAIM SAYS THAT THIS

20   ALGORITHM RUNS IN THE ENVIRONMENT OF A BLIND SPOT

21   DETECTION SYSTEM.  AND, FOR SURE, THE PREAMBLE, YOU

22   HAVE ALREADY HELD, IS PART OF THIS CLAIM AND IS

23   HARDWARE.

24             BUT WHAT I'M GOING TO SUGGEST TO YOU,

25   YOUR HONOR, IS THAT THAT'S NOT ENOUGH.  PARKER VERSUS

1    FLOOK SEEMS TO BE CONTROLLING HERE.  IN PARKER, THE

2    INVENTOR STARTED WITH A CONVENTIONAL CATALYTIC

3    CONVERTER THAT WAS CONTROLLED BY COMPUTERS THAT SET-OFF

4    ALARMS IF IT WAS TOO HOT OR THE PRESSURE WAS TOO HIGH.

5    THE INVENTION WAS MODIFYING THE SOFTWARE TO MAKE THE

6    ALARMS VARIABLE SO THAT THEY COULD CHANGE OVER TIME.

7              ALL RIGHT.  THE COURT -- THE SUPREME

8    COURT TOOK THE CASE AND SAID, THERE'S NO QUESTION THAT

9    WHAT WE HAVE AT THE HEART OF THIS IS AN ABSTRACT IDEA,

10   AN IMPROVEMENT TO A COMPUTER PROGRAM.  SO THAT IN THE

11   WAY WE SAY IT IN THE MAYO WORLD, THE INVENTION IS DRAWN

12   TO AN ABSTRACT IDEA JUST AS IT WAS IN PARKER AND JUST

13   AS IT WAS IN MAYO.

14             THE SUPREME COURT IN PARKER THEN LOOKED

15   AT THE REMAINDER OF THE CLAIM AND SAID IT'S A

16   CONVENTIONAL CATALYTIC CONVERTER.  THE CATALYTIC

17   CONVERTER WASN'T CHANGED.  ALL THAT WAS DONE WAS TO

18   TWEAK THE SOFTWARE.

19             THAT'S THE FACTS HERE, YOUR HONOR.  WHAT

20   HAPPENED -- THE BLIND-SPOT SYSTEM IS CONVENTIONAL.  IT

21   HAD SOFTWARE BEFORE.  AND THAT SOFTWARE WAS IMPROVED BY

22   THE USE OF AN ABSTRACT IDEA, THE VARIABLE SUSTAIN TIME.

23   AND ALL THE CLAIM CLAIMS IN ITS FORM IS A BUNCH OF SOME

24   STEPS THAT OPERATE IN THE CONTEXT OF CONVENTIONAL

25   HARDWARE.

```
 1              SO JUST AS IN PARKER -- JUST AS IN MAYO,

 2    IN THE MAYO CASE, THE SUPREME COURT SAID, WELL, THERE'S

 3    AN ABSTRACT IDEA.  IT WAS A LAW OF NATURE, HOW YOUR

 4    BODY RESPONDS TO A CERTAIN DRUG.  ONCE IT SAID THERE

 5    WAS AN ABSTRACT IDEA, IT SAID, ALL THE REST OF THIS

 6    CLAIM IS IS DOCTORS ADMINISTERING THE DRUG AND SEEING

 7    HOW IT REACTS, AND THAT THAT'S CONVENTIONAL.  SO UNDER

 8    THE SAME SORT OF ANALYSIS, THE INVENTION IS ABSTRACT.

 9    IT'S DRAWN TO AN ABSTRACT IDEA.  AND THE REMAINDER OF

10    THE HARDWARE IS CONVENTIONAL.

11              SO I THINK IF YOU APPLY PARKER AND MAYO,

12    THAT THAT DRIVES THE OUTCOME HERE.

13              AND I GRANT YOU, IT PASSES THE

14    MACHINE-OR-TRANSFORMATION TEST.  SO DID THE INVENTION

15    IN PARKER AND THOSE OTHER FACTORS.  ALTHOUGH TRUE, I

16    DON'T THINK THEY GET TO THE WAY WE SHOULD ANALYZE THIS

17    CLAIM UNDER THE SUPREME COURT CASES.  THANK YOU.

18              THE COURT:  ALL RIGHT.

19              ANY OTHER DEFENSE COUNSEL WANT TO ADD TO

20    THIS?

21              WHO IS GOING TO ADDRESS THIS, MR. WANG?

22              MR. WANG:  YES, YOUR HONOR.

23              YOUR HONOR, MR. LAVELLE'S ARGUMENT IN

24    RESPONSE TO THE COURT'S TENTATIVE WAS SOLELY THAT THE

25    CLAIMS OF -- THE ASSERTED CLAIMS OF THE '927, CLAIMS 1,
```

```
 1    2 AND 6, ARE SOLELY DIRECTED TO AN ALGORITHM.  AND HE
 2    RELIES EXTENSIVELY ON PARKER V. FLOOK.  IN PARKER V.
 3    FLOOK, THAT CASE DID SAY THAT THE CLAIMS IN THAT CASE
 4    WERE INELIGIBLE.  AND IT DID SO BECAUSE THOSE CLAIMS
 5    WERE SIMPLY CONVERTING BCD NUMERALS TO PURE BINARY
 6    NUMERALS.  AND THERE WERE NO OTHER LIMITATIONS ON IT.
 7    IT PREEMPTED WHOLLY THE USE OF THAT ALGORITHM.
 8              IF WE'RE GOING TO LOOK TO SEE WHEN
 9    ALGORITHMS MAY BE ELIGIBLE OR INELIGIBLE - AND,
10    CERTAINLY, WE'RE NOT CONCEDING THAT THIS IS PURELY AN
11    ALGORITHM WHATSOEVER - THE MORE APPROPRIATE CASE IS
12    DIAMOND VERSUS DIEHR.  AND THAT'S THE RUBBER CURING
13    CASE.  AND THAT'S A CASE THAT RECOGNIZES THAT, SURE, A
14    CLAIM CAN INCLUDE AN ALGORITHM, CAN DEPEND ON AN
15    ALGORITHM.  BUT IF IT'S A SPECIFIC APPLICATION OF THAT
16    ALGORITHM AND IT HAS OTHER LIMITATIONS, THEN, SURE,
17    IT'S ELIGIBLE UNDER 101.  AND THAT'S THE SITUATION THAT
18    WE HAVE HERE, YOUR HONOR.
19              BUT WHAT I ALSO WANTED TO REITERATE, YOUR
20    HONOR, IS, THAT'S ALL YOU HEARD FROM THE DEFENSE
21    COUNSEL.  AND THEIR ANALYSIS IN THE '927 IS REALLY NO
22    DIFFERENT THAN IT WAS WITH THE '775.  AS YOU GO THROUGH
23    THERE, YOUR HONOR, THEY, AGAIN, PRESENT NO EVIDENCE TO
24    SUPPORT THE BURDEN THAT THEY BEAR ON THIS CASE.  IN
25    FACT, THEY VACILLATE ON WHAT EXACTLY THE ABSTRACT IDEA
```

```
1    IS.  IN THEIR OWN MOTION PAPERS, YOUR HONOR, THERE ARE

2    VARIOUS FORMULATIONS OF THAT.  "USING A VARIABLE

3    SUSTAIN TIME IN A BLIND-SPOT WARNING SYSTEM FOR AN

4    AUTOMOBILE," THAT SHOWS UP AT PAGE 20.

5                THEN AT PAGE 22, "VARYING THE LENGTH OF

6    TIME THAT AN ALERT STAYS ON BASED ON THE RELATIVE SPEED

7    OF TWO VEHICLES."

8                THEN AT PAGE 24, THEY SIMPLY SAY, "USE OF

9    A VARIABLE SUSTAIN TIME."

10                AND THEY REPEAT THAT IN THE REPLY BRIEF,

11   "ABSTRACT IDEA," OPEN PAREN, "VARIABLE SUSTAIN TIME,"

12   CLOSED PAREN.

13                AND WHEN YOU LOOK AT THE EXPERTS, THE

14   EXPERTS, SIMILARLY, CHARACTERIZE THE SO-CALLED

15   "ABSTRACT IDEA" DIFFERENTLY.  HONDA'S EXPERT,

16   MR. ROSENBLUM, HE SAID, "THAT THE CONCEPT OF OBSERVING

17   AN OBJECT OF INTEREST AND NOTIFYING ANOTHER OF IT."

18                AND WHEN WE SAW IN VW'S EARLIER 12(C)

19   MOTION, THERE THEY SAID, "THE ABSTRACT IDEA WAS

20   MEASURING AND CALCULATING PHYSICAL PARAMETERS USING

21   CONVENTIONAL SYSTEMS OR METHODS IN GENERATING AN ALARM

22   OR CONTROL SIGNAL BASED ON THOSE MEASUREMENTS AND

23   CALCULATIONS."  AND THAT WAS AT THEIR BRIEF AT PAGES 15

24   TO 16 IN DOCKET 101-1.

25                WHAT THIS SHOWS, YOUR HONOR, IS THAT
```

```
 1    DEFENDANTS CAN'T EVEN AGREE AMONG THEMSELVES OR EVEN IN

 2    THEIR OWN BRIEF AS TO WHAT THE ABSTRACT IDEA IS.  AND,

 3    CERTAINLY, THAT CANNOT BE CLEAR AND CONVINCING EVIDENCE

 4    OF AN ABSTRACT IDEA.

 5              MOREOVER, WHAT THEY'VE DONE IS, THEY

 6    HAVE, AGAIN, DISTILLED THE CLAIM TO BASICALLY OBLIVION.

 7              AND WHAT THEY HAVE IGNORED IS THAT THE

 8    CLAIMS REQUIRE A RADAR SYSTEM, WHICH THE CLAIM

 9    CONSTRUCTION ORDER PULLED IN THROUGH THE PREAMBLE.

10    THAT THE CLAIMS REQUIRED DETECTING A VEHICLE IN A BLIND

11    SPOT.  THAT THE CLAIMS IMPROVE OR INCREASE A ZONE OF

12    COVERAGE.  THAT THEY REQUIRE DETERMINING A RELATIVE

13    SPEED.  AND THAT THE CLAIMS ARE NOT SIMPLY ABOUT

14    VARIABLE SUSTAINED TIMES, BUT ARE DIRECTED MORE

15    NARROWLY TO SELECTING A VARIABLE SUSTAIN TIME AS A

16    FUNCTION OF RELATIVE VEHICLE SPEED.

17              YOUR HONOR'S CLAIM CONSTRUCTION ORDER AT

18    PAGE 8 RECOGNIZES THAT THESE ARE IMPORTANT ELEMENTS OF

19    THE CLAIM THAT DEFENDANTS SIMPLY OVERLOOK.

20              AND DEFENDANTS DON'T EVEN BOTHER TO

21    ADDRESS THE DEPENDENT CLAIM, CLAIM 2, WHICH REQUIRES

22    NOT SIMPLY A VARIABLE SUSTAIN TIME, YOUR HONOR, BUT

23    THAT IS AN INVERSE FUNCTION OF THE RELATIVE VEHICLE

24    SPEED.  AND CLAIM 6, WHICH REQUIRES A THRESHOLD TIME AS

25    A FUNCTION OF THE HOST VEHICLE SPEED.
```

1            THESE ARE DEFICIENCIES, YOUR HONOR, THAT

2     DEFENDANTS CANNOT MEET AT THE OUTSET, AND IT SHOULD

3     RESULT IN THE DENIAL OF SUMMARY JUDGMENT MOTIONS ON

4     THAT.

5            DEFENDANTS -- AS FAR AS THE SECOND STEP,

6     YOUR HONOR, I WANTED TO POINT OUT, AGAIN, THAT THERE'S

7     NO ANALYSIS OF AN ORDER COMBINATION, NO REFERENCE TO

8     THAT REQUIREMENT WHATSOEVER.

9            AND FOR THE '927 PATENT, YOUR HONOR, I'LL

10    POINT YOU TO WHAT THE PLAINTIFFS HAVE SUBMITTED AT

11    EXHIBIT H IN THE OPPOSITION BRIEF THAT SUPPORTS THAT IN

12    FACT THERE IS AN INVENTIVE CONCEPT DISCLOSED.  AND THAT

13    ALL DEFENDANTS HAVE DONE IS TO STRIP AWAY ALL THE

14    ELEMENTS OF THE CLAIM TO RELY SIMPLY ON THE VARIABLE

15    SUSTAIN TIME.  YOUR HONOR, WHICH I WILL POINT OUT THAT

16    THEIR OWN EXPERT HAS ACKNOWLEDGED IS NEW.  CERTAINLY

17    THAT DOESN'T TRANSLATE DIRECTLY TO AN INVENTIVE

18    CONCEPT.  BUT THEY DON'T SEEM TO DISPUTE THAT THAT

19    ASPECT OF THE CLAIM IS NEW.

20            THANK YOU, YOUR HONOR.

21         THE COURT:  THANK YOU, MR. WANG.

22            MR. LAVELLE?

23         MR. LAVELLE:  MAY I?

24         THE COURT:  BRIEFLY.

25         MR. LAVELLE:  JUST THREE POINTS.

```
 1              FIRST, TO CLEAR UP THE CASES, PARKER

 2    VERSUS FLOOK WAS NOT THE CASE THAT HAD TO DO WITH THE

 3    BINARY CODED DECIBELS.  THAT WAS GOTTSCHALK VERSUS

 4    BENSON.  I THINK COUNSEL JUST MISSPOKE.

 5              BUT PARKER WAS THE CATALYTIC CONVERTER

 6    THAT WAS IMPROVED BY IMPROVING THE SOFTWARE AND NOTHING

 7    ELSE.

 8              DIAMOND VERSUS DIEHR, IT'S INTERESTING TO

 9    THINK ABOUT.  BUT THE DIFFERENCE WHEN YOU READ THE CASE

10    IS, THAT THE INVENTOR IN DIAMOND IMPROVED THE MOLD.  HE

11    WAS THE FIRST PERSON WHO COULD PUT A THERMOCOUPLE, A

12    PIECE OF HARDWARE IN THE MOLD.  AND HE HAD A NOVEL MOLD

13    THAT SIMPLY ALSO USED SOME SOFTWARE.  THAT'S

14    PATENTABLE.  THAT'S NOT REALLY AN ISSUE THERE.

15              THE LAST POINT IS, COUNSEL ACCUSED US OF

16    IGNORING THE HARDWARE LIMITATIONS.  WE MOST CERTAINLY

17    ARE NOT.  THERE ARE HARDWARE LIMITATIONS IN THIS CLAIM.

18    BUT THEY ARE CONVENTIONAL.  AND UNDER PARKER AND MAYO,

19    THEY AREN'T ENOUGH TO MAKE THE CLAIM DRAWN TO AN

20    INVENTIVE CONCEPT THAT'S SIGNIFICANTLY DIFFERENT FROM

21    THE IDEA.

22              THE COURT:  ALL RIGHT.

23              MR. LAVELLE:  THANK YOU, YOUR HONOR.

24              THE COURT:  WHAT IS THE NEXT ISSUE?

25              MR. HATCH:  IN KEEPING WITH THE '775, WE WOULD
```

```
 1    LIKE TO ADDRESS THE NON-INFRINGEMENT ARGUMENT AND

 2    INVALIDITY ALSO.

 3              THE COURT:  HERE'S WHAT WE NEED TO FOCUS ON

 4    JUST A LITTLE BIT IN TERMS OF TIMING.  WE CAN GO ABOUT

 5    ANOTHER 50 MINUTES.  I WANT YOU TO BE MINDFUL OF THAT.

 6              MR. PABIS:  RON PABIS, YOUR HONOR.

 7              I THINK IT WOULD BE THE PREFERENCE OF

 8    MOST OF THE DEFENDANTS TO DEAL WITH THE '007 BEFORE WE

 9    RUN OUT OF TIME.

10              THE COURT:  LET'S DO THIS:  LET'S TAKE FIVE

11    MINUTES.  AND I'D LIKE YOU TO CONFER A BIT, JUST TO

12    GIVE THE REPORTER A BRIEF BREAK.

13              ON THE '707, IF YOU HAVEN'T ALREADY, I

14    WOULD LIKE THE DEFENDANTS -- LET'S PUT IT THIS WAY:

15              WE HAVE ABOUT 50 MINUTES LEFT.  I'LL

16    ALLOCATE THAT BETWEEN THE TWO SIDES HERE.

17              NOW, I'D LIKE TO GET -- I'D LIKE TO HEAR

18    FROM YOU ON THE '707.

19              AND FROM YOU ON THE '775.

20              DO YOU THINK YOU CAN DO THAT IN THAT

21    AMOUNT OF TIME?

22              MR. HATCH:  YES, YOUR HONOR.

23              THE COURT:  JUST ONE SECOND.

24              WE CAN KEEP GOING.  GO AHEAD.

25              MR. HATCH:  ON THE NON-INFRINGEMENT FOR THE
```

 1    '775 PATENT, WE WANTED TO ADDRESS WHAT LOOKS LIKE AN

 2    ARGUMENT THAT MAYBE WAS THE COURT'S.  AND I DON'T KNOW

 3    THAT IT WAS RAISED BY ANY OF THE PARTIES OR AT CLAIM

 4    CONSTRUCTION.  IT'S THIS IDEA THAT THE WORD "ONLY" IS A

 5    WORD OF EXCLUSION -- I'M READING FROM PAGE 4.  I'M

 6    SORRY, PAGE 4 OF THE TENTATIVE.  "IT'S A WORD OF

 7    EXCLUSION THAT INDICATES THAT NOTHING OTHER THAN A

 8    FRAGMENT OF A COMPLETE MESSAGE CAN BE FORMED."  I DON'T

 9    THINK THIS WAS AN ARGUMENT ANY OF THE DEFENDANTS HAD

10    MADE ON NON-INFRINGEMENT.  SO PERHAPS THE COURT NOTICED

11    THIS ISSUE AND ADDRESSED IT.

12                I WANT TO SAY, FIRST OF ALL, THAT THAT'S

13    NOT HOW ANY -- IT'S NOT HOW SIGNAL OR ANY OF THE

14    DEFENDANTS HAD READ THIS CLAIM.  THE TERM ONLY MEANS

15    THAT IT'S POSSIBLE TO SEND A FRAGMENT -- ONLY A

16    FRAGMENT AS OPPOSED TO A COMPLETE MESSAGE.  BUT IT

17    DOESN'T MEAN THAT ONLY A FRAGMENT CAN BE SENT.  SO,

18    REALLY, THIS IS SORT OF A NEW CLAIM CONSTRUCTION FROM

19    THE COURT, I WOULD SAY, WHERE THAT PHRASE IN CLAIM 6 AT

20    COLUMN 6, LINE 37, "PROVIDING THE SECOND TYPE OF DATA

21    AT A SECOND MESSAGE RATE SUFFICIENT TO FORM ONLY A

22    FRAGMENT OF A COMPLETE MESSAGE."  EVERYBODY IN THIS

23    CASE, UP TO THIS POINT, HAS READ THAT AS MEANING THAT

24    IT'S POSSIBLE TO SEND ONLY A FRAGMENT OF A COMPLETE

25    MESSAGE IN THERE, BUT NOT THAT THAT'S THE ONLY THING

1    THAT CAN BE SENT.

2                THE COURT:  I UNDERSTAND.  I'LL LOOK AT THAT.

3                MR. HATCH:  OKAY.  I'LL JUST POINT OUT, IN THE

4    SPECIFICATION AT COLUMN 3, LINE 61 THROUGH THE TOP OF

5    COLUMN 4, THE REST OF THAT PARAGRAPH, IT INDICATES THAT

6    THIS INVENTION NEEDS TO BE FLEXIBLE, ESPECIALLY WITH

7    RESPECT TO MESSAGE STRUCTURE AND LENGTH.  AND THAT THIS

8    WAS NOT INTENDING TO FIX THE LENGTH OF A MESSAGE TO BE

9    SOME -- SOMETHING GREATER THAN EVEN ONE BIT.

10               THE COURT:  OKAY.

11               MR. HATCH:  THEN WITH RESPECT TO THE

12   DECOTIGNIE REFERENCE, IT SEEMS THE COURT'S TENTATIVE

13   OPINION IS BASED ON THIS IDEA THAT THERE'S A DISCLOSURE

14   SOMEWHERE IN THERE OF A MESSAGE.  AND OUR ARGUMENT WAS

15   NOT THAT IT DIDN'T MENTION MESSAGES OR TALK ABOUT

16   MESSAGES IN THE ABSTRACT.  IT DOES.  IT JUST DOESN'T

17   SAY ANYTHING ABOUT THIS ISSUE OF FRAGMENTATION OR

18   COMPLETE.

19               SO WE KNOW THAT KOOPMAN TESTIFIED AT

20   DEPOSITION THAT, IN FIGURE 6, THOSE LITTLE BOXES IN

21   THERE ARE MESSAGES.  BUT YOU CAN SEE THERE'S NO MESSAGE

22   THERE -- IF THAT'S THE CASE, THERE'S NO MESSAGE THERE

23   THAT'S EVEN FRAGMENTED.  EACH ONE IS A COMPLETE BOX.

24   AND THAT'S REALLY ALL THE DETAIL WE HAVE IN HERE ON

25   THIS CRITICAL ISSUE OF COMPLETE VERSUS FRAGMENT OF

1    MESSAGES.

2              THE COURT:  THANK YOU, MR. HATCH.

3              DOES SOMEONE WANT TO ADDRESS THIS, OR DO

4    YOU WANT TO MOVE TO THE '707?

5              MR. DOYLE?

6         MR. DOYLE:  SCOTT DOYLE FOR MERCEDES-BENZ.

7              TWO POINTS THERE.  FIRST OF ALL, WITH

8    RESPECT TO DECOTIGNIE, UNDER THE CONSTRUCTIONS THAT

9    WERE TAKEN BY THE PLAINTIFF, THERE ARE CLEARLY

10   FRAGMENTS.  THROUGHOUT THE DEPOSITION OF DR. SMEDLEY

11   AND HIS EXPERT REPORTS, ALSO SHOWING UP IN THEIR

12   BRIEFS, THEY TALKED ABOUT THIS ASPECT, WHEN THEY WERE

13   READING THE CLAIM UPON FLEXRAY, THAT A FRAGMENT COULD

14   BE SOMETHING IN THE DYNAMIC SEGMENT, WHICH WAS NOT SENT

15   BECAUSE THERE WASN'T ENOUGH TIME TO SEND.  THAT'S WHAT

16   DECOTIGNIE DOES AS WELL.  IT SAYS THAT IF THERE'S NOT

17   ENOUGH TIME TO SEND IN THE SPORADIC PHASE, IT GETS SENT

18   LATER ON AT THAT POINT.

19              ALSO, IT SEEMS THAT MR. HATCH IS RAISING

20   AN ARGUMENT AS WITH RESPECT TO THE FACT THAT DECOTIGNIE

21   DOES NOT DISCLOSE THE TWO DIFFERENT TYPES OF DATA RATE.

22   IT CLEARLY DOES THAT UNDER THE DEFINITIONS THAT ARE SET

23   FORTH BY SIGNAL AND DR. SMEDLEY.  AND SO -- AND IT ALSO

24   HAS THE TWO DIFFERENT TIME ASPECTS OF THE HIGH-PRIORITY

25   MESSAGES, WHICH WERE VERY SIMILAR TO THE STATIC

MESSAGES OF FLEXRAY, AND THEN THE LOW-PRIORITY

MESSAGES, WHICH IS AKIN TO THE DYNAMIC MESSAGES.

SO IF YOU ACTUALLY LOOK AT THE

CONSTRUCTIONS THAT PLAINTIFF TAKES AND WHAT THEY MAKE

IN TERMS OF HOW THEY DEFINE "DATA RATE, COMPLETE

MESSAGES AND FRAGMENTS," DECOTIGNIE HAS ALL OF THE

ELEMENTS OF THE CLAIM.

THEY RAISE TWO POINTS.  ONE POINT THAT

THEY RAISED -- AND THESE ARE THE ONLY TWO POINTS THEY

MADE IN THEIR OPPOSITION, YOUR HONOR.  THEY SAID,

"DECOTIGNIE DOES NOT DISCLOSE DEVOTING A PORTION OF

EACH MESSAGE RATE INTERVAL TO THE FIRST AND SECOND

TYPES OF DATA BECAUSE SPORADIC DATA IS NOT SENT UNTIL

PERIODIC DATA IS SENT."  WELL, THERE'S NO GENUINE

DISPUTE THERE, YOUR HONOR, BECAUSE WHILE THE PERIODIC

DATA IS ALSO SENT BEFORE SPORADIC DATA, JUST LIKE

FLEXRAY SENDS STATIC MESSAGES BEFORE DYNAMIC MESSAGES.

NOT ONLY THAT, BUT THE REFERENCE ITSELF AT PAGE 41

SAYS, QUOTE, "DURING A MICROCYCLE, BOTH PERIOD AND

SPORADIC TRAFFIC MUST BE HANDLED."  SO THE TWO

DIFFERENT TYPES OF DATA ARE ALWAYS HANDLED THERE.

THEY THEN SPEND A LOT OF TIME WITH

RESPECT TO WHAT ARE MESSAGES.  AND DR. KOOPMAN HAD

ADMITTED THAT DECOTIGNIE IS MERELY A GENERIC PAPER THAT

DOESN'T DISCLOSE THE SUBSTANCE OF MESSAGES.  BUT HE'S

 1    VERY CLEAR SEVERAL TIMES TO CLAIM THAT DECOTIGNIE DOES

 2    DISCLOSE MESSAGES.  THESE ARE WHAT ARE CALLED "C.A.N.

 3    MESSAGES."  SOMETIMES THEY'RE CALLED "VARIABLES."  BUT

 4    EVEN WHEN THEY'RE CALLED "VARIABLES," THEY'RE USED

 5    INTERCHANGEABLY WITH "MESSAGES."

 6              SO DECOTIGNIE DOES SHOW, BY CLEAR AND

 7    CONVINCING EVIDENCE, THAT IT SHOWS EACH AND EVERY

 8    ELEMENT OF THE CLAIM OF THE '775 PATENT AS CONSTRUED BY

 9    PLAINTIFF.

10              THE COURT:  ALL RIGHT.  THANK YOU, MR. DOYLE.

11              BRIEFLY, MR. LAVELLE, YOU HAVE SOMETHING

12    NEW?

13              MR. LAVELLE:  JUST ON THE NON-INFRINGEMENT OF

14    THE '775.

15              I THINK JUST TWO THINGS, YOUR HONOR.

16    FIRST OF ALL, I DON'T SEE ANY CONCERN ABOUT YOUR

17    CONSTRUCTION OF "ONLY."  THAT IS EXACTLY THE WAY THE

18    SPECIFICATION WORKS.  YOU HAVE TO HAVE AT LEAST TWO OR

19    THREE FRAMES TO SEND THE LOW-RATE MESSAGE.

20              BUT THE ADDITIONAL POINT I WANTED TO

21    POINT OUT TO YOU IS THAT, DR. SMEDLEY HYPOTHESIZES IN

22    HIS REPORT TWO POSSIBLE WAYS TO LOOK AT WHAT'S A

23    "MESSAGE."  AND YOU ANALYZE HIS FRAGMENT HYPOTHESIS.

24              THE POINT I WANTED TO REMIND THE COURT

25    IS, THERE'S NO EVIDENCE THAT FLEXRAY ACTUALLY FRAGMENTS

```
 1   MESSAGES IN THE DYNAMIC SECTION.  AND, IN FACT, THE
 2   EVIDENCE IS THAT IT SENDS THE WHOLE DYNAMIC MESSAGE.
 3   AND IF THERE'S NOT ENOUGH ROOM, THE WHOLE MESSAGE
 4   WAITS.  SO THAT THE HYPOTHETICAL SITUATION THAT YOU ARE
 5   ANALYZING THERE, THERE'S NO EVIDENCE IT EVEN HAPPENS IN
 6   FLEXRAY.
 7                    THANK YOU, YOUR HONOR.
 8                 THE COURT:  THANK YOU.
 9                    MR. HATCH, BRIEFLY?
10              MR. HATCH:  THERE IS A DIFFERENCE BETWEEN
11   FLEXRAY AND DECOTIGNIE.
12                    NUMBER ONE, THIS IDEA THAT, IF THERE IS
13   NOT ENOUGH SPACE IN THE MESSAGE -- OR THE FRAME, I
14   SHOULD SAY, TO SEND ALL OF THE DATA, EVEN FLEXRAY HAS A
15   RESERVATION BETWEEN STATIC AND DYNAMIC.  THAT'S
16   COMPLETELY DIFFERENT FROM DECOTIGNIE WHERE NO SPORADIC
17   TRAFFIC WILL TAKE PLACE AS LONG AS ALL PERIODIC
18   REQUESTS ARE PENDING.  THAT'S A KEY DIFFERENCE BECAUSE
19   THE COURT POINTS OUT IN THE TENTATIVE THAT, YES, IT'S
20   POSSIBLE THAT THAT DOESN'T HAPPEN, AND THAT THERE IS
21   DATA IN BOTH THE STATIC AND DYNAMIC PORTIONS.  BUT THAT
22   CAN'T HAPPEN IN FLEXRAY.  AND SO THERE'S NO RESERVATION
23   OF A SEGMENT FOR THE SECOND TYPE OF DATA, IF IT'S
24   POSSIBLE THAT ALL OF THE MESSAGE WILL BE TAKEN UP BY
25   THE FIRST TYPE OF DATA.
```

```
 1              THE COURT:  ALL RIGHT.  ANYTHING MORE YOU
 2    WANTED TO ADD, MR. HATCH, ON THIS?
 3              MR. HATCH:  NO, YOUR HONOR.  THANK YOU.
 4              THE COURT:  BRIEFLY, IF YOU WANT TIME ON THE
 5    '707.
 6              MR. DOYLE:  THIS IS JUST ONE POINT.
 7                MR. HATCH SAID THAT THE COURT APPLIED THE
 8    WRONG DEFINITION OF, QUOTE, "SUFFICIENT TO SEND ONLY A
 9    FRAGMENT."  THE COURT'S RULING IS CORRECT, YOUR HONOR.
10    AND I JUST POINT YOU TO OUR BRIEF.  WE HAVE A VERY LONG
11    PARAGRAPH ON PAGE 23 OF OUR BRIEF THAT EXPLAINS IT ALL.
12    THANK YOU.
13              THE COURT:  AND I REFERRED TWICE TO "'707."  I
14    MEAN "'007."
15              MR. DOYLE:  YES.  WE'RE STILL ON THE '775;
16    RIGHT?
17              THE COURT:  NO, I UNDERSTAND.  I JUST WANTED
18    TO CLEAR UP WHAT I WANTED TO TURN TO.
19              MR. DOYLE:  THANK YOU.
20              THE COURT:  WHAT'S THE MOST EFFICIENT WAY TO
21    PROCEED WITH THE '007 ISSUES?
22              MR. DOYLE:  YOUR HONOR, WE'RE FINE WITH GOING
23    FIRST ON THE '007 ISSUES.
24              THE COURT:  THAT WORK FOR YOU, MR. HATCH?
25              MR. HATCH:  YES, YOUR HONOR.
```

```
1              THE COURT:  OKAY.

2              MR. DOYLE:  OKAY.  YOUR HONOR, ON THE '007

3    PATENT, THERE ARE -- AS WE READ IT IN YOUR TENTATIVE,

4    YOU HAVE MADE TWO POINTS FINDING MATERIAL ISSUES OF

5    FACT WITH RESPECT TO THE DEACTIVATION IN GOING, FOR

6    EXAMPLE, FROM A TWO TO A ZERO.  WHAT WE WOULD LIKE TO

7    DO IS POINT TO THE RECORD WHICH CLEARLY SHOWS THAT THE

8    2.6 KILOGRAMS IS NOT EVER SHOWN TO BE AN UNLOCK

9    THRESHOLD.  THERE'S NOTHING IN THE RECORD TO THAT, YOUR

10   HONOR, FOR DEACTIVATING THE AIRBAG.

11              THE ONLY TESTIMONY WE HAVE ON THE 2.6

12   KILOGRAMS IS DR. SMEDLEY'S STATEMENT THAT THE 2.6

13   KILOGRAMS MAY HAVE BEEN SOMETHING TO DO WITH THE

14   SEAT-BELT TENSIONERS.  WHAT I'D LIKE TO DO IS REFER YOU

15   TO THE SMEDLEY TRANSCRIPT AT 118 TO 119, 17 TO 8 LINES.

16              THE COURT:  DID YOU -- ARE YOU SAYING PAGE 118

17   AND 119?

18              MR. DOYLE:  I'M GOING TO GO AHEAD AND PUT IT

19   ON THE -- ON THIS.

20              THE COURT:  SO YOU ARE PUBLISHING 118, LINE 14

21   THROUGH --

22              MR. DOYLE:  YOUR HONOR, IT'S 118, LINE 17

23   THROUGH PAGE 119, LINE 8.

24              THE COURT:  ALL RIGHT.  GO AHEAD.

25              MR. DOYLE:  OKAY.  SO THIS WAS DURING
```

1    DR. SMEDLEY'S DEPOSITION.  THE QUESTION WAS, "SO THE

2    AIRBAG DEPLOYMENT IS ALWAYS INHIBITED WHEN YOU'RE GOING

3    FROM ONE TO ZERO CORRECTLY -- STRIKE THAT.  THE AIRBAG

4    DEPLOYMENT HAS BEEN INHIBITED WHEN MOVING FROM

5    CLASSIFICATION TWO TO ONE; IS THAT CORRECT?"  SMEDLEY'S

6    ANSWER WAS, "IF THE WEIGHT TRANSITIONS FROM

7    CLASSIFICATION TWO TO ONE GOING DOWN AT THE 20-KILOGRAM

8    THRESHOLD, THEN THE AIRBAG WOULD BE INHIBITED.

9    QUESTION:  AND IT REMAINS INHIBITED WHEN MOVING FROM

10   ONE TO ZERO; CORRECT?  ANSWER:  SO IF IT'S CLASSIFIED

11   AS CLASSIFICATION ONE AND THE WEIGHT DROPS BELOW 2.6,

12   IT WOULD REMAIN ON INHIBITED.  QUESTION:  SO NOTHING

13   HAPPENED AT 2.6?  I CAN'T SAY FOR SURE WHETHER NOTHING

14   HAPPENS AT 2.6 OR NOT.  I BELIEVE THERE ARE ACTUAL

15   THINGS THAT HAPPEN.  LIKE WHAT?  I THINK SOMETHING WITH

16   THE SEAT-BELT TENSIONERS."

17            YOUR HONOR, THAT HAS NOTHING TO DO WITH

18   THE DEACTIVATION OF THE AIRBAG.

19            AT THE SAME TIME, DR. SMEDLEY ALSO AGREED

20   IN THE RECORD THAT THE 20 KILOGRAMS IS THE ONLY

21   DEACTIVATION THRESHOLD.  FOR THAT, WE'RE GOING TO MOVE

22   TO THE DEPOSITION OF DR. SMEDLEY, PAGE 72, LINE 11

23   THROUGH LINE 19.  LET'S TAKE A LOOK AT WHAT THAT SAYS.

24            SO I ASKED DR. SMEDLEY, "SO REFERRING TO

25   THE FIGURE, WHEN DOES THE AIRBAG DEPLOYMENT BECOME

```
1    INHIBITED WHEN IT'S BEEN ENABLED?"  HE REPLIES, "I

2    THINK I UNDERSTAND YOUR QUESTION, WHICH IS GOOD.  IF

3    THE WEIGHT IS ABOVE 29 KILOGRAMS AND SO WE'RE -- I

4    DON'T KNOW, PICK A NUMBER, 35.  SO IT'S NOW LOCKED INTO

5    CLASS TWO.  THEN IT WILL END.  AIRBAG DEPLOYMENT IS

6    ENABLED; RIGHT?  THEN IF THE WEIGHT NOW DROPS BELOW 20

7    KILOGRAMS OR LOWER, ANYTHING LOWER THAN THAT, IT WILL

8    THEN INHIBIT AIRBAG DEPLOYMENT."

9                    HERE, YOUR HONOR, IS THE GRAND TOTAL OF

10   THE RECORD AS IT RELATES TO 2.6.

11                    THE ONLY REASON THAT THE AIRBAG IS

12   DEACTIVATED WHEN THE SEAT IS EMPTY IS BECAUSE EMPTY IS

13   BELOW THE 20-KILOGRAM THRESHOLD.  IT'S ALREADY

14   OCCURRED.

15                    WE ALSO HAVE TESTIMONY ON THE RECORD,

16   WHICH I BELIEVE WAS MISREPRESENTED BY PLAINTIFF IN

17   THEIR OPPOSITION.  I'LL REPEAT THIS.  IT WAS TESTIMONY

18   BY DR. CHAN IN HIS REVIEW OF THE SYSTEM.

19                THE COURT:  JUST -- YOU MEAN REALLY

20   "MISREPRESENTED," OR ARE YOU SAYING YOU DISAGREE WITH

21   THE INTERPRETATION?

22                MR. DOYLE:  YES, I DISAGREE WITH THE

23   INTERPRETATION.

24                THE COURT:  THANK YOU.

25                MR. DOYLE:  THEY HAD USED DR. CHAN AS SAYING
```

```
 1    SOMETHING ALONG THE LINES OF, WHEN THE ADULT THAT'S

 2    SITTING ON THE SEAT GETS UP, THE MERCEDES OCS SYSTEM

 3    WILL TRANSITION FROM CATEGORY TWO TO CATEGORY ZERO AND

 4    DISABLE THE AIRBAG.  IN SUPPORT OF THAT POSITION, THEY

 5    CITED THE TESTIMONY FROM DR. CHAN.

 6              WHAT THEY LEFT OUT, HOWEVER, WAS THE KEY

 7    PORTION.  AND I'LL READ THAT FROM DR. CHAN'S DEPOSITION

 8    IN WHICH HE SAID --

 9              THE COURT:  WHAT PAGE AND LINES?

10              MR. DOYLE:  I ACTUALLY -- I NEED THAT.

11              THE COURT:  READ IT NOW AND TELL ME THE LINES

12    LATER.

13              MR. DOYLE:  I WILL.

14              "SO ONCE I GET OUT OF THE CAR, I HAVE

15    NOTHING TO DO WITH THE SYSTEM.  SO, ESSENTIALLY, WHAT

16    THE SYSTEM SEES IS THAT THE DETECTED WEIGHT OF 58

17    KILOGRAMS DISAPPEARS, AND IT DROPS PROBABLY SOMEWHERE

18    CLOSE TO SOMEWHERE NEAR ZERO.  AND IT IS LIKELY TO BE

19    CLASSIFIED AS ZERO."

20              HERE'S THE IMPORTANT PART.  "AND AS IT

21    DROPPED BELOW 20 KILOGRAMS, THE SYSTEM DID DEACTIVATE.

22    SO SINCE I'M NOT IN THE SEAT ANYMORE FROM -- THEN THE

23    AIRBAG FOR THE PASSENGER SEAT IS DEACTIVATED OR

24    INHIBITED."  AND THIS IS EXHIBIT A AT 96, LINE 6 TO 14,

25    WHICH WAS CHAN'S DECLARATION.
```

```
1              SO IT DOESN'T MATTER WHETHER THE WEIGHT

2    IS JUMPING DIRECTLY FROM ONE TO ZERO, TWO TO ZERO,

3    THREE TO ZERO.  TWENTY IS ALWAYS THE DEACTIVATION

4    THRESHOLD WITHIN THE SYSTEM.

5              WHAT I'D LIKE TO DO IS JUST PUT THIS UP

6    ON THE ELMO REAL QUICKLY.

7              FORGIVE ME.  IT SEEMS LIKE I DID SOME

8    WRITING ON THIS.

9              BUT, IN ANY EVENT, IF YOU LOOK AT THIS,

10   THE -- ACTUALLY, YOU CAN TURN THE PAGE TO -- WE'RE ON

11   PAGE 10 OF OUR DEMONSTRATIVE, AND WE'LL LEAVE A COPY

12   WITH YOU, YOUR HONOR.

13             WHAT THIS SHOWS IS THAT THE DEACTIVATION

14   THRESHOLD IS ALWAYS AT 20.  IF YOU LOOK ON THE TOP

15   SCALE, THE TOP SCALE SHOWS THAT WE'RE GOING UP.  SO

16   YOU'RE GOING UP IN WEIGHT.

17             ON THE TOP SCALE, THERE'S ONLY ONE VALUE

18   AT WHICH THERE'S A LOCK OR -- SO TO SPEAK.  NOT A

19   "LOCK," BUT SOMETHING GOING FROM, YOU KNOW, WHEN THE

20   AIRBAG IS INHIBITED TO BEING ACTIVATED.  AND THAT'S THE

21   29 KILOGRAMS.

22             COMING DOWN, THERE'S ONLY 20, WHICH IS

23   USED AS A DEACTIVATION THRESHOLD.  IT'S ONLY 20, YOUR

24   HONOR.  AND THERE'S NO 2.6 AS AN UNLOCK THRESHOLD.

25   THERE IS NOTHING IN THE RECORD THAT SHOWS 2.6 AS AN
```

```
1    UNLOCK THRESHOLD OR CATEGORY ZERO.  ALL THAT IS IN THE

2    RECORD IS 20 KILOGRAMS, WE SUBMIT, YOUR HONOR.

3                    AS I SAID BEFORE, EVEN DR. SMEDLEY

4    TESTIFIED, I THINK IT HAS SOMETHING TO DO WITH

5    SEAT-BELT TENSIONERS.

6                    WE'D LIKE TO MOVE TO THE OTHER ARGUMENT

7    WHERE YOUR HONOR FOUND THAT WAS A MATERIAL ISSUE OF

8    FACT THAT THE 20-KILOGRAM THRESHOLD ACTUALLY CAN BE A

9    FIRST THRESHOLD.  IF WE LOOK AT HOW OUR SYSTEM WORKS --

10   THIS IS PAGE 9 OF OUR DEMONSTRATIVES.

11                   AGAIN, BACK TO THE ACTIVATION SCALE.  THE

12   CLAIM ITSELF REQUIRES THAT YOU HAVE A FIRST THRESHOLD

13   WHERE ACTIVATION IS ALLOWED.

14                   WHAT IT SAYS IS, THAT FOR SOME PERIOD OF

15   TIME, THERE'S A LOCK THRESHOLD AND THEN A LOCK FLAG,

16   WHICH GETS SET AFTER SOME PERIOD OF TIME.  THAT'S SHOWN

17   BY THE UPPER PORTION OF THE DIAGRAM, YOUR HONOR.

18                   AND WHAT THEY TRY TO DO IS COMPLETELY

19   MISREAD WHAT'S GOING ON WITH THESE THRESHOLDS.

20                   AGAIN, THE UPPER THRESHOLD IS THE

21   ACTIVATION SCALE.  THE LOWER THRESHOLD IS THE

22   DEACTIVATION SCALE.

23                   SO WHAT THEY HAVE DONE IS, AT THE --

24   AGAIN, AT THE VERY LAST MOMENT, THEY HAVE SAID, WELL,

25   FIRST, YOU KNOW, IN THEIR CONTENTIONS AND DR. SMEDLEY,
```

1    THEY ALL TESTIFIED, WELL, THE FIRST THRESHOLD IS

2    ACTUALLY 29 BECAUSE, ABOVE THAT, YOU KNOW, THE AIRBAG

3    IS ACTIVATED.  THAT'S THE THRESHOLD.

4              THEN IN ATTORNEY ARGUMENT, THEY HAVE

5    CHANGED THAT AND SAID, WELL, WE GOT TO FIND -- WE

6    POINTED OUT TO THEM IN OUR BRIEF THAT THEY'RE SAYING

7    THE FIRST THRESHOLD AND THE LOCK THRESHOLD ARE THE

8    SAME.  BUT THE CLAIM ITSELF SAYS THE LOCK THRESHOLD

9    MUST BE ABOVE THE FIRST THRESHOLD.  SO THEY WENT

10   SCAMPERING AROUND AND SAID, LOOK, MY GOD, THERE'S A 20

11   KILOGRAM.  WE'LL JUST CALL THAT THE FIRST THRESHOLD FOR

12   ACTIVATION.

13             THE PROBLEM IS, THAT'S NOT A THRESHOLD

14   FOR ACTIVATION.  THE THING DOESN'T ACTIVATE AT 20.

15   THERE'S NO ACTIVATION AT ALL.  THERE'S NO ALLOWANCE OF

16   DEPLOYMENT.

17             WHAT HAPPENS IS, ON THE ACTIVATION SCALE,

18   IT'S GOT TO BE ABOVE 29.  ONCE IT GETS ABOVE 29, YOU

19   LOCK IT.  OKAY.  AND IT STAYS THAT WAY UNLESS IT DROPS

20   BELOW 20, WHICH IS THE UNLOCK THRESHOLD.  "UNLOCK

21   THRESHOLD," NOT FIRST "THRESHOLD FOR ACTIVATION."  IT

22   JUST DOESN'T HAPPEN THAT WAY.

23             NOW, THIS IS WHAT DR. SMEDLEY SAID.  LET

24   ME PULL OUT HIS -- I'VE GOT IT UP HERE.  THIS IS

25   WHAT -- CAN YOU SEE THIS, YOUR HONOR?

```
 1           THE COURT:  I CAN SEE IT.  THANK YOU.

 2           MR. DOYLE:  OKAY.  THIS IS WHAT HE SAYS.

 3   DR. SMEDLEY MADE THE FOLLOWING STATEMENT IN HIS EXPERT

 4   REPORT, QUOTE, "THE FIRST THRESHOLD CORRESPONDS TO THE

 5   MINIMUM WEIGHT AT WHICH THE AIRBAG WILL BE DEPLOYED.

 6   THE AIRBAG IS DEPLOYED AT ALL WEIGHTS HIGHER THAN THE

 7   FIRST THRESHOLD.  AND, THEREFORE, THE LOCK FLAG IS

 8   ABOVE THE FIRST THRESHOLD FOR ANY PASSENGER ABOVE THE

 9   MINIMUM WEIGHT."

10           ALL RIGHT.  LET'S GO BACK TO THIS.

11           WITH THAT IN MIND, IF WE GO TO THE

12   ACTIVATION SCALE, THERE'S NOTHING HAPPENING ABOVE 20

13   KILOGRAMS.  IT'S STILL INHIBITED.  ONLY WHEN YOU REACH

14   29 DOES IT ACTUALLY ACTIVATE.  THERE'S NO MATERIAL

15   QUESTION OF FACT HERE.  THAT'S WHAT'S GOING ON.  THE

16   CLAIM REQUIRES, IN THE ORDER OF THE STEPS, THE FIRST

17   THRESHOLD, AN ALLOWANCE OF DEPLOYMENT, THEN A LOCK

18   THRESHOLD, WHICH USING THE LOCK FLAG AFTER SOME PERIOD

19   OF TIME LOCKS IN THE ACTIVATION.  AND THE ONLY WAY THIS

20   THING GETS TURNED OFF IS, IF SOMEHOW WE DROP ALL THE

21   WAY BELOW 20.  WHETHER IT'S 18, 10, 5, 4, 3, 2.6 --

22           THE COURT:  I UNDERSTAND.

23           MR. DOYLE:  -- THAT'S THE WAY THE SYSTEM

24   WORKS.  THAT'S WHAT'S STATED THROUGHOUT THE RECORD.

25   THERE'S NOTHING ELSE.  AND, AGAIN, 20 KILOGRAMS IS A
```

1    DEACTIVATION THRESHOLD, NOT AN ACTIVATION THRESHOLD.

2    JUST DOESN'T WORK THE WAY THAT THEY'RE TRYING NOW TO

3    COBBLE TOGETHER IN ARGUMENT TO STAY ALIVE.

4             THE COURT:  THANK YOU, MR. DOYLE.

5             MR. DOYLE:  THANK YOU, YOUR HONOR.

6             THE COURT:  IS THIS A DIFFERENT POINT OR THIS

7    POINT?

8             MR. SATCHWELL:  I THINK DEFENDANTS WILL HAVE

9    UNIQUE ARGUMENTS ON THIS PATENT.

10            THE COURT:  I THINK IT WOULD BE MORE -- LET'S

11   SEE.

12            MR. SATCHWELL:  I THINK IT WILL BE SIMILAR TO

13   THE '927 WHERE WE MAY GET SHORTER AS WE GO.  IF THERE

14   ARE POINTS OF AGREEMENT, MAYBE WE WANT TO PROCEED THE

15   WAY WE DID EARLIER TODAY.

16            THE COURT:  LET'S JUST -- MR. HATCH, WHY DON'T

17   YOU -- I JUST WANT TO DO THIS IN THE MOST EFFICIENT

18   WAY.  IF YOU THINK IT'S BETTER TO -- WHAT DO YOU THINK?

19              IS IT BETTER TO HAVE EACH DEFENDANT

20   PRESENT THE UNIQUE ARGUMENTS, AND THEN YOU RESPOND TO

21   ALL, OR DO THEM ONE AT A TIME?

22            MR. HATCH:  I'M FINE TO DO IT THAT WAY.

23            MR. SATCHWELL:  THANK YOU, JUDGE.  AGAIN, MAT

24   SATCHWELL FOR MAZDA.

25              I HAVEN'T READ THE MERCEDES TENTATIVE,

```
1   OBVIOUSLY; BUT IT SOUNDS LIKE THERE'S SOME SIMILAR

2   ISSUES.

3              I'VE READ THE MAZDA TENTATIVE VERY

4   CAREFULLY.  WITH RESPECT, JUDGE, I THINK THERE MAY BE A

5   VERY IMPORTANT MISAPPREHENSION IN THIS TENTATIVE

6   REGARDING THE ACCUSED MAZDA TECHNOLOGY AND THE EVIDENCE

7   REGARDING THAT TECHNOLOGY.  SO I WANT TO JUST FOCUS ON

8   THAT.

9              I'VE GOT THE CLAIM LANGUAGE UP ON THE

10  SCREEN.  THIS IS SLIDE 7 FROM THE DEMONSTRATIVE DECK I

11  HANDED OUT EARLIER.

12             I DON'T THINK THERE'S ANY DISPUTE HERE,

13  CLAIMS -- THE CLAIM 17 REQUIRES THREE THRESHOLDS.

14             WHAT I'M GOING TO FOCUS ON FOR NOW IS THE

15  UNLOCK THRESHOLD.  I THINK THAT'S THE SAME THRESHOLD

16  THAT MR. DOYLE STARTED WITH.

17             WHAT I'D LIKE TO EMPHASIZE ON IS THAT

18  THERE'S A VERY IMPORTANT DIFFERENCE BOTH IN THE SCOPE

19  OF THE PATENT AND IN THE ACTUAL TECHNOLOGY BETWEEN A

20  "THRESHOLD" AND A "RANGE."  WE DON'T HAVE TO LOOK ANY

21  FURTHER FROM THE CLAIM TO SEE THAT.  THE CLAIM IS SET

22  OUT BY DEFINING, FIRST, A THRESHOLD AND THEN WHAT

23  HAPPENED IN A RANGE AROUND THAT THRESHOLD.  THEN

24  THERE'S A SECOND THRESHOLD AND WHAT HAPPENS IN THE

25  RANGE AROUND IT.  AND, FINALLY, THE UNLOCK THRESHOLD
```

```
 1      AND THE RANGE AROUND IT.  SO THRESHOLDS AND RANGES ARE

 2      VERY DIFFERENT.

 3                  YOU CAN CROSS A THRESHOLD INTO THE RANGE

 4      ABOVE OR BELOW THAT THRESHOLD.  SOMETHING MAY HAPPEN

 5      ONCE YOU'RE IN THE RANGE, BUT IT ONLY HAPPENS IF YOU

 6      CROSS THE THRESHOLD.  I'M GOING TO COME BACK TO THAT.

 7      I JUST WANT TO SET THAT OUT FROM THE BEGINNING.

 8                  IN TERMS OF THE UNLOCK THRESHOLD, WE KNOW

 9      TWO THINGS FROM THIS CLAIM.  THE UNLOCK THRESHOLD IS

10      UNIQUE IN THIS CLAIM OF ALL THREE OF THESE.  IT'S THE

11      ONLY THRESHOLD THE CLAIM TELLS US WHAT EXACTLY IT MUST

12      BE.  IT MUST BE ZERO.

13                  THE OTHER THING WE KNOW ABOUT THE UNLOCK

14      THRESHOLD IS WHAT HAPPENS WHEN YOU CROSS IT.  IT MUST

15      CLEAR THE LOCK FLAG SO THE AIRBAGS CAN DEACTIVATE.

16      THOSE ARE TWO VERY IMPORTANT THINGS.  TO MEET THIS

17      CLAIM, THERE MUST BE RECORD EVIDENCE OF A THRESHOLD

18      THAT IS BOTH ZERO AND THE LEVEL AT WHICH THE LOCK FLAG

19      IS CLEARED SO THAT THE AIRBAGS CAN BE DEACTIVATED.

20                  SLIDE 9, PLEASE.

21                  IN THE MAZDA CASE, SIGNAL RELIES VERY

22      HEAVILY ON THE -- IN FACT, EXCLUSIVELY.  THERE IS NO

23      RECORD EVIDENCE ON THIS ISSUE FROM THE DOCUMENTS, OTHER

24      THAN THIS DIAGRAM.  DR. SMEDLEY DOESN'T RELY ON

25      ANYTHING ELSE.  THIS IS IT.
```

1    THERE'S ONLY TWO THRESHOLDS HERE.  AND,

2    AGAIN, FOR CLARITY, I THINK THE JUDGE UNDERSTANDS THIS,

3    BUT WE CAN TAKE THIS COLUMN OFF THE TABLE.  THAT ONLY

4    TALKS ABOUT DEACTIVATION LIGHTS.  SO WE CAN TAKE THIS

5    OFF.  THAT'S SEAT-BELT PRE-TENSIONERS.  WE'RE ONLY

6    TALKING ABOUT THE CENTER COLUMN HERE (INDICATING).

7    THE CENTER IS THE AIRBAG FUNCTION.  AND,

8    HERE, WE SEE THERE'S TWO THRESHOLDS.  THERE'S AN OFF

9    THRESHOLD AND AN ON THRESHOLD.

10    THE KEY ISSUE THAT WE'RE DEALING WITH,

11    AND I THINK THE MISAPPREHENSION THAT MAY COME FROM

12    THE -- MAY BE APPARENT IN THE TENTATIVE IS ON SLIDE 10

13    HERE, JUDGE.

14    THE ISSUE WE HAVE IS THAT, IN THE MAZDA

15    SYSTEM, ZERO, EVEN THOUGH IT'S A ROW ON THIS CHART, IS

16    NOT A THRESHOLD.  THAT'S A CONDITION.  THERE'S JUST

17    NOBODY SITTING THERE.  THERE'S NO DECISION POINT THAT

18    TAKES PLACE AT ZERO.  NOTHING IN THE MAZDA CAR CHANGES

19    AT ZERO.  THE ONLY REASON IT EVEN APPEARS ON THIS CHART

20    IS BECAUSE IT HAS TO DO WITH THE ACTIVATION LIGHTS,

21    WHICH ARE OUTSIDE THE SCOPE OF THE CLAIM.

22    WE HAVE A THRESHOLD AT 30 AND A RANGE

23    BELOW IT THAT DOES INCLUDE ZERO.  BUT THERE'S NO

24    THRESHOLD BELOW THAT 30.  THERE'S JUST THE RANGE BELOW

25    30.

```
 1              TO MAKE IT PLAIN, THE MAZDA AIRBAG -- CAN

 2    I HAVE 13, PLEASE?

 3              THE MAZDA AIRBAG TURNS OFF AT 30

 4    KILOGRAMS AND REMAINS OFF FOR ALL VALUES BELOW THAT

 5    THRESHOLD.  AND I THINK THAT'S WHERE THE

 6    MISAPPREHENSION THAT I SEE IN THE THIRD AND FOURTH

 7    PARAGRAPHS OF THE MAZDA ORDER -- OR THE TENTATIVE ORDER

 8    COMES IN, JUDGE.

 9              AGAIN, THE KEY HERE IS THAT MAZDA AIRBAGS

10    TURN OFF AT 30 AND REMAIN OFF FOR ALL VALUES BELOW THAT

11    THRESHOLD.  THERE IS NO LOWER THRESHOLD THAN THAT.

12              CAN I HAVE SLIDE 16, PLEASE?

13              AND THIS IS NOT IN DISPUTE, JUDGE.  THIS

14    IS IN FACT VERY CLEARLY NOT IN DISPUTE.  DR. SMEDLEY

15    AND SIGNAL COMPLETELY AGREE WITH THAT POSITION.

16    DR. SMEDLEY CLEARLY CONCEDED THAT POINT.  IN HIS REPORT

17    AND HIS DEPOSITION, DR. SMEDLEY URGES THAT IT'S THE

18    30-KILOGRAM LEVEL AT WHICH AIRBAGS ARE - HE USES THREE

19    DIFFERENT TERMS HERE.  I THINK THEY ALL MEAN THE SAME

20    THING - DISABLED, DEACTIVATED OR THE LOCK FLAG IS

21    CLEARED.

22              WE KNOW TWO THINGS ABOUT THAT UNLOCK

23    THRESHOLD.  IT HAS TO CLEAR THE LOCK FLAG AND DISABLE

24    THE AIRBAGS.  AND IT MUST BE ZERO.

25              DR. SMEDLEY WRITES REPEATEDLY, FIRST IN
```

```
1    HIS REPORT -- I'LL REFERENCE SLIDE 16, THE TOP PORTION,

2    134 OF THE MAZDA REPORT.  DR. SMEDLEY WRITES THAT THE

3    AIRBAG IS DISABLED WHEN THE TOTAL SEATED WEIGHT IS LESS

4    THAN 30 KILOGRAMS, JUST AS I JUST TOLD YOU.

5               IF WE MOVE TO THE BOTTOM HERE IN

6    PARAGRAPH 138, HE REPEATS HIMSELF AND SAYS, THE AIRBAG

7    WILL DEACTIVATE IF THE TOTAL SEATED WEIGHT IS CLOSE TO

8    30 KILOGRAMS.

9               THEN AT HIS DEPOSITION, WE DRILLED DOWN

10   ON THIS.  AND WHEN GIVEN THE OPPORTUNITY TO RETREAT

11   FROM THAT POSITION, DR. SMEDLEY DOUBLED-DOWN REFERRING

12   TO THE ACTUAL CLAIM LANGUAGE.  PAGE 222, LINE 7 THROUGH

13   15, I SAY, "IN THE MAZDA SYSTEM, AT WHAT RELATIVE

14   WEIGHT PARAMETER IS THE LOCK FLAG CLEARED?"

15   DR. SMEDLEY SAYS, "THE LOCK FLAG WOULD BE CLEARED AT

16   ANY VALUE OF THE RELATIVE WEIGHT PARAMETER THAT IS

17   BELOW APPROXIMATELY 30 KILOGRAMS."  THERE IS NO DISPUTE

18   THAT AT LEAST ONE OF THE TWO CRITERIA THAT DEFINE THE

19   UNLOCK THRESHOLD IN THE CLAIMS OCCURS IN THE MAZDA

20   SYSTEM AT 30 KILOGRAMS.

21               WHAT SIGNAL HAS FAILED TO DO, AND WHAT

22   THE RECORD EVIDENCE IS COMPLETELY SILENT ON, IS THEY

23   FAILED TO IDENTIFY ANY THRESHOLD THAT SATISFIES BOTH

24   REQUIRED LIMITATIONS, THAT THE UNLOCK THRESHOLD IS

25   CLEARED AND THAT THAT LEVEL IS ZERO.  THERE IS NO
```

1    THRESHOLD THERE.

2              NOW, THE TENTATIVE, I THINK -- WITH

3    RESPECT, JUDGE, I THINK THIS IS WHERE THE FINAL

4    PARAGRAPH OF THE TENTATIVE MAY HAVE MISAPPREHENSION OF

5    THE TECHNOLOGY.  WE DO NOT DISPUTE, AS THE TENTATIVE

6    SAYS, THAT THE SYSTEM MAY NOT HAVE A CHANCE TO RECORD

7    THE RESULTS AND SWITCH OFF THE AIRBAG UNTIL IT IS BELOW

8    THAT 30-KILOGRAM THRESHOLD IF THE PERSON SITTING IN THE

9    SEAT LEAPS OUT OF THE SEAT SUFFICIENTLY QUICKLY.  BUT

10   THAT IS NOT A MATERIAL FACT IN DISPUTE THAT SHOWS A

11   POSSIBLE ISSUE THE JURY COULD FIND FOR PLAINTIFF ON.

12             THE REASON THAT IS TRUE IS BECAUSE --

13   WELL, TO THE EXTENT THAT THE AIRBAGS ARE DEACTIVATED

14   BELOW 30 KILOGRAMS, IT IS BECAUSE A SENSING MEASUREMENT

15   HAS BEEN TAKEN BELOW THE 30-KILOGRAM THRESHOLD.  THERE

16   IS NO ZERO-KILOGRAM THRESHOLD AT WHICH SOMETHING

17   HAPPENS.

18             SO FOR THAT REASON, WE HAVE TWO

19   INDEPENDENT GROUNDS OF NON-INFRINGEMENT IN OUR SUMMARY

20   JUDGMENT BRIEFING ON THIS PAPER.  BUT ON THAT

21   INDEPENDENT GROUND ALONE, WE SUBMIT THAT SUMMARY

22   JUDGMENT IS APPROPRIATE BECAUSE THERE IS NO RECORD

23   EVIDENCE OF ANY THRESHOLD IN A MAZDA SYSTEM THAT IS

24   BOTH ZERO AND THE LEVEL AT WHICH A LOCK FLAG IS

25   CLEARED.

```
1              SIGNAL'S OWN EXPERT AND ALL OF THE

2    TESTIMONY FROM SIGNAL AND THE MAZDA DOCUMENTS ARE ALL

3    IN AGREEMENT, DEACTIVATION AND LOCK FLAG CLEARANCE

4    TAKES PLACE AT 30.

5              THE COURT:  NO, I UNDERSTAND.  YOU'VE SAID

6    THAT --

7              MR. SATCHWELL:  I JUST WANT TO MAKE --

8              THE COURT:  NO, YOU'VE MADE IT CLEAR.  THANK

9    YOU.

10             MR. SATCHWELL:  THE ONLY ISSUE WE HAVE ON THIS

11   PATENT IS AS TO THE POSSIBLE LOCK THRESHOLD ABOVE THE

12   42 KILOGRAMS.  I THINK WITH THE UNDERSTANDING OF THE

13   DIFFERENCE BETWEEN A RANGE AND A THRESHOLD, IT WOULD

14   APPLY TO THAT ISSUE AS WELL.  AND I WANT TO MAKE SURE

15   MY CO-DEFENDANTS HAVE ENOUGH TIME TO ADDRESS THIS, SO I

16   WILL TURN OVER THE PODIUM TO THEM, UNLESS THE COURT HAS

17   ANY QUESTIONS?

18             THE COURT:  NO.  THAT'S FINE.  THANK YOU.

19   WE'RE RUNNING SHORT OF TIME.

20             MR. SATCHWELL:  THANK YOU.

21             MR. LUJIN:  YOUR HONOR, PAT LUJIN FOR NISSAN.

22   WE'RE ALSO HANDING OUT A SET OF SLIDES.

23             IF YOU COULD TURN TO SLIDE 5.

24             SIGNAL HAS ACCUSED THREE DIFFERENT

25   ACCUSED SYSTEMS FOR NISSAN, THREE DIFFERENT GENERATIONS
```

1    OF OUR OCCUPANT DETECTION SYSTEM.  GENERATION TWO IS

2    CATEGORICALLY DIFFERENT FROM GENERATION THREE AND FOUR.

3    GENERATION TWO IS A PATTERN RECOGNITION BASED SYSTEM,

4    WHEREAS GENERATION THREE AND FOUR ARE TOTAL FORCE

5    SYSTEMS.

6              AND AS THE COURT KNOWS, THE CLAIM 21 IS

7    DIRECTED TO A TOTAL FORCE SYSTEM.  OBVIOUSLY, THERE'S

8    DISAGREEMENT IN THE SUMMARY JUDGMENT BRIEFING ABOUT

9    WHETHER OR NOT CLAIM TWO -- OR GENERATION TWO IS

10   ACTUALLY A TOTAL FORCE SYSTEM OR A PATTERN RECOGNITION

11   BASED SYSTEM.  WE WOULD SUBMIT THAT THE CONFIDENTIAL

12   DOCUMENTS WE SUBMITTED SHOWING IMAGES OF HUMAN PELVIS

13   PATTERNS AND THAT SORT OF THING CLEARLY DEFEATS THE

14   SPECULATION AND ATTORNEY ARGUMENT ON SIGNAL'S PART THAT

15   IT COULD POSSIBLY BE A TOTAL FORCE SYSTEM.

16             BUT EVEN GOING BEYOND THAT, THERE ARE A

17   NUMBER OF DETAILED LIMITATIONS OF CLAIM 21, SEVEN OF

18   WHICH ARE SHOWN ON THE NEXT SLIDE, SLIDE 6.  AND THESE

19   ARE SEVEN OF THE THINGS THAT THE CLAIMED MICROPROCESSOR

20   MUST BE PROGRAMMED TO DO.

21             NISSAN POINTED THIS OUT IN ITS BRIEFING,

22   BUT WANTS TO REMIND YOU THAT SIGNAL HAS NOT SHOWN ANY

23   CORRESPONDENCE IN NISSAN'S GENERATION TWO SYSTEM TO ANY

24   OF THESE SEVEN LIMITATIONS.  SO EVEN IF SIGNAL HAS

25   RAISED A FACT ISSUE WITH RESPECT TO WHETHER OR NOT

```
1    GENERATION TWO IS A TOTAL FORCE SYSTEM, IT HAS STILL

2    FAILED TO SHOW ANY CORRESPONDENCE IN ANY OF THE THREE

3    CLAIMED THRESHOLDS.  THE FACT THAT THERE'S A LOCK FLAG,

4    THE FACT THAT A LOCK FLAG IS CLEARED, ALL SEVEN OF

5    THOSE LIMITATIONS IS MUCH LIKE THE '927 PATENT WHERE

6    THERE'S A FAILURE OF PROOF.  THERE'S NOT EVEN A MODICUM

7    OF AN ATTEMPT TO SHOW THAT THOSE THINGS ARE THERE.  ALL

8    OF THEIR EFFORT IN THE OPPOSITION WAS POINTED TO COMING

9    UP WITH THIS HYPOTHESIS THAT GENERATION TWO COULD BE A

10   TOTAL FORCE SYSTEM.

11             AND AS YOU SEE IN THE BOX ON SLIDE 7 OF

12   OUR SLIDES, THIS IS A QUOTE FROM SIGNAL'S BRIEFING

13   WHERE THEY SAY, "WEIGHING THE EVIDENCE IN THE LIGHT

14   MOST FAVORABLE TO SIGNAL, A JURY COULD FIND THAT THE G2

15   MAT SYSTEM MAKES DEPLOYMENT DECISIONS BASED ON TOTAL

16   FORCE."

17             SIMILARLY, THAT APPEARS TO BE THE UPSHOT

18   OF PAGE 23 OF OUR TENTATIVE RULING.  THE COURT SEEMS TO

19   AGREE WITH THAT STATEMENT FROM SIGNAL, THAT WEIGHING

20   THE EVIDENCE IN THE LIGHT MOST FAVORABLE TO THEM, A

21   JURY COULD FIND THAT THE G2 MAT SYSTEM MAKES DEPLOYMENT

22   DECISIONS BASED ON TOTAL FORCE.  AND OUR POINT WOULD

23   BE, FOR THE PURPOSES OF SUMMARY JUDGMENT, SO WHAT?

24   THERE ARE SEVEN OTHER CLAIM LIMITATIONS THAT AREN'T MET

25   AT ALL.  SO IT'S IMMATERIAL WHETHER GENERATION 2 IS
```

```
1    ACTUALLY TOTAL FORCE OR PATTERN RECOGNITION WHEN IN
2    FACT NONE OF THE THRESHOLDS ARE SHOWN.  THE LOCK FLAG
3    IS NOT SHOWN AND SEVERAL OTHER LIMITATIONS ARE NOT
4    SHOWN.
5              THE COURT:  THANK YOU, MR. LUJIN.
6              MR. LUJIN:  I WOULD LIKE TO BRIEFLY ADDRESS
7    GENERATIONS 3 AND 4?
8              THE COURT:  BRIEFLY.  I HAVE OTHER MATTERS ON
9    CALENDAR TODAY.
10             MR. LUJIN:  I'LL BE VERY BRIEF.
11                  WITH RESPECT TO GENERATION 3 AND 4, THERE
12   ARE AT LEAST THREE LIMITATIONS THAT ARE NOT SHOWN AT
13   ALL, THE LOCK FLAG, THE UNLOCK THRESHOLD AND CLEARING
14   THE LOCK FLAG.
15                  AND ON PAGE 24 OF THE TENTATIVE, THE
16   COURT ACTUALLY SEEMS TO AGREE THAT SIGNAL HAS NOT SHOWN
17   THAT THE LOCK FLAG IS THERE.  IT SAYS, "EVEN IF
18   SIGNAL'S IDENTIFICATION IN THE FIRST UNLOCK THRESHOLD
19   IS CORRECT, IT DOES NOT IDENTIFY AN UNLOCK THRESHOLD
20   THAT IS ZERO OR SUBSTANTIALLY ZERO."  AS SHOWN IN OUR
21   SUBMITTED EVIDENCE, OUR ALLEGED UNLOCK IS AROUND 10
22   KILOGRAMS.  AND SO IT SEEMS THAT THE COURT AGREES WITH
23   US THAT AT LEAST ONE CLAIM LIMITATION IS MISSING.
24   THEREFORE, SUMMARY JUDGMENT SHOULD BE GRANTED ON
25   NON-INFRINGEMENT.
```

```
1              THE COURT:  THANK YOU.
2              MR. PHILLIPS:  GOOD AFTERNOON, YOUR HONOR.
3    RALPH PHILLIPS, FISH AND RICHARDSON, ON BEHALF OF THE
4    HONDA DEFENDANTS.
5              YOUR HONOR, IN THE INTEREST OF TIME, I'M
6    GOING TO START OFF WITH SOMETHING YOU HAVE ALREADY
7    HEARD ABOUT, THE UNLOCK THRESHOLD.  I WANT TO MIRROR
8    SOME OF THE COMMENTS MADE BY MR. SATCHWELL.  IN
9    PARTICULAR, IN THE HONDA SYSTEM, THERE'S A LOT OF
10   DISCUSSION ABOUT LEVEL ZERO AS BEING THE LOWEST LEVEL.
11   AND THERE IS SOME CONFLATING GOING ON THERE AS WELL
12   REGARDING THE DIFFERENCE BETWEEN THE EXTENT OF THAT
13   LEVEL OF THAT CLASSIFICATION AS IS DESCRIBED IN THE
14   TENTATIVE VERSUS WHAT THE THRESHOLD IS.  AND THE FACTS
15   ARE UNDISPUTED THAT THE THRESHOLD IS NON-ZERO.  AND AS
16   SUCH, SHOULD NOT CONSTITUTE AN UNLOCK THRESHOLD AGAIN.
17   THAT IS, AS THE COURT HAS CONSTRUED IT, TO BE A FORCE
18   PRESSURE MEASUREMENT OF ZERO OR SUBSTANTIALLY ZERO.
19              ALSO, YOUR HONOR, ANOTHER POINT I WANTED
20   TO RAISE WAS THAT, ONE CLAIM LIMITATION THAT WE RAISED
21   AS NOT BEING SHOWN -- IT WAS ABSENT FROM SIGNAL'S
22   EXPERT REPORTS.  IT WAS ALSO ABSENT -- A SPECIFIC
23   IDENTIFICATION WAS ABSENT FROM THEIR OPPOSITION.  AND,
24   ALSO, UNLESS I'M READING WRONG, THE TENTATIVE ITSELF
25   WAS SILENT ON.  AND THAT IS, THE LOCK FLAG LIMITATION.
```

```
1    CLAIM 17 REQUIRES THAT THERE BE A LOCK FLAG, AND THAT
2    IT BE SET -- ONE, TO BE SET WHEN THE RELATIVE WEIGHT
3    PARAMETER IS ABOVE THE LOCK THRESHOLD.
4              THE COURT:  SLOW DOWN.
5              MR. PHILLIPS:  SO IT'S GOING TO BE DISTINCT
6    UNDER THE LOCKED THRESHOLD ITSELF.
7                     AND, TWO, WHEN DEPLOYMENT HAS BEEN
8    ALLOWED FOR A GIVEN TIME.
9                     SO THIS LOCK FLAG HAS SEVERAL OTHER
10   LIMITATIONS TIED TO IT THAT NEED TO BE SHOWN TO
11   DEMONSTRATE A LOCK FLAG IN AN ACCUSED SYSTEM.
12                    FURTHER, CLAIM 17 REQUIRES THAT A SYSTEM
13   MUST ALLOW DEPLOYMENT WHILE THE LOCK FLAG IS SET.
14                    NOW, SIGNAL ADMITS IN ITS PAPERS THAT IT
15   HAS NOT IDENTIFIED A LOCK FLAG OR, MORE SPECIFICALLY,
16   QUOTE, "A VARIABLE OR MEMORY LOCATION DESCRIBED IN THE
17   SOURCE CODE," CLOSED QUOTE, AS PART OF ITS ANALYSIS.
18   THAT'S NOT SURPRISING.  NOT ONLY BECAUSE THEY DID NOT
19   GET A HOLD OF THE SOURCE CODE FROM THE VENDORS THAT
20   SUPPLY IT, BUT ALSO BECAUSE THERE'S NO EVIDENCE IN THE
21   DOCUMENTATION THAT IS OF RECORD REGARDING THE HONDA
22   SYSTEM THAT THERE IS A LOCK OF A DEPLOYMENT DECISION.
23   A NEW DECISION IS MADE EVERY 250 MILLISECONDS.  THERE'S
24   NO MAGIC VARIABLE OR PARAMETER OR OTHER BUTTON THAT CAN
25   BE PUSHED THAT'S GOING TO OVERRIDE THOSE DECISIONS, AS
```

```
1    WOULD BE THE CASE WITH A LOCK FLAG AS IT'S TAUGHT AND

2    CLAIMED IN THE '007 PATENT.  THANK YOU.

3             THE COURT:  THANK YOU, MR. PHILLIPS.

4             MR. PABIS:  YOUR HONOR, RON PABIS FOR KIA.

5                  AND FOR THE KIA SYSTEMS, WE'RE NOT

6    TALKING ABOUT ONE MISSING LIMITATION OR TWO MISSING

7    LIMITATIONS OR WE'RE NOT BICKERING OVER CLAIM

8    CONSTRUCTION.

9                  OUR SYSTEM IS FUNDAMENTALLY DIFFERENT

10   FROM THE CLAIMED SYSTEM BECAUSE IT DOESN'T NEED A

11   LOCKING MECHANISM AT ALL.  WE USE, AGAIN, WHAT -- THAT

12   WORD, "HYSTERESIS" OR A BUFFER ZONE.  SO WE DO HAVE

13   THRESHOLDS, BUT THEY'RE BUFFER THRESHOLDS.  THERE'S NO

14   LOCKING MECHANISM.  AND WE SUBMITTED THE SWORN --

15            THE COURT:  WHAT PAGE WERE YOU JUST --

16            MR. PABIS:  I'M SORRY, YOUR HONOR.  THAT WAS

17   SLIDE 5.

18            THE COURT:  GO AHEAD.

19            MR. PABIS:  WE SUBMITTED THE SWORN DECLARATION

20   OF OUR 30(B)(6) WITNESS, MR. KIM, WHO CLEARLY AND

21   UNAMBIGUOUSLY TESTIFIED THAT THE SYSTEM DOES NOT USE A

22   LOCKING MECHANISM AND, THEREFORE, DOES NOT USE A LOCK

23   OR UNLOCK THRESHOLD.  THERE IS NOTHING IN THE RECORD,

24   OTHER THAN CONCLUSORY ARGUMENT FROM DR. SMEDLEY OR

25   ATTORNEY ARGUMENT, TO REBUT THAT.  THERE'S NO
```

1    DOCUMENTARY EVIDENCE.  THERE'S NO TESTIMONY TO REBUT

2    THAT.

3              AND SINCE THERE'S NO LOCKING MECHANISM,

4    THERE CAN'T BE A LOCK FLAG.  THERE CAN'T BE A LOCK

5    THRESHOLD, AND THERE CAN'T BE AN UNLOCK THRESHOLD.

6              NOW, YOUR HONOR IN HIS TENTATIVE SAID

7    THAT, "A JURY MAY FIND THAT T2H SERVES AS A LOCK

8    THRESHOLD AS REQUIRED BY THE ASSERTED CLAIMS."

9              BUT T2H CAN'T BE AN UNLOCK -- OR A LOCK

10   THRESHOLD - THIS IS PAGE 7 - BECAUSE IT'S UNDISPUTED --

11   LET ME BACK UP.

12             THERE ARE FIVE WEIGHT CLASSIFICATIONS

13   SHOWN HERE.  T2H CAN'T BE A LOCK THRESHOLD BECAUSE

14   EVERYTHING ABOVE IT IS DEPLOYED.  EVERYTHING ABOVE T2H

15   IS DEPLOYED.  EVERYTHING BELOW T2L IS INHIBITED.  THIS

16   IS SIMILAR TO, I THINK, WHAT MR. DOYLE WAS SAYING

17   EARLIER.  SINCE EVERYTHING BELOW T2L IS INHIBITED, T2L

18   CAN'T BE THE CLAIMED UNLOCK THRESHOLD, AND T2H CAN'T BE

19   THE CLAIMED LOCK THRESHOLD.

20             SO WE HAVE UNREBUTTED TESTIMONY FROM

21   MR. KIM.  AND WE HAVE THE UNREBUTTED TESTIMONY THAT --

22   FROM MR. KIM THAT AT T2L, WE TRANSITION FROM AN ALLOWED

23   DEPLOYMENT TO INHIBIT DEPLOYMENT DECISION.  THAT ALSO

24   IS UNREBUTTED.

25             AND THEN WE HAVE THE TESTIMONY FROM

1  MR. SMEDLEY, WHICH IS ON SLIDE 7, WHICH IS, IF THAT IN

2  FACT IS THE CASE, IF YOU ARE MOVING FROM AN ALLOWED TO

3  INHIBIT DECISION AT T2L, THAT DOES NOT SATISFY THE

4  LEVEL INDICATIVE OF AN EMPTY SEAT LIMITATION CAUSE THAT

5  T2L, YOU MOVE FROM WR2 TO RW1.  AND THAT IS A CHILD.

6  THAT IS NOT INDICATIVE OF AN EMPTY SEAT, AS HE

7  ADMITTED.

8             FUNDAMENTALLY, IT'S A SITUATION WHERE

9  THERE IS NO LOCKING MECHANISM.  AND THAT IS UNREBUTTED

10 TESTIMONY.

11          THE COURT:  THANK YOU.

12            MR. HATCH?

13          MR. HATCH:  MINDFUL THAT WE ARE VERY CLOSE TO

14 12:30.

15          THE COURT:  THAT'S FINE.  I'M NOT GOING TO

16 GIVE YOU NO TIME.  GO AHEAD.

17          MR. HATCH:  SURE.

18             WE AGREE WITH THE ANALYSIS IN THE

19 TENTATIVE ON THE '007 PATENT, LARGELY.  THE COURT GOT

20 IT RIGHT IN PARSING THIS ISSUE OF WHETHER A PERSON

21 GETTING UP WOULD TRANSITION THROUGH THE CHILD STATE,

22 WHICH HAS BEEN BASICALLY ALL THE DEFENDANTS' ARGUMENTS.

23             AND MR. DOYLE STARTING WITH MERCEDES-BENZ

24 MADE THE SAME ARGUMENT AGAIN.  IF YOU LOOK AT THAT

25 TESTIMONY THAT HE POINTED TO FROM DR. SMEDLEY, THAT'S A

```
1    SCENARIO THAT MR. DOYLE WALKED HIM THROUGH WHERE IT

2    WENT FROM TWO TO ONE TO ZERO.  SO FROM ONE TO ZERO,

3    THAT'S THE TRANSITION THAT THAT TESTIMONY WAS ABOUT.

4    BUT THAT'S NOT WHAT WE'RE ACCUSING.  AND I THINK THE

5    COURT GETS IT RIGHT THROUGHOUT THE TENTATIVE ON THIS

6    ISSUE.

7              THE COURT:  WHAT ABOUT THE MOST RECENT

8    POSITION, AS WELL AS MR. SATCHWELL'S, CONCERNING THE --

9    WHAT WAS SAID ABOUT WHAT IS AND IS NOT THE SIGNIFICANT

10   POINT IN WEIGHT?  WHAT ABOUT THAT?

11             MR. HATCH:  SO WITH RESPECT TO MAZDA, WHAT

12   THEY HAVE DONE IS ARGUED THAT THERE IS NO LOWER

13   THRESHOLD, I BELIEVE.  LET ME GET THE -- SO THEIR

14   ARGUMENT IS BASED ON THE FACT THAT THIS FIGURE DOESN'T

15   HAVE A SEPARATE NUMERICAL VALUE FOR THE EMPTY, I

16   BELIEVE.

17             THE COURT:  WELL, THERE'S THE ONE WHERE IT WAS

18   THE -- WHEN IT RELEASED, I THINK - I DON'T HAVE THE

19   DOCUMENT IN FRONT OF ME NOW - 20, WHETHER THAT WAS A

20   POINT AT WHICH IT WOULD ENGAGE.

21             MR. HATCH:  YES.  IT'S THE SAME ISSUE ABOUT

22   WHETHER IT TRANSITIONS FROM AN ADULT THROUGH THE CHILD,

23   BECAUSE THAT'S THE -- THAT IS THAT HIGHER THRESHOLD.

24                  SO, FOR EXAMPLE, IF YOU LOOK AT THE MAZDA

25   ARGUMENT, THE 30 KILOGRAMS, THAT'S NOT WHAT WE'RE
```

```
1    SAYING IS AN UNLOCK THRESHOLD.  SO THE COURT ACTUALLY

2    GETS IT RIGHT.  IN THE TENTATIVE ON PAGE 16 WITH

3    RESPECT TO MAZDA -- AND WE POINTED THIS OUT IN OUR

4    BRIEFING.  BUT BOTH SIGNAL AND MAZDA'S EXPERTS AGREE

5    THAT THE EMPTY CATEGORY CORRESPONDS TO AN EMPTY SEAT OR

6    A WEIGHT LEVEL ZERO OR SUBSTANTIALLY ZERO.  SO THIS

7    IDEA OF THE 30 KILOGRAMS, THAT'S REALLY SORT OF A RED

8    HERRING BECAUSE THAT'S THE CUTOFF FOR WHERE -- THAT'S

9    THE CUTOFF BETWEEN THE ADULT AND THE CHILD, NOT THE

10   CUTOFF FOR AN EMPTY SEAT.

11               AND, IN FACT, THAT'S WHY YOU SEE A

12   SEPARATE ROW IN THAT TABLE FOR MAZDA.

13               IT'S THE SAME ARGUMENT THAT ALMOST ALL OF

14   THE DEFENDANTS MAKE.  I CAN ADDRESS IT DEFENDANT BY

15   DEFENDANT WALKING THROUGH THE EVIDENCE.  BUT, REALLY,

16   IT'S THE SAME ISSUE ABOUT THE CHILD.

17               I WOULD ALSO LIKE TO ADDRESS THE KIA

18   ARGUMENT THAT WE HAD NOT, FOR SOME REASON, ACCUSED ONE

19   OF THEIR SYSTEMS.  SO THE ARGUMENT THAT KIA IS MAKING

20   HERE -- THIS IS PAGE 28 ON THE TENTATIVE.  AND THE

21   COURT'S TENTATIVE HERE IS TO GRANT SUMMARY JUDGMENT

22   WITH RESPECT TO WCS 2.  THE ONLY DIFFERENCE THERE

23   BETWEEN WCS 2 AND WCS 3-4 IS THE NUMBER OF SENSORS AND

24   THE SUPPLIER.

25               WITH RESPECT TO OUR ALLEGATIONS, IT'S THE
```

```
 1    SAME ARGUMENT -- THE EXACT SAME ARGUMENTS FOR THE 2 AND

 2    THE 3 AND 4 SYSTEM, WHICH IS WHY WE DIDN'T GO INTO

 3    DETAIL IN THE INFRINGEMENT REPORTS AND IN THE ARGUMENT

 4    AS TO SPECIFYING THE DIFFERENCES BECAUSE, REALLY, FROM

 5    OUR POINT OF VIEW, THERE AREN'T ANY.  WE POINTED THIS

 6    OUT IN OUR BRIEF.  BUT I WALKED THROUGH THE

 7    SPECIFICATION WITH THEIR EXPERT.  COULDN'T POINT TO ANY

 8    MATERIAL DIFFERENCES.  I CAN SHOW YOU WHERE WE POINTED

 9    TO WCS 2 IN OUR EXPERT REPORT.  SO IT'S ONE OF THESE

10    SITUATIONS WHERE IT'S THE SAME FUNCTIONALITY.  THAT'S

11    WHY WE DIDN'T CALL IT OUT AND SPECIFICALLY DESCRIBE IT

12    SEPARATELY BECAUSE, FROM OUR POINT OF VIEW, THERE IS NO

13    MATERIAL DIFFERENCE.  SO THAT'S THE ONE AREA WHERE I

14    WANTED TO POINT OUT THAT WE DISAGREE WITH THE COURT'S

15    ANALYSIS.

16              THE COURT:  THAT'S FINE.  THANK YOU.

17              MR. HATCH:  ARE THERE ANY OTHER QUESTIONS?

18              THE COURT:  IS THERE ANYTHING ELSE YOU WANTED

19    TO ADDRESS?

20              MR. HATCH:  NO.  I THINK WE'VE COVERED IT IN

21    OUR BRIEFING.  AND THE COURT GETS IT RIGHT.

22              THE COURT:  THAT HAPPENS ABOUT 50 PERCENT OF

23    THE TIME.

24              MR. PABIS:  I'M SORRY, YOUR HONOR, THIS IS A

25    NEW ARGUMENT.
```

```
 1              THE COURT:  BRIEFLY.
 2              MR. PABIS:  YOUR HONOR, WE DID HAVE SWORN
 3   TESTIMONY ON THIS ISSUE AS WELL.  THE WCS 2 SYSTEM IS A
 4   DIFFERENT SYSTEM.  IT IS SUPPLIED BY A DIFFERENT
 5   SUPPLIER, DIFFERENT ALGORITHM.  THEY JUST DIDN'T
 6   ANALYZE IT.  THEY JUST SAID, OH, WE'RE GOING TO TREAT
 7   THIS WCS 2 SYSTEM THE SAME AS THE WCS 4 SYSTEM.  BUT
 8   THEY'RE DIFFERENT.
 9                   AND I WOULD POINT OUT THAT WE STILL HAVE
10   NO EVIDENCE POINTED OUT AS TO WHERE THE LOCK THRESHOLD
11   IS -- OR, I'M SORRY, WHERE THE LOCK FLAG IS SET OR
12   WHERE THE LOCK FLAG IS CLEARED FOR ANY OF THE SYSTEMS.
13              THE COURT:  ALL RIGHT.  THANK YOU.
14                   I HAVE ENOUGH DATA HERE.  I'M NOT -- I
15   THINK THAT -- GO AHEAD, 30 SECONDS.
16                   WHAT IS IT YOU WANTED TO ADD?
17              MR. HATCH:  THE ARGUMENT THAT THERE'S NO
18   EVIDENCE WHERE IT'S ABOUT THE NUMBERS.  THE FACT THAT
19   THEY'RE USING VARIABLES HERE, NOT NUMBERS, THAT'S THE
20   ARGUMENT.
21              THE COURT:  THANK YOU.
22                   HERE'S WHAT I NEED TO DO:  I NEED -- IS
23   THERE SOMETHING ELSE SOMEONE WANTS TO SAY IN 30 SECONDS
24   THAT IS CENTRAL TO WHAT I'M GOING TO DO THAT I HAVEN'T
25   HEARD?
```

```
 1              MR. SATCHWELL:  JUDGE, WE HAVE TWO CHOICES
 2    HERE.  IF ZERO IN THE MAZDA SYSTEM IS THE UNLOCK
 3    THRESHOLD, THEN SOMETHING HAS TO HAPPEN THERE.  THE
 4    LOCK FLAG HAS TO BE CLEARED.  IF 30 -- AND THAT'S
 5    CLEARLY NOT THE CASE.  EVERYONE AGREES -- DR. SMEDLEY
 6    AND EVERYBODY ELSE AGREES THAT THE LOCK FLAG IS NOT
 7    CLEARED AT ZERO.  SO THAT CAN'T BE THE UNLOCK
 8    THRESHOLD.  IF THE UNLOCK FLAG THRESHOLD WAS 30, THAT
 9    ALSO FAILS.  IT'S NOT ZERO.  IT'S NOT A RED-HERRING
10    ARGUMENT.  IT'S CENTRAL --
11              THE COURT:  SLOW DOWN.  THANK YOU.
12              ALL RIGHT.  I HAVE -- I HAVE SOME WORK TO
13    DO, BUT I'LL ISSUE -- I'M MINDFUL OF A FEW THINGS.  WE
14    HAVEN'T DISCUSSED THE ISSUE OF THE REQUEST FOR SOURCE
15    CODE.  BUT I HAVE -- I DON'T THINK I NEED TO HEAR ORAL
16    ARGUMENT ON THAT.  I CAN DEAL WITH THAT.
17              I'M MINDFUL OF THE ORDER OF TRIALS.
18    MERCEDES IS PRESENTLY FIRST SCHEDULED FOR TRIAL.  AND
19    SO IN TERMS OF THE ORDER IN WHICH I ISSUE AN ORDER, I
20    MAY -- DEPENDING ON THIS MATTER, AS WELL AS A FEW
21    OTHERS THAT I HAVE ONGOING, I MAY ISSUE ORDERS IN
22    SEQUENCE.  I'M NOT SURE YET.  BUT I'LL DO MY BEST TO BE
23    EFFICIENT FOR YOU SO YOU CAN SEE, WHERE THERE ARE
24    COMMON ISSUES, WE CAN GET THEM ADDRESSED.
25              IS THERE ANYTHING ELSE WE NEED TO DO
```

```
1    TODAY?
2                 THE FIRST TRIAL THAT'S SCHEDULED IS
3    MERCEDES ON --
4              MR. DAVIS:  APRIL 19.
5              THE COURT:  I PLAN TO ADHERE TO THAT BECAUSE
6    MERCEDES AT THE MOMENT -- BECAUSE I THINK IT ADDRESSES
7    A NUMBER OF THE ISSUES THAT YOU'VE BEEN DISCUSSING
8    TODAY.  SUCH THAT, DEPENDING ON THE OUTCOME IN THAT
9    TRIAL, IT WOULD BE EFFICIENT TOWARD OTHER TRIALS THAT
10   MIGHT FOLLOW.
11                 IF FOR -- IF MERCEDES PREVAILS -- IF I
12   ADHERE -- HYPOTHETICALLY, IF I ADHERE TO ALL OF THE
13   TENTATIVES THAT I'VE EXPRESSED, AND MERCEDES IS THE
14   FIRST TRIAL AND IT ADDRESSED THE '007 PATENT, CLAIM 21,
15   AS WELL AS INVALIDITY OF THE '927 PATENT, ONE, TWO AND
16   SIX, AND THOSE WERE, HYPOTHETICALLY, DETERMINED IN
17   MERCEDES' FAVOR, THAT WOULD CERTAINLY APPLY TO SEVERAL
18   OF THE OTHER TRIALS THAT ARE TO FOLLOW.  I MEAN, NOT
19   THE -- THE INFRINGEMENT VARIES FROM PATENT TO PATENT,
20   PARTY TO PARTY.
21                 SO I DON'T SEE ANY REASON NOT TO PROCEED
22   WITH MERCEDES FIRST.
23                 IS THERE A DIFFERENT VIEW ON THAT?
24              MR. DOYLE:  NO, YOUR HONOR.  SCOTT DOYLE
25   REPRESENTING MERCEDES.  WE'RE READY TO GO.  WE
```

```
 1    SHOULDN'T HAVE TO GO.

 2              THE COURT:  AND, MR. HATCH, YOU AGREE THAT

 3    MAKES SENSE IN TERMS OF THE FIRST TRIAL?

 4              MR. HATCH:  I THINK WE WOULD LIKE A CHANCE TO

 5    TALK TO OUR CLIENT, BUT -- MAYBE WE CAN SUBMIT

 6    SOMETHING IN A COUPLE OF DAYS?

 7              THE COURT:  I WANT TO ADHERE TO THE SCHEDULE

 8    THAT I'VE SET.  BUT SOME OF THAT DEPENDS ON MY GETTING

 9    OUT THE NECESSARY RULINGS ON TODAY'S ISSUES.  SO I

10    THINK ONCE THE RULING OR RULINGS COME OUT THAT APPLY TO

11    DIFFERENT MATTERS -- IF IT'S ALL DONE IN ONE, THEN

12    YOU'LL HAVE IT.  IF NOT, IF I GET THE FIRST ONE DONE,

13    THEN YOU'LL HAVE SOMETHING CONCRETE TO DISCUSS AS TO,

14    OKAY, IF WE GO TO TRIAL WITH MERCEDES, THESE ARE THE

15    ISSUES.  I THINK THAT'S MORE EFFICIENT.

16              MR. PABIS:  WE HAVE A COMMON MOTION ON THE

17    DAUBERT FOR DR. SMEDLEY.  I ASSUME YOUR HONOR INTENDS

18    ON DEALING WITH THAT AT THE PRETRIAL?

19              THE COURT:  I DO.

20              MR. PABIS:  AND IF SO, I THINK THE REST OF US

21    WILL LIKE TO PARTICIPATE IN THAT.

22              THE COURT:  YES, BUT I -- I WILL -- I'LL DO

23    THE DAUBERT HEARINGS.

24                   I'M SURE YOU WILL DO THIS WITHOUT MY

25    TELLING YOU, BUT JUST IN CASE.  I DON'T WANT TO HAVE
```

```
1   FIVE PEOPLE SAY THE SAME THING TO ME.  SO ESTABLISH WHO

2   IS GOING TO TAKE THE LEAD ON DIFFERENT ISSUES SO WE CAN

3   DO THIS EFFICIENTLY.  YOU HAVE DONE THAT TODAY, SO JUST

4   DO IT AGAIN.

5               WE'RE GOING TO MOVE THE FINAL PRETRIAL

6   CONFERENCE PRESENTLY SET FOR APRIL 4 TO 1:30 AS OPPOSED

7   TO 3:00 O'CLOCK.  OKAY.  THAT'LL GIVE US SUFFICIENT

8   TIME, I THINK, TO ADDRESS ALL ISSUES AS OPPOSED TO

9   STARTING AT 3:00.

10              AGAIN, AS THE RULINGS FROM TODAY'S --

11  THESE SUMMARY JUDGMENT MOTIONS COME OUT WHETHER, AS I

12  SAY, IN ONE OR IN A SERIES, IF THERE ARE NEW MATTERS

13  THAT COME UP, I EXPECT YOU TO COLLABORATIVELY MEET AND

14  CONFER.  AND IF YOU THINK THERE'S SOMETHING YOU THINK

15  THAT CAN BE DONE EFFICIENTLY, TELL ME IN A FILING

16  THAT'S PRIOR TO THE FINAL PRETRIAL CONFERENCE, ASSUMING

17  YOU HAVE TIME.  SO I CAN HAVE IT MIND AND NOT HEAR IT

18  FOR THE FIRST TIME THAT DAY.

19              ANYTHING ELSE WE NEED TO DO TODAY?

20              MR. FENSTER:  IT WAS NOT MY UNDERSTANDING THAT

21  WE HAD ACTUALLY -- THAT THE COURT HAD ACTUALLY

22  DETERMINED THE SEQUENCING OF TRIALS.  TO THE EXTENT YOU

23  HAVE NOT, I WANTED TO SUBMIT A REQUEST THAT YOU

24  CONSIDER IT IN LIGHT OF -- IN TERMS OF YOUR

25  DETERMINATION OF SEQUENCING AS IT MAY DETERMINE WHICH
```

1     ORDERS YOU ADDRESS FIRST.

2                    BASED ON THE TENTATIVES AND CONFERRING

3     WITH THE CLIENT, I THINK WE WOULD REQUEST THE FOLLOWING

4     ORDER --

5                    THE COURT:  IS THIS DIFFERENT THAN WHAT YOU

6     SUBMITTED IN WRITING?

7                    MR. FENSTER:  IT IS, YOUR HONOR.

8                    THE COURT:  GO AHEAD.

9                    MR. FENSTER:  HONDA FIRST.  SECOND, NISSAN.

10    THIRD, MERCEDES-BENZ.  FOURTH, MAZDA.  AND FIFTH, KIA.

11                   THE COURT:  OKAY.  I HAVE THAT IN MIND.

12                   IS THERE ANYTHING MERCEDES OR ANYONE ELSE

13    WANTS TO SAY, BRIEFLY?

14                   ALL I HEARD WAS A LIST.  I DON'T WANT TO

15    HEAR EXTENSIVE ARGUMENT.

16                   DO YOU DISAGREE WITH THIS LIST?

17                   MR. DOYLE:  WE DISAGREE.  WE WANT TO GO FIRST.

18    LET'S DO IT.

19                   THE COURT:  I HAVE YOUR LIST IN MIND.

20                   AGAIN, AS I EVALUATE THE ISSUES THAT ARE

21    BEING PRESENTED AND AS I'VE ALREADY STARTED TO DO,

22    COMPARE THE DIFFERENT ISSUES PRESENTED IN DIFFERENT

23    MATTERS, I WANT TO DO THIS EFFICIENTLY.

24                   MR. DAVIS?

25                   MR. DAVIS:  I WANTED TO NOTE FOR THE RECORD,

```
1    YOUR HONOR, THAT AT THE LAST HEARING, I POINTED OUT

2    THAT WE HAD A SCHEDULING CONFLICT WITH THAT FIRST LINE.

3    AND I DON'T BELIEVE MR. FENSTER HAD ENTERED AN

4    APPEARANCE YET.  BUT IT LOOKS THAT MAY RESOLVE.  BUT WE

5    THINK THAT THE ORDER THAT WAS SUBMITTED SHOULD BE KEPT.

6              THE COURT:  THANK YOU FOR YOUR HELP.  I

7    APPRECIATE YOUR WORKING COLLABORATIVELY AND

8    EFFICIENTLY.  AND I'LL SEE YOU AT OUR NEXT HEARING.

9                  AND WE NEED TO PLEASE RESUBMIT THE

10   TENTATIVES.  THANK YOU.  NOT "RESUBMIT," RETURN.

11              (END OF PROCEEDINGS)
```

1

**CERTIFICATE OF OFFICIAL REPORTER**

2

3      COUNTY OF LOS ANGELES          )
                                      )
4      STATE OF CALIFORNIA            )

5

6              I, ALEXANDER T. JOKO, FEDERAL OFFICIAL

7      COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT

       COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY

8      CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED

9      STATES CODE, THAT THE FOREGOING IS A TRUE AND CORRECT

10     TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED PROCEEDINGS

11     HELD IN THE ABOVE-ENTITLED MATTER, AND THAT THE

12     TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE

13     REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED

14     STATES.

15     DATE:  MARCH 9, 2016

16

17

18                      /S/ ALEXANDER T. JOKO
                        _____
19                      ALEXANDER T. JOKO, CSR NO. 12272
                        FEDERAL OFFICIAL COURT REPORTER
20

21

22

23

24

25